**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 7 |
| | § | |
| WITH PURPOSE, INC., | § | Case No. 23-30246-MVL-7 |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adv. No. 25-03105-MVL |
| v. | § | |
| | § | |
| WINSTON & STRAWN LLP; and | § | |
| MICHAEL BLANKENSHIP, | § | |
| | § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF WINSTON & STRAWN LLP'S AND MICHAEL**
**BLANKENSHIP'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENTS & AUTHORITIES .................................................................................... 7

   I.    The Trustee's Malpractice Claim Must Be Dismissed (Count 1) .................................... 8

      A.   Texas Law Applies to the Malpractice Claim ................................................. 8

      B.   As a Matter of Law, It Is Not Malpractice to Ably Perform Routine Legal Work at the Instruction of the Client, Even If It Furthers the Client's Imprudent Business Decisions ................................................................................................. 8

      C.   The Malpractice Claim Also Fails Because the Trustee Has Not Plausibly Pled Causation ................................................................................................. 13

   II.   The Aiding & Abetting Claims Must Be Dismissed (Count 2) .................................... 15

      A.   Delaware Law Governs Aiding & Abetting Claims ........................................ 15

      B.   The Trustee Cannot State Viable Aiding & Abetting Claims Against Defendants Because Defendants Separately Owed Fiduciary Duties to GloriFi ............................. 16

      C.   The Trustee Cannot State Viable Aiding & Abetting Claims on the Basis of Transactions that Did Not Occur .......................................................................... 17

      D.   The Trustee Cannot State Plausible Aiding & Abetting Claims for Performing Competent, Routine Legal Work ........................................................................... 18

   III.   Post-Petition Conduct Allegations Do Not Support Any Claims ................................. 21

   IV.   Fraudulent Transfer and Disallowance Claims Must Likewise Be Dismissed ............. 22

      A.   The § 548 Claim for Constructive Fraud Fails (Count 3) ............................... 22

      B.   The TUFTA Claim Fails (Count 4) ............................................................... 23

      C.   The Section 550 Claim for Recovery of Transfer Fails (Count 5) ................... 24

      D.   The Section 502 Claim for Disallowance Fails (Count 6) .............................. 25

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. DLA Piper (US) LLP*,
  2013 WL 2634767 (N.D. Ind. June 12, 2013) ...........................................................9

*Abrams v. McGuireWoods LLP*,
  518 B.R. 491 (N.D. Ind. 2014) ...............................................................................19

*Alexander v. Turtur & Assocs., Inc.*,
  146 S.W.3d 113 (Tex. 2004)...............................................................................8, 13

*In re All Tex. Elec. Contractors, Inc.*,
  2022 WL 162786 (Bankr. S.D. Tex. Jan. 18, 2022) .........................................23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................7, 23

*Bershad v. Curtiss-Wright Corp.*,
  535 A.2d 840 (Del. 1987) ........................................................................................15

*Boyd v. Brett–Major*,
  449 So.2d 952 (Fla. 3d DCA 1984) .........................................................................10

*Bragger v. Budacz*,
  1994 WL 698609 (Del. Ch. Dec. 7, 1994)................................................................11

*Buckley v. Deloitte & Touche USA LLP*,
  2007 WL 1491403 (S.D.N.Y. May 22, 2007) ...........................................................16

*Chrysogelos v. London*,
  1992 WL 58516 (Del. Ch. Mar. 25, 1992).................................................................18

*CMS Inv. Holdings, LLC v. Castle*,
  2015 WL 3894021 (Del. Ch. June 23, 2015).............................................................16

*Cosgrove v. Grimes*,
  774 S.W.2d 662 (Tex. 1989).....................................................................................12

*Crescent Res., LLC v. Nexen Pruet, LLC (In re Crescent Res., LLC)*,
  2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012)................................................23

*Damian for PFGBI, LLC v. Nelson Mullins Riley & Scarborough, LLP*,
  317 F. Supp. 3d 1228 (N.D. Ga. 2017) ......................................................................9

*In re Digex Inc. S'holders Litig.*,
   789 A.2d 1176 (Del. Ch. 2000)....................................................................................11

*In re Drawn Another Circle*,
   602 B.R. 878 (Bankr. D. Del. 2013) ...........................................................................17

*eBay Domestic Holdings, Inc. v. Newmark*,
   2009 WL 3205674 (Del. Ch. Oct. 2, 2009) ...............................................................18

*In re Expert S. Tulsa, LLC*,
   522 B.R. 634 (B.A.P. 10th Cir. 2014),........................................................................23

*In re Figter Ltd.*,
   118 F.3d 635 (9th Cir. 1997) .....................................................................................21

*First Nat. Bank of Trinity, Tex. v. McKay*,
   521 S.W.2d 661 (Tex. App.—Houston [1st Dist.] 1975, no writ)..............................9

*Forshee v. Moulton*,
   694 S.W.3d 803 (Tex. App.—Houston [14th Dist.] 2024, no pet.)..........................13

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ......................................................................................6

*Garrett v. Giblin*,
   940 S.W.2d 408 (Tex. App.—Beaumont 1997, no writ).........................................10

*Gilbert v. El Paso Co.*,
   490 A.2d 1050 (Del. Ch. 1984)..................................................................................17

*In re Greater Southeast Community Hospital Corp.*,
   333 B.R. 506 (Bankr. D.D.C. 2005) ...........................................................................9

*Hamilton Partners, L.P. v. Englard*,
   11 A.3d 1180 (Del. Ch. 2010).....................................................................................16

*In re Highland Cap. Mgmt., L.P.*,
   2023 WL 5523949 (Bankr. N.D. Tex. Aug. 25, 2023) .............................................16

*Hollis v. Hill*,
   232 F.3d 460 (5th Cir. 2000) .....................................................................................11

*In re IFS Fin. Corp.*,
   2008 WL 4533713 (Bankr. S.D. Tex. Oct. 2, 2008)..................................................25

*Isaacs v. Schleier*,
   356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ...................................10

*Janvey v. Golf Channel, Inc.*,
    487 S.W.3d 560 (Tex. 2016)............................................................................24

*JuxtaComm-Tex. Software, LLC v. Axway, Inc.*,
    2010 WL 4920909 (E.D. Tex. Nov. 29, 2010) ..........................................................21

*Kan. Pub. Emps. Ret. Sys. v. Kutak Rock*,
    44 P.3d 407 (Kan. 2002) ................................................................................9

*Kenny v. Simon*,
    2023 WL 6960385 (D.D.C. Oct. 20, 2023) .............................................................22

*Lam v. Thompson & Knight, LLP*,
    2003 WL 22220666 (N.D. Tex. Sept. 25, 2003).......................................................8

*In re Legendary Field Exhibitions, LLC*,
    2023 WL 7852657 (Bankr. W.D. Tex. Nov. 13, 2023) ........................................16

*In re Longhorn Paving & Oilfield Servs., Inc.*,
    647 B.R. 679 (Bankr. S.D. Tex. 2022) .................................................................21

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2011) ............................................................................18

*In re Margaux Tex. Ventures, Inc.*,
    545 B.R. 506 (Bankr. N.D. Tex. 2014).................................................................25

*McInnis v. Mallia*,
    2011 WL 782229 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, pet.
    denied)....................................................................................................10

*In re Mindbody, Inc. S'holder Litig.*,
    332 A.3d 349 (Del. 2024) ..............................................................................19

*In re Missionary Baptist Found. of Am., Inc.*,
    712 F.2d 206 (5th Cir. 1983) ...........................................................................3

*Morrison v. Berry*,
    2020 WL 2843514 (Del. Ch. June 1, 2020)..........................................................18

*Murray Warehouse, Inc. v. Abelove*,
    170 A.D.2d 1027, 566 N.Y.S.2d 171 (4th Dept. 1991) ........................................10

*Next Commc'ns, Inc. v. Viber Media, Inc.*,
    758 F. App'x 46 (2d Cir. 2018) ........................................................................22

*Niehenke v. Right O Way Transp., Inc.*,
    1996 WL 74724 (Del. Ch. Feb. 13, 1996) ............................................................17

iv

*O'Brien v. Spuck*,
99 A.D.2d 910, 472 N.Y.S.2d 514 (3d Dept. 1984) ..................................................10

*Orr v. Knowles*,
337 N.W.2d 699 (Neb. 1983).....................................................................................10

*Estate of Pollack v. McMurrey*,
858 S.W.2d 388 (Tex. 1993).......................................................................................10

*PowerTrain, Inc. v. Ma*,
2014 WL 3897722 (N.D. Miss. Aug. 8, 2014) ..........................................................13

*Reneker v. Offill (Reneker II)*,
2009 WL 3365616 (N.D. Tex. Oct. 20, 2009) ...........................................................12

*Rogers v. Zanetti*,
518 S.W.3d 394 (Tex. 2017).......................................................................................13

*In re Sears Hometown & Outlet Stores, Inc. S'holder Litig.*,
309 A.3d 474 (Del. Ch. 2024).....................................................................................11

*In re SI Restructuring, Inc.*,
532 F.3d 355 (5th Cir. 2008) ......................................................................................20

*Smith v. O'Donnell*,
288 S.W.3d 417 (Tex. 2009)........................................................................................15

*Smith v. Smith*,
241 S.W.3d 904 (Tex. App.—Beaumont 2007, no pet.) .............................................10

*In re Specialty Select Care Ctr. of San Antonio, LLC*,
2021 WL 3083522 (Bankr. N.D. Tex. July 21, 2021) ...............................................24

*Streber v. Hunter*,
221 F.3d 701 (5th Cir. 2000) ........................................................................................8

*In re Synthes, Inc. S'holder Litig.*,
50 A.3d 1022 (Del. Ch. 2012)......................................................................................11

*Taylor v. Alonso, Cersonsky & Garcia, P.C.*,
395 S.W.3d 178 (Tex. App.—Houston [1st Dist.] 2012, no pet.) .............................13

*Taylor v. Scheef & Stone, LLP*,
2020 WL 4432848 (N.D. Tex. July 31, 2020).......................................................12, 15

*In re The Brown Sch.*,
368 B.R. 394 (Bankr. D. Del. 2007) ...........................................................................23

*Thompson & Knight LLP v. Patriot Expl., LLC,*
    444 S.W.3d 157 (Tex. App.—Dallas 2014, no pet.)...........................................................13

*Tolpo v. Decordova,*
    146 S.W.3d 678 (Tex. App.—Beaumont 2004, no pet.) ....................................................13

*Unimex Logistics LLC v. Guerra,*
    2025 WL 1912194 (Tex. App.—Corpus Christi, July 10, 2025) ...........................................14

*United States v. Colorado Invesco, Inc.,*
    902 F. Supp. 1339 (D. Colo. 1995).....................................................................................20

*In re Uplift RX, LLC,*
    667 B.R. 665 (Bankr. S.D. Tex. 2024) ..........................................................................15, 17

*Vills. of Five Points Ventures, LLC v. Vills. of Five Points Prop. Owners Ass'n,*
    2020 WL 6689973 (Del. Ch. Nov. 13, 2020) ......................................................................18

*Viner v. Sweet,*
    70 P.3d 1046 (Cal. 2003) ....................................................................................................9

*Weinberger v. Rio Grande Indus., Inc.,*
    519 A.2d 116 (Del. Ch. 1986)............................................................................................17

*Wellgistics, LLC v. Welgo, Inc.,*
    2024 WL 4327343 (Del. Super. Ct. Sept. 27, 2024)...........................................................22

*In re Westech Cap. Corp.,*
    2018 WL 1605171 (Bankr. W.D. Tex. Mar. 29, 2018) .......................................................19

*Zazzali v. Hirschler Fleischer, P.C.,*
    482 B.R. 495 (D. Del. 2012).........................................................................................19, 20

**Statutes**

11 U.S.C. § 502(d) ...................................................................................................................25

11 U.S.C. § 548...................................................................................................22, 23, 24, 25

11 U.S.C § 550........................................................................................................................24

TEX. BUS. & COM. CODE § 3.113 .............................................................................................20

TEX. BUS. & COM. CODE § 24.005 ...........................................................................................24

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 21

Tex. Disc. R. Prof. Conduct R. 1.13, cmt. 6 ..................................................................9

## INTRODUCTION

Lawyers are not responsible for the business decisions of their clients. Nor do lawyers have a duty to subvert directions given to them by a corporate client's duly authorized control persons. Yet the Trustee blames Winston & Strawn LLP ("Winston") and one of its partners, Michael Blankenship (together, "Defendants"), for the failure of With Purpose, Inc. ("GloriFi") to raise sufficient capital and for its ensuing demise. By suing GloriFi's pre-Petition corporate counsel for competently performing legal work at GloriFi's instruction because GloriFi's nascent business model did not succeed, the Complaint improperly seeks to turn a lawyer's duty on its head.

Allowing the Trustee's claims to proceed beyond the Rule 12(b)(6) stage would set an extraordinary and dangerous precedent. It would chill the ability of start-ups and struggling companies to retain counsel, since those companies' failures to fundraise could later be weaponized against corporate counsel. Simply put, the Defendants had no obligation to undermine the wishes of GloriFi's governing principals by somehow changing their minds about what funding options to pursue or which Board members to seat. In fact, doing so could itself have been a breach of Defendants' duties. After all, a lawyer has the responsibility to follow a client's lawful instructions.

Notably, this purported malpractice action *does not even allege that Defendants provided any negligent legal services or erroneous legal advice.* That is because the Trustee's real complaint is not with Defendants, but rather with GloriFi's managers—its CEO, its Board of Directors, and a supermajority of GloriFi's shareholders—for making decisions on funding proposals and Board membership that GloriFi now regrets. GloriFi's other stakeholders may reasonably wish, in retrospect, that they had bargained for different corporate leadership for GloriFi, vesting control in persons other than its founder, Toby Neugebauer. That wish, however, is not and cannot be the basis for a malpractice claim. *See infra* § I.B.

1

If this were not enough, the Trustee has not plausibly pled that Defendants' alleged malpractice was a proximate cause of any of the alleged damages, which are based entirely on GloriFi's failure to close a theoretical merger allegedly worth $1.7 billion. The Trustee's allegations are tied not to GloriFi's failure to complete that merger, but instead to Defendants' involvement, as corporate counsel, in an earlier dispute between board members about who would control the company. GloriFi's failure many months later cannot plausibly be traced to Winston's preparation of meeting minutes, board consents, or its review of financing documents (none of which are alleged to have been done *incorrectly*) related to the earlier dispute. *See infra* § I.C.

The Trustee's claim that Defendants aided and abetted breaches of fiduciary duty by Neugebauer fares no better. Under controlling Delaware law, parties (like Defendants) that owed their own fiduciary duties to a plaintiff cannot separately be liable for aiding and abetting another's breach of fiduciary duty to the same plaintiff. *See infra* § II.B. Nor can a lawyer aid or abet a breach of fiduciary duty by providing competent legal services at the request of a client's duly authorized principal. *See infra* § II.D. Further, the Trustee has failed to connect any alleged misconduct to transactions that *actually closed*. Delaware does not recognize a claim for aiding and abetting based on *proposed* but *not consummated* self-dealing. *See infra* § II.C

Finally, as to the claims regarding Winston's alleged participation in the bankruptcy proceeding (*see infra* § III) and the claims that attempt to recoup the payment of a portion of Winston's legal invoices or to disallow Winston's claim for its unpaid fees (*see infra* § IV), the Trustee has not plausibly pled facts supporting those claims. They, too, should be dismissed.

### STATEMENT OF FACTS

On December 30, 2021, GloriFi—a start-up financial services company founded and majority-owned by Toby Neugebauer—retained Winston to assist it in connection with a proposed de-SPAC transaction. *See* Compl. ¶ 26. Defendants' client was "GloriFi and not any director,

officer, or employee of GloriFi," and Defendants are not alleged to have had any prior involvement

with Neugebauer, with the initial founding of GloriFi, or with drafting of its organizational

documents, which pre-dated Winston's retention. *See generally* ECF 145, June 16, 2025 Mem.

Op., Findings of Fact, and Conclusions of Law, Case 24-03038-mvl ("ECF 145") at 4.[1]

In February 2022, GloriFi signed a letter of intent with a SPAC, DHC Acquisition Corp.

("DHC"), for a business combination. Compl. ¶ 93. It required that GloriFi have $40 million cash

on its balance sheet by a projected March 2022 closing. ECF. 145 at 5.

The core allegations against Defendants relate to a roughly two-week period in late March

and early April 2022. *See* Compl. ¶ 29. During that time, GloriFi faced an "imminent fundraising

shortfall," ECF 145 at 5, and needed to raise substantial additional capital to cover its operations

and "satisfy the financial requirements of the [DHC] de-SPAC transaction." Compl. ¶ 31. To do

this, GloriFi debated a flurry of funding proposals.

First, around March 27, 2022, Neugebauer proposed a capital raise of an additional $40

million of senior convertible debt, with Neugebauer investing $10 million. ECF 145 at 5; Compl.

¶ 33. The Complaint states that Winston "knew that Neugebauer needed to obtain approval from

the disinterested/independent Board members" to approve such a transaction. Compl. ¶ 37. This

proposal was presented to the Board and was voted down by directors Nick Ayers and Keri Findley.

ECF 145 at 5. The Trustee does not allege that this proposal was ever consummated.

Second, Neugebauer and GloriFi's CFO, Brian Joiner, made a second fundraising proposal,

which involved Neugebauer loaning $30 million to GloriFi, "but in connection with an agreement

whereunder" another company affiliated with Neugebauer, Animo Bancorp, would purchase

---

[1] The Court may take judicial notice of its prior opinions in this matter. *See In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983) ("A court may take judicial notice of the record in prior related proceedings. . . .").

certain assets and enter into a revenue sharing agreement with GloriFi. ECF 145 at 6. The Trustee alleges that this transaction would have constituted self-dealing, to GloriFi's detriment. Compl. ¶ 41. The Trustee also alleges that the second proposal required approval by stakeholders other than Neugebauer, be it the other board members or the stockholders. Compl. ¶¶ 41–42.

Like the first proposal, the second proposal *was also not consummated*. While Neugebauer received the support of a supermajority of GloriFi's shareholders, ECF 145 at 6, the proposal was submitted to Findley and Ayers (the other two Board members) at a Board meeting, and both abstained from voting, so it did not pass. *Id*. Although the Complaint includes numerous allegations about this proposal, the Trustee does not allege that GloriFi adopted it—because it did not.

The Trustee also contends that, while unsuccessfully trying to garner support for his funding proposals, Neugebauer made misrepresentations to either Series 1 Noteholders or the other directors. *See, e.g.*, Compl. ¶¶ 13–14. Regardless of whether these allegations are accurate, the Complaint fails to plausibly trace any wrongdoing to Defendants. There are no allegations that Defendants made any misrepresentations, or even that Defendants participated in Neugebauer's alleged misrepresentations—only that Defendants were, on occasion and after the fact, made aware of certain misrepresentations. Compl. ¶¶ 50–54.

Instead of the two funding proposals for which Neugebauer and GloriFi's executive team advocated, Ayers and Findley wanted GloriFi to pursue a third proposal: a term sheet submitted by a putative de-SPAC vehicle, DHC, which would have allegedly sponsored an additional $40 million debt raise. ECF 145 at 6. The Trustee, however, acknowledges that this funding proposal would have required Neugebauer to surrender his control over GloriFi. *E.g.*, Compl. ¶¶ 77–78 (stating it required "market-based and ethical governance structure in which [Neugebauer] does not retain unilateral power to direct the Company"). But the Complaint is silent as to what, exactly,

4

Defendants could have done—much less what Defendants were somehow legally obligated to do—to force Neugebauer to pursue a funding option he did not prefer.

The core of the Trustee's Complaint is that Defendants should be held responsible for GloriFi's decision not to pursue the third proposal, from DHC; that Defendants had an obligation to somehow compel Neugebauer to surrender his control over GloriFi; and that Defendants' failure to take such unspecified action against GloriFi's majority shareholder and CEO somehow caused GloriFi's business to fail *months later*. Compl. ¶ 78 (stating that Winston, should have established "governance" where Neugebauer "did not retain unilateral power to direct GloriFi").

On April 2, 2022, Neugebauer made another proposal (the fourth that GloriFi considered in as many days): a $10 million equity raise. Findley and Ayers both initially voted against it, and it was not consummated at that time. ECF 145 at 6. Neugebauer then exercised his power under the Stockholder's Agreement to add two new directors, Charlie Hamilton and John Norwood. *Id.*

Findley was removed from the board on April 3, 2022. ECF 145 at 6. The Trustee does not allege that Defendants took any actions with respect to removing Findley, except that they "help[ed] Neugebauer" in an unspecified manner. Compl. ¶ 18. Elsewhere, the Trustee has alleged that a different law firm, not Winston, advised Neugebauer in connection with "the legal strategy and necessary documents" to remove Findley. *See* ECF 41, Trustee's First. Am. Compl. ¶ 43, *Seidel, Trustee v. Chapman & Cutler LLP*, Ca. No. 23-30246 ("Chapman Complaint").

On April 5, 2022, GloriFi held another board meeting, where the four then-seated board members (Neugebauer, Ayers, Hamilton, and Norwood) unanimously voted to move forward with the $10 million equity raise (*i.e.*, Neugebauer's third proposal, and the fourth overall). ECF 145 at 6. The Trustee does not contend that this transaction was unfair or constituted self-dealing, much less allege facts that would plausibly support such an inference.

5

Shortly thereafter, Neugebauer initiated a shareholder vote to remove Ayers from the GloriFi Board. Ninety-three percent of the shares controlled by parties *other than Neugebauer* voted to remove Ayers. ECF 145 at 7. The Trustee does not allege that Defendants took any particular action here, only that Defendants "proceeded to help Neugebauer . . . remove Ayers" from the Board in, again, an unspecified manner. Compl. ¶ 58. In fact, the Trustee elsewhere alleges that a *different* law firm "prepared the legal strategy and necessary documents" to replace Mr. Ayers. *See* Chapman Compl., ¶ 43.

The Trustee claims that Neugebauer's actions in late-March/early-April 2022 (allegedly rejecting the DHC funding proposal and removing Ayers and Findley from the Board) caused GloriFi's ultimate failure. But the Trustee also explicitly acknowledges that the deal with DHC (the so-called "$1.7 billion merger" that, on the Trustee's telling, was the difference between the success and failure of GloriFi) moved forward undisturbed—for *months*. The Complaint incorporates a press release dated July 25, 2022—nearly four months after the removal and replacement of Findley and Ayers—announcing that GloriFi entered into a Business Combination Agreement with DHC. *See* Compl. ¶ 93 n.6[2]; ECF 145 at 9.

The Business Combination Agreement required GloriFi to raise at least $60 million to close the merger with DHC. ECF 145 at 9. In May 2022, the GloriFi Board authorized an additional capital raise (the "Series 2" raise) for this purpose. *Id.* at 8. Though some of the Series 2 Notes were not executed until October 2022, "nearly all the Series 2 Notes" reflect the date on which GloriFi received the funds that support each Note. ECF 145 at 11. The Notes were signed at or around the same time as the collateral agreements corresponding to those Notes, specifically

---

[2] Incorporating "GloriFi Announces Business Combination with DHC Acquisition Corp.," WINSTON & STRAWN (July 25, 2022), available at https://www.winston.com/en/experience/GloriFi-announces-business-combination-with-dhc-acquisition-corp-68243300. The press release is properly considered with this motion to dismiss because it is a "document[] incorporated into the complaint by reference." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

September 30, 2022, when the Notes were "targeted" to close. ECF 145 at 11; Compl. ¶¶ 79–80 ("[t]he GCA and CAA are each dated September 30, 2022" but were signed on "October 13").

Despite the issuance of the Notes, GloriFi was unable to raise sufficient capital to continue to operate and move forward with the DHC transaction. As a result, GloriFi "beg[a]n winding down" in November 2022, before ultimately filing a voluntary Chapter 7 petition in February 2023. ECF 145 at 13–15. On March 23, 2023, Winston filed a proof of claim for $1.9 million in unpaid legal fees, reflecting Winston's unpaid invoices since April 2022. *See* Claim 15-1 (Mar. 28, 2023). The Trustee does not allege that Defendants represented or performed legal work for GloriFi after it filed for bankruptcy.

But the Trustee's allegations against Defendants do not end when their representation of GloriFi ended. The Trustee further alleges that in July 2024—more than a year into the bankruptcy proceedings and long after Winston's attorney-client relationship with GloriFi ended—Neugebauer requested that Winston, in its capacity as an unsecured creditor, sign a Restructuring Support Agreement, which was intended to bolster Neugebauer's Motion to Convert the GloriFi bankruptcy proceeding to Chapter 11 ("Conversion Motion"). Compl. ¶¶ 82–85. The Trustee also contends that Winston solicited support for the Conversion Motion from other creditors. But the only factual allegations are (i) that Winston provided Neugebauer unspecified and unidentified "privileged information," and (ii) that Neugebauer forwarded various emails to Winston. Compl. ¶¶ 87–88. The Conversion Motion that Defendants allegedly wrongfully supported was ultimately denied. ECF 396 (Mem. Op. Denying Conversion Motion).

### ARGUMENTS & AUTHORITIES

The Trustee's claims should be dismissed because, ignoring the Complaint's "conclusory statements," the "well-pleaded facts" do not support a plausible inference—as opposed to the "mere possibility"—of actionable misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009).

I.      **The Trustee's Malpractice Claim Must Be Dismissed (Count 1)**

A.      **Texas Law Applies to the Malpractice Claim**

Blankenship and the other Winston attorneys involved in representing GloriFi worked out of Winston's offices in Houston. *See, e.g.*, Compl. ¶ 24. GloriFi's headquarters, from which it took the actions relevant to the Trustee's claims, was in Dallas. *See, e.g.*, ECF 396 at 12. Accordingly, Texas law governs the malpractice claim. *See Lam v. Thompson & Knight, LLP*, 2003 WL 22220666, at *3 (N.D. Tex. Sept. 25, 2003), *aff'd as modified sub nom. Lam v. Thompson & Knight,* 104 F. App'x 975 (5th Cir. 2004) (applying Texas law because legal work was performed in Texas); *Streber v. Hunter*, 221 F.3d 701, 720 (5th Cir. 2000) (applying Texas law to legal malpractice claim where client's alleged injury occurred in Texas, certain of the "conduct causing the injury" occurred in Texas, and client was "a resident of Texas").

B.      **As a Matter of Law, It Is Not Malpractice to Ably Perform Routine Legal Work at the Instruction of the Client, Even If It Furthers the Client's Imprudent Business Decisions**

The Trustee's malpractice claim must be dismissed because the Trustee has not plausibly pled that Defendants breached a duty of care. Breach of the standard of care applicable to attorneys is an essential element of a legal malpractice (*i.e.*, professional negligence) claim. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004).

After sifting through hyperbolic references to "John Grisham novels," *see* Compl. ¶ 3, the Trustee's factual allegations amount to a complaint that Defendants' client, GloriFi, made decisions—to pursue certain fundraising proposals rather than others, or to remove or add directors —which, with the benefit of hindsight, the Trustee views as imprudent. The Trustee does not allege that these decisions violated GloriFi's organizational documents, that any of these actions were illegal or fraudulent, or that the legal work performed in furtherance of these efforts was done incorrectly. Indeed, the only specific *legal work* alleged to have been performed is the drafting of

8

the Series 2 Notes—and the only allegation of misconduct is that they were dated, at the instruction of the client, as of the time the funds were received rather than as of the time they were signed. *See* Compl. ¶¶ 79–80. This is hardly the basis for a malpractice claim. *Cf. First Nat. Bank of Trinity, Tex. v. McKay*, 521 S.W.2d 661, 662 (Tex. App.—Houston [1st Dist.] 1975, no writ) ("The negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated."). Nor does the Trustee allege what specific different actions Defendants could or should have taken to change the decisions GloriFi made during this time.

These allegations cannot state a claim for malpractice because it is expressly *not* the responsibility of corporate counsel to provide *business advice* on which fundraising proposals might be superior or to select directors for an organization. Even the Texas Disciplinary Rules—which do not create standards of liability—state that "[w]hen constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful." Tex. Disc. R. Prof. Conduct R. 1.13, cmt. 6. Courts across the country agree. *See, e.g.*, *Damian for PFGBI, LLC v. Nelson Mullins Riley & Scarborough, LLP*, 317 F. Supp. 3d 1228, 1240 (N.D. Ga. 2017) ("The Court begins its analysis by rejecting any suggestion that every transactional attorney owes a duty to opine on the merits of the deal."); *In re Greater Southeast Community Hospital Corp.*, 333 B.R. 506, 529 (Bankr. D.D.C. 2005) (scope of attorney-client relationship did not include provision of business advice); *Abrams v. DLA Piper (US) LLP*, 2013 WL 2634767, at *8 (N.D. Ind. June 12, 2013) ("The Court agrees that the Defendant did not have a duty to give the Debtor business advice as to the advisability of its business transactions."); *Viner v. Sweet*, 70 P.3d 1046, 1052 (Cal. 2003) ("Courts are properly cautious about making attorneys guarantors of their clients' faulty business judgment."); *Kan. Pub. Emps. Ret. Sys. v. Kutak Rock*,

44 P.3d 407, 419 (Kan. 2002) ("Kutak Rock's duty as counsel for R & K did not include the duty

to determine if the Sharoff investment was prudent.").

Instead, the obligation of an attorney is to perform non-negligent legal work as expressly

authorized by its client, within the scope of its engagement. *See, e.g., Estate of Pollack v.*

*McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993) ("An attorney is under no duty to answer a lawsuit

until the client . . . requests the attorney to file an answer"); *Smith v. Smith*, 241 S.W.3d 904, 908

(Tex. App.—Beaumont 2007, no pet.) ("An attorney's employment only authorizes the attorney to

do those things authorized by the client."); *Garrett v. Giblin*, 940 S.W.2d 408, 410 (Tex. App.—

Beaumont 1997, no writ) ("An attorney at law is a special agent, and only has authority to do that

which he is employed to do."). Indeed, it could have been malpractice to *refuse* the instructions of

GloriFi's control persons. *Isaacs v. Schleier,* 356 S.W.3d 548, 557 (Tex. App.—Texarkana 2011,

pet. denied) ("Disobeying a client's lawful instruction has been routinely recited to be a

malpractice claim."); *McInnis v. Mallia,* 2011 WL 782229, at *7 (Tex. App.—Houston [14th Dist.]

Mar. 8, 2011, pet. denied) (mem. op.) ("An attorney can commit professional negligence by

. . . disobeying a client's lawful instruction . . . .").[3]

The Trustee does not allege that Defendants performed any legal work improperly. Instead,

the crux of the Complaint is—and all the asserted damages flow from—Defendants' alleged failure

to compel Neugebauer to cede "unilateral power" of control over GloriFi in March 2022, which

the Trustee speculates would have caused additional, unspecified capital to flow to GloriFi and

---

[3] *See also Boyd v. Brett–Major*, 449 So.2d 952, 954 (Fla. 3d DCA 1984) ("It is not the role of an attorney acting
as counsel to independently determine what is best for his client and then act accordingly. Rather, such an attorney is
to allow the client to determine what is in the client's best interests and then act according to the wishes of that client
within the limits of the law."); *Orr v. Knowles*, 337 N.W.2d 699, 702 (Neb. 1983); *O'Brien v. Spuck*, 99 A.D.2d 910,
472 N.Y.S.2d 514 (3d Dept. 1984) (attorney not negligent in failing to secure a note with a mortgage where the client
instructed him not to do so); *Murray Warehouse, Inc. v. Abelove*, 170 A.D.2d 1027, 566 N.Y.S.2d 171 (4th Dept. 1991)
(attorneys were not liable for failing to include property in a mortgage where they were not instructed to do so).

ultimately allowed it to close a potential de-SPAC transaction. Compl. ¶ 78 (claiming GloriFi would have succeeded "so long as" Winston compelled a "governance structure in which Neugebauer did not retain unilateral power to direct GloriFi").

No principle of law required Defendants to attempt to compel Neugebauer or GloriFi to change its governing structure for the benefit of other stakeholders. Indeed, Neugebauer was authorized, pursuant to Delaware law and GloriFi's organizational documents, to make business decisions for GloriFi—notwithstanding the wishes of its creditors, board members representing those creditors, or anyone else. Under Delaware law,[4] the majority shareholder has the right to replace board directors. *See Bragger v. Budacz*, 1994 WL 698609, at *4 (Del. Ch. Dec. 7, 1994) ("the fitness or unfitness of individuals to become directors is a matter for the stockholders to pass upon," and "it is the shareholders power to elect directors and to remove them during the course of their term"). And a majority shareholder also has the right to "block proposed transactions involving a sale of control." *In re Digex Inc. S'holders Litig.*, 789 A.2d 1176, 1196 (Del. Ch. 2000). Further, "Delaware law does not . . . impose on controlling stockholders a duty to engage in self-sacrifice for the benefit of minority shareholders." *In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1040 (Del. Ch. 2012). This means that even if a given transaction is "in the best interests of all stockholders," a "controller" has the lawful discretion to "affirmatively vote against"—and thus veto—such a transaction. *In re Sears Hometown & Outlet Stores, Inc. S'holder Litig.*, 309 A.3d 474, 511–12 (Del. Ch. 2024). Defendants cannot have been negligent in failing to stop Neugebauer from doing what he, as a majority shareholder in a Delaware corporation, had the authority to do.

Whether Neugebauer always acted in the best interests of GloriFi throughout his tenure as CEO is not at issue in this Motion. Rather, the Complaint centers on specific financing transactions

---

[4] Although Texas law governs the malpractice claim, GloriFi was a Delaware corporation, and so Delaware law controls the rights of its shareholders, directors, and executives. *Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000).

that Neugebauer proposed and certain decisions that Neugebauer made to remove or add directors to the Board—claiming that Winston's failure to somehow stop Neugebauer from taking these actions constitutes malpractice. Given Neugebauer's control under Delaware law and GloriFi's organizational documents, the Trustee has not and cannot plausibly plead that Defendants' supposed failure to supplant the business judgment of Neugebauer, the Board of GloriFi, or the supermajority of GloriFi's shareholders as to these specific actions constitutes malpractice. Even if there were some legal duty for Defendants to dissuade Neugebauer from his preferred course (which there is not), the Trustee cannot and does not plead that Defendants' declining to do so was something other than "a decision which a reasonably prudent attorney *could* make in the same or similar circumstance"—thus, the alleged failure to act is categorically "not an act of negligence even if the result is undesirable." *See Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989).

Further, the Trustee does not allege that GloriFi—including Neugebauer, Ayers, Findley, or others—was unaware of the financing options under consideration or the consequences of pursuing those options. Defendants cannot be liable for failing to tell them what they already knew. *See, e.g.*, *Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848, at *6 (N.D. Tex. July 31, 2020) (even in context of *fraud*, "if [client] knew they were committing—indeed, fully intended to commit—fraud, it is not apparent how [an attorney's] failure to tell them what they already knew could be a negligent breach of a lawyer's duty to the client") (quoting *Reneker v. Offill (Reneker II)*, 2009 WL 3365616, at *4–5 (N.D. Tex. Oct. 20, 2009) (Fitzwater, C.J.) (dismissing negligence claim against attorneys where complaint failed to allege client's unawareness of tortious activity))).

Therefore, in the absence of actual allegations of negligent legal work—*i.e.*, of error-ridden transactional documents or legal advice that clearly misstated the law—Defendants cannot be held liable for following the lawful instructions of their client. The malpractice claim must be dismissed.

### C. The Malpractice Claim Also Fails Because the Trustee Has Not Plausibly Pled Causation

Nor has the Trustee plausibly pled causation—*i.e.*, that Defendants caused GloriFi's demise. Under Texas law, the Trustee must "supply a causal link" between the alleged wrongdoing and the alleged damages. *See Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017). Under Texas law, negligence and causation are "separate inquiries." *Alexander*, 146 S.W.3d at 119; *see also, e.g.*, *PowerTrain, Inc. v. Ma*, 2014 WL 3897722, at *8 (N.D. Miss. Aug. 8, 2014) (dismissing legal malpractice claim for failing to "tie the alleged failure" to the alleged harm).

In a transactional malpractice case like this one, where the plaintiff alleges the client would have gotten a *better deal* but for defendants' conduct, the plaintiff must show that all necessary parties *would have agreed to* that better deal. *Forshee v. Moulton*, 694 S.W.3d 803, 812–13 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ("[T]o establish causation in this context, a legal malpractice plaintiff must show that the other party would have agreed to the additional or changed contractual term . . . ."); *Thompson & Knight LLP v. Patriot Expl., LLC*, 444 S.W.3d 157, 162–67 (Tex. App.—Dallas 2014, no pet.) (reversing judgment where there was no evidence that property would have sold for higher price had malpractice not delayed sale); *Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 188 n.5 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (rejecting claim that malpractice prevented more favorable settlement where there was no evidence opposing party would have agreed to such a settlement); *Tolpo v. Decordova*, 146 S.W.3d 678, 684 (Tex. App.—Beaumont 2004, no pet.) (plaintiff could not establish causation in malpractice case because plaintiff could not show what a third-party would have done in an alternative scenario).

Mere speculation about what a party to a hypothetical deal should have done is insufficient. Texas law demands facts supporting the inference that the actual party whose assent to the deal was necessary would, subjectively, have agreed to the purportedly non-negligent deal terms.

13

Hypothesizing "on what a reasonably prudent person would do" in a world without the attorney's allegedly negligent counsel is insufficient as a matter of law. *Unimex Logistics LLC v. Guerra*, 2025 WL 1912194, at *6 (Tex. App.—Corpus Christi, July 10, 2025). Here, the entire damages theory centers on the proposition that unnamed investors were "ready, willing and able to provide the funding needed to close the de-SPAC transaction . . . **so long as GloriFi** established and abided by a market-based and ethical governance structure **in which Neugebauer did not retain unilateral power to direct GloriFi**." Compl. ¶ 78 (emphasis added).

Even if the Court were to find it plausible that GloriFi's ultimate success hinged *entirely* on Neugebauer being willing to give up control in March 2022—a dubious proposition—the Trustee does not plausibly allege that *Defendants* caused Neugebauer to decline to cede control. Indeed, there is not a single allegation of any conversation, email, or action Defendants took to persuade or convince or cause Neugebauer to choose *not* to give up control, or to decline to pursue the DHC proposal. Nor is there any allegation that Defendants could have taken any action to cause Neugebauer to cede control. Just the opposite is true.

The Trustee affirmatively alleges that Neugebauer *never* intended to give up control because he wanted GloriFi for himself. Compl. ¶ 41 ("I knew this was coming and frankly I want for myself. . ."). This comes as no surprise: the Trustee has previously pled, in other lawsuits, that Neugebauer alone was responsible for GloriFi's demise. *See, e.g.*, ECF 1, Compl. ¶ 9, *Seidel, Trustee v. Neugebauer et. al.*, Adv. No. 25-03007-MVL ("The GloriFi story is the textbook example of an immensely valuable company being *destroyed by its own CEO*, majority shareholder, and Chairman of the Board (*i.e.*, Mr. Neugebauer) who *intentionally* breached his duty of loyalty by putting his own self-interests above those of the Company.").

As explained above, maintain control was arguably Neugebauer's right, because "[s]tockholders in Delaware corporations have a right to control and vote their shares in their own interest. . . . It is not objectionable that their motives may be for personal profit, or determined by whim or caprice, so long as they violate no duty owed other shareholders." *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840, 845 (Del. 1987). Even if it were not, it is implausible to suggest that any action by Defendants would have caused a different result. Delaware law recognizes that even board action is "futile" when a corporation has a majority, controlling shareholder. *Id.* (board intervention "would have been futile" given that single shareholder "owned approximately 65%" of the company and could thus "thwart any effort by [the] directors to auction the company").

Therefore, the Trustee has not plausibly pled causation. The Trustee does not plead that *Defendants' actions* caused Neugebauer or GloriFi to prefer maintaining the status quo, in which Neugebauer exercised complete control over GloriFi's affairs—a status quo that, according to the Trustee, caused GloriFi's inability to obtain funding and thus its demise. Nor has the Trustee pled that, had Defendants provided the unspecified counsel the Trustee claims they should have, Neugebauer would have changed his mind and accepted a deal that lessened his control. *See Taylor*, 2020 WL 4432848, at *6 ("If the client 'would have ignored [the attorney's] advice no matter how competently provided, the malpractice claim will fail for lack of proximate causation.'" (quoting *Smith v. O'Donnell,* 288 S.W.3d 417, 422 (Tex. 2009)). This is fatal to the Trustee's claim.

## II.    The Aiding & Abetting Claims Must Be Dismissed (Count 2)

### A.    Delaware Law Governs Aiding & Abetting Claims

The Trustee alleges that Defendants aided and abetted a breach of a fiduciary duty owed by Neugebauer to GloriFi, a duty controlled by Delaware law. *See, e.g.*, ECF 438 (Trustee's Orig. Compl. Against Neugebauer) ¶ 116 & n.2. Because Delaware law controls the underlying breach of fiduciary duty allegation, it also applies to the claim for aiding and abetting that breach. *See In*

*re Uplift RX, LLC*, 667 B.R. 665, 684 (Bankr. S.D. Tex. 2024) ("[T]here is no basis to apply different state laws to the predicate and derivative claims for aiding and abetting breach of fiduciary duty. Such application would be inconsistent with the internal affairs doctrine."); *In re Highland Cap. Mgmt., L.P.*, 2023 WL 5523949, at *34 (Bankr. N.D. Tex. Aug. 25, 2023) ("[B]ecause HMIT's breach of fiduciary duties claim is governed by Delaware law, its aiding and abetting theory of liability as to the Claims Purchasers is also governed by Delaware law." (citing *Xtreme Power Plan Tr. v. Schindler*, 563 B.R. 614, 632, 645 (Bankr. W.D. Tex. 2016), which "appl[ied] Delaware law to claim for aiding and abetting breach of fiduciary duty involving Delaware corporation headquartered in Texas")); *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1211–12 (Del. Ch. 2010) ("Under the internal affairs doctrine, Delaware law governs [the breach of fiduciary duty] claim, and Delaware law therefore also governs the aiding and abetting claim predicated on the underlying fiduciary breach."); *Buckley v. Deloitte & Touche USA LLP*, 2007 WL 1491403, at *13 (S.D.N.Y. May 22, 2007) ("[C]ourts in this district have regularly held that because claims of aiding and abetting a breach of fiduciary duty relate to the internal affairs of a corporation, they are also governed by the law of the state of incorporation.").

### B. The Trustee Cannot State Viable Aiding & Abetting Claims Against Defendants Because Defendants Separately Owed Fiduciary Duties to GloriFi

The Trustee's aiding and abetting allegations ignore well-settled Delaware law. "Delaware cases dealing with claims for aiding and abetting a breach of fiduciary duty have held that, as a matter of law, aiding and abetting liability generally cannot attach to defendants," like Winston and Blankenship, "who themselves owe fiduciary duties to the relevant entity and plaintiff." *CMS Inv. Holdings, LLC v. Castle*, 2015 WL 3894021, at *20 (Del. Ch. June 23, 2015); *see also In re Legendary Field Exhibitions, LLC*, 2023 WL 7852657, at *16 (Bankr. W.D. Tex. Nov. 13, 2023) ("Delaware courts 'generally prohibit aiding and abetting claims against parties that already stand

16

in direct fiduciary relationships.'" (internal citation omitted)). "This is because wrongful conduct on the part of the fiduciary would give rise to direct liability for a breach of duty, rather than secondary liability on the theory of aiding and abetting." *In re Drawn Another Circle*, 602 B.R. 878, 905 (Bankr. D. Del. 2013) (explaining why, under Delaware law, "aiding and abetting claims [are] prohibited" as against those in "direct fiduciary relationships" with the claimant). Thus, under Delaware law, a claim for aiding-and-abetting a breach of fiduciary duty may lie only against a "party not in direct fiduciary relationship." *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984); *see also Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986) (similarly requiring "participation in th[e] breach by the defendants who are not fiduciaries").

Because it is undisputed that Defendants owed their own fiduciary duties to GloriFi, Compl. ¶ 5, Defendants cannot be held liable for purportedly aiding and abetting Neugebauer's alleged breaches to GloriFi. *See Uplift RX*, 667 B.R. at 685 (Because "Baker Hostetler is a fiduciary of certain Alliance entities[,]" the Alliance trustee "cannot bring an aiding and abetting claim against Baker Hostetler with respect to Alliance"). Therefore, this claim must be dismissed.

### C.    The Trustee Cannot State Viable Aiding & Abetting Claims on the Basis of Transactions that Did Not Occur

The aiding and abetting claims must also be dismissed because they are predicated on transactions that ultimately did not happen. The proposed debt deals about which much of the Trustee's Complaint is concerned are not alleged to have been consummated—because, as this Court has already recognized, they were not. *See* ECF 145 at 5–6.

Delaware does not recognize a claim for breach of fiduciary duty based on *attempted* but *not consummated* self-dealing transactions. *Niehenke v. Right O Way Transp., Inc.*, 1996 WL 74724, at *2–3 (Del. Ch. Feb. 13, 1996) ("The court here attempts to distinguish between acts that constitute breach and acts more analogous to an 'attempted' or 'solicited' breach for which this

17

court will not impose or declare liability."); *see also Vills. of Five Points Ventures, LLC v. Vills. of Five Points Prop. Owners Ass'n, Inc.*, 2020 WL 6689973, at *5 (Del. Ch. Nov. 13, 2020) (dismissing claim because the proposed amendment "was never acted on" and later abandoned, eliminating any "actionable controversy under Delaware law"); *eBay Domestic Holdings, Inc. v. Newmark*, 2009 WL 3205674, at *2 (Del. Ch. Oct. 2, 2009) (rejecting fiduciary duty claim challenging "proposed-but-untaken actions" because "there is no contract or transaction for [the court] to examine"); *Chrysogelos v. London*, 1992 WL 58516, at *4 (Del. Ch. Mar. 25, 1992) (dismissing fiduciary duty claim because the complaint failed to allege that the solicited agreements were actually executed).

Therefore, any aiding and abetting claim predicated on any of the alleged, proposed debt deals that were not consummated must fail. The $10 million equity raise—*unanimously* approved by the Board—was the only transaction effectuated in March or April 2022, but the Trustee does not allege that this transaction was tortious. This disposes of all the allegations about the funding proposals considered by GloriFi in March and April 2022.

### D.    The Trustee Cannot State Plausible Aiding & Abetting Claims for Performing Competent, Routine Legal Work

The aiding and abetting claims also fail because they rest on conclusory allegations. The Trustee does not plausibly plead that Defendants knowingly participated in Neugebauer's alleged breaches of fiduciary duty, which requires that Defendants "act with the knowledge that the conduct advocated or assisted constitutes such a breach." *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2011). Applying this standard to a law firm requires pleading that the law firm "intentionally and knowingly caused" the alleged breach. *Morrison v. Berry*, 2020 WL 2843514, at *11 (Del. Ch. June 1, 2020) (dismissing claims that did not plausibly plead that Cravath knowingly caused the Board to carelessly draft and omit material facts). Providing general or

18

routine legal services, common in the industry, does not plausibly support an inference of knowing participation. *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 519 (D. Del. 2012) ("[A]llegations that Defendant provided legal services that were common in the industry, without more, does not support an inference that Defendant 'knowingly participated' in DBSI's fraudulent scheme."). This is because "an aiding and abetting claim . . . is one of the most difficult claims to prove and requires a showing of both *scienter* and substantial assistance to the primary actor amounting to participation in that actor's breach." *In re Mindbody, Inc. S'holder Litig.*, 332 A.3d 349, 404 (Del. 2024).[5]

Here, the Trustee alleges (i) that Neugebauer breached a fiduciary duty to GloriFi, and (ii) that Defendants provided corporate legal services to GloriFi. Such services included, according to the Complaint, "oversee[ing] a Board meeting," Compl. ¶ 49, and "sending out consents" for various stakeholders to sign, or not sign, Compl. ¶ 56. Nowhere, however, does the Complaint connect the dots between such ordinary transactional services provided by corporate counsel, on the one hand, and Defendants' purportedly having "knowingly and actively participated" in devising or implementing Neugebauer's so-called "scheme," on the other. Compl. ¶ 7.

For example, while the Trustee alleges that Defendants "proceeded to help" Neugebauer—without articulating how—"remove Ayers and Findley from the Board," Compl. ¶ 58, the Trustee does not assert that Neugebauer lacked the power to do so under any of GloriFi's governing documents. And, as the Court knows, a supermajority of GloriFi's shareholders approved these

---

[5] *See also In re Westech Cap. Corp.*, 2018 WL 1605171, at *11–12 (Bankr. W.D. Tex. Mar. 29, 2018) (reasoning that although Greenberg would have knowledge of some facts based on its legal services to the client, it could not have known of the alleged bad acts or whether those acts were in fact wrongful and therefore could not have knowingly participated in them); *Abrams v. McGuireWoods LLP*, 518 B.R. 491, 503–04 (N.D. Ind. 2014) (dismissing aiding and abetting claim against law firm because "in cases involving . . . lawyers, substantial assistance 'means something more than the provision of routine professional services.' . . . . If the law were otherwise, it would be nearly impossible for an attorney, no matter how scrupulous, to avoid liability for a client's misdeeds" (cleaned up)).

actions. Winston cannot be assumed to have known it would have been a breach of fiduciary duty for shareholders to remove board members as the shareholders were *allowed to do* under GloriFi's governing documents. ECF 145 at 7.

And while the Trustee alleges that the Series 2 Notes were (a) granted to certain insiders and (b) dated as of the date of funding, rather than the date of closing, Compl. ¶ 80, neither states a claim for aiding and abetting. First, while a security interest granted to an insider may be voided under the Bankruptcy Rules in certain circumstances, it is not inherently a breach of fiduciary duty for an insider to loan a company money. *Cf. In re* S*I Restructuring, Inc.*, 532 F.3d 355, 357–63 (5th Cir. 2008) (insider status alone not sufficient to void security interests); *United States v. Colorado Invesco, Inc.*, 902 F. Supp. 1339, 1344 (D. Colo. 1995) ("An insider loan is not inherently improper."). Second, as the Court well knows, the Series 2 Notes were simply dated as of the "date of funding by the investor" even if they were not executed until a few months later. ECF 145 at 11; *see also* TEX. BUS. & COM. CODE § 3.113 (stating that a negotiable instrument can be "antedated or postdated"). Even the Trustee acknowledges that only a couple of weeks separated the signing of the Collateral Agency and Guarantee Agreements and the signing of the last of the Series 2 Notes. Compl. ¶ 80. The legal work of documenting Notes for loans made to GloriFi, at the direction of GloriFi's Board, which allowed GloriFi to keep its doors open, cannot be mischaracterized as knowing participation in any breaches of fiduciary duty. *See Zazzali*, 482 B.R. at 519. This holds true even if certain of those Notes were later invalidated by the Bankruptcy Court due to specific Bankruptcy Rules—which would, of course, have nullified any harm caused by the issuance of those Notes, since it meant GloriFi received any associated funds *for nothing*.

None of these allegations, alone or together, are sufficient to plausibly plead that Defendants' preparation of board consents and promissory notes constituted knowing participation in any breaches of fiduciary duty by Neugebauer.

## III.    Post-Petition Conduct Allegations Do Not Support Any Claims

In addition to claims that are at least tangentially connected to Winston's legal representation of GloriFi, the Trustee also criticizes Winston for its post-Petition conduct, long after it ceased performing legal work for GloriFi. Specifically, the Trustee seeks to impose liability on Winston for (i) signing on, as an unsecured creditor, in support of Neugebauer's Chapter 11 Conversion Plan, and (ii) partially reviewing a draft Complaint that Neugebauer had prepared against various third parties. *E.g.*, Compl. ¶ 87. It is not plausibly tortious for an unsecured creditor to prefer or to vote for one bankruptcy plan or course of action over another. *E.g.*, *In re Figter Ltd.*, 118 F.3d 635, 639 (9th Cir. 1997). Further, there is no allegation that Winston continued to represent GloriFi at that time. Winston had been hired to prepare filings for a de-SPAC transaction that had been mooted by bankruptcy. *JuxtaComm-Tex. Software, LLC v. Axway, Inc.*, 2010 WL 4920909, at *2 (E.D. Tex. Nov. 29, 2010) ("The general rule is that representation of a client ends when the purpose of that representation ends."). And Neugebauer no longer owed fiduciary duties at that time. *In re Longhorn Paving & Oilfield Servs., Inc.*, 647 B.R. 679, 696 (Bankr. S.D. Tex. 2022), *adhered to on denial of reconsideration*, 648 B.R. 300 (Bankr. S.D. Tex. 2023) ("Awbrey did not owe Debtor a fiduciary duty as its president after [resignation]."). That alone is enough to make these allegations irrelevant.

Likewise, the allegation that Winston shared unspecified "privileged information" with Neugebauer post-Petition is purely conclusory and thus insufficient to survive Rule 12(b)(6). The Trustee's allegations fail to identify what "information" was purportedly disclosed, how its disclosure harmed the estate, or whether Neugebauer, who was CEO during Winston's entire

representation, already had access to the purportedly privileged information. *See* Compl. ¶ 4; *Kenny v. Simon*, 2023 WL 6960385, at *4 (D.D.C. Oct. 20, 2023) (holding allegation "in conclusory terms that [lawyer] disclosed confidential information" not sufficient to state a claim); *Wellgistics, LLC v. Welgo, Inc.*, 2024 WL 4327343, at *9 (Del. Super. Ct. Sept. 27, 2024), *as corrected* (Nov. 25, 2024) ("The Court need not accept conclusory allegations and there are no well pled allegations that *Welgo* disclosed its confidential information. . . ."); *cf. Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 50 (2d Cir. 2018) (dismissing a party's breach of NDA claim for "fail[ing] to define its alleged proprietary information with sufficient specificity").

## IV.   Fraudulent Transfer and Disallowance Claims Must Likewise Be Dismissed

At the end of the Complaint, without meaningful factual support, the Trustee alleges a laundry list of claims attempting to (i) claw back the less than $790,000 in legal fees Winston was paid in early 2022 for its legal work for GloriFi, and (ii) disallow the $1.9 million unsecured claim for unpaid legal fees that Winston previously filed. Each claim is addressed in turn below.

### A.   The § 548 Claim for Constructive Fraud Fails (Count 3)

To plead constructive fraud under § 548, the Trustee must allege facts showing: (1) a transfer of the debtor's property, (2) within the statutory period, (3) for which the debtor "did not receive reasonably equivalent value," and (4) the debtor was insolvent at the time or rendered insolvent (or was left with unreasonably small capital or unable to pay debts) as a result. *See* 11 U.S.C. § 548(a)(1)(b). Here, the Complaint does little more than recite these elements in a conclusory fashion—that GloriFi paid approximately $790,890 in legal fees to Winston and "*obviously did not receive reasonably equivalent value*," and that GloriFi was insolvent at the time or became insolvent because of the transfers. Compl. ¶ 111.

Such formulaic allegations, unsupported by specific facts, are insufficient. Courts have made clear that "threadbare allegations regarding a debtor's insolvency are insufficient to satisfy

*Iqbal* and *Twombly.*" *In re Expert S. Tulsa, LLC*, 522 B.R. 634, 653 (B.A.P. 10th Cir. 2014), *aff'd*, 619 F. App'x 779 (10th Cir. 2015); *Crescent Res., LLC v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (simply mirroring the elements of § 548 held insufficient). This should be particularly true here, where Court records reflect that the paid legal fees were incurred prior to March 2022 and earlier, well before any plausible allegation of insolvency. *See* Claim 15-1 (showing that GloriFi stopped paying Winston's fees in April 2022); ECF 145 at 37–38 (crediting opinion that GloriFi was solvent until at least June 30, 2022).

Further, the allegations do not support a plausible inference that GloriFi failed to receive reasonably equivalent value. *In re All Tex. Elec. Contractors, Inc.*, 2022 WL 162786, at *7 (Bankr. S.D. Tex. Jan. 18, 2022) ("A complaint, however, must do more than just summarily state there was 'less than a reasonably equivalent value in exchange.'"). The Trustee does not break down *any* transfer—and it is the Trustee's burden to do so for each. Nor does the Trustee allege facts plausibly showing that GloriFi did not receive reasonably equivalent value for any month in which it paid a legal invoice. *See id.* at *10 ("[I]t was Plaintiff's burden to break down each transfer and show that it did not receive reasonably equivalent value, and Plaintiff failed to do so."); *In re The Brown Sch.*, 368 B.R. 394, 413–14 (Bankr. D. Del. 2007) ("Although the Trustee alleges that Winstead was the transferee of $700,000 in legal fees, he does not allege enough facts from which the Court may conclude that the payment was for less than reasonably equivalent value or was to hinder, delay, or defraud the Debtors' creditors."). This is particularly true where the funds sought are for services that Winston indisputably rendered. It is implausible for the Trustee to claim that every hour of legal services Winston provided was valueless.

**B.    The TUFTA Claim Fails (Count 4)**

Likewise, the Trustee has not stated a claim under the substantially similar Texas Uniform Fraudulent Transfer Act. This count is pled "in the alternative" to Count 3 but is based on the same

transfers and theory. The elements of a constructive fraudulent transfer under TUFTA mirror the § 548 elements discussed above. *See* TEX. BUS. & COM. CODE § 24.005. Courts in this Circuit dismiss TUFTA constructive fraud claims that lack factual substance. For example, in *All Texas Electrical Contractors*, the court dismissed a TUFTA claim that—like here—offered only naked assertions of the debtor's poor financial condition. 2022 WL 162786, at *8; *see also In re Specialty Select Care Ctr. of San Antonio, LLC*, 2021 WL 3083522, at *11 (Bankr. N.D. Tex. July 21, 2021) (holding complaint had not plausibly pled "receipt of less than reasonably equivalent value").

Moreover, the Texas Supreme Court has held that, by law, market rate services provided at arm's length constitute reasonably equivalent value. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 564 (Tex. 2016) (holding "reasonably equivalent value" is satisfied if transferee "(1) fully performed under a lawful, arm's-length contract for fair market value, (2) provided consideration that had objective value at the time of the transaction, and (3) made the exchange in the ordinary course of the transferee's business"). The Trustee does not even allege that Winston's rates were not market rates or that Winston's services were not negotiated at arm's length. Further, value is based on "objective value at the time of the transfer even if the consideration neither preserved the debtor's estate nor generated an asset or benefit. . . ." *Id.* at 577. And Winston's legal services *indisputably had objective value at the time of the transaction*, as evidenced by the fact that GloriFi hired the firm and requested they perform legal work. TUFTA does not empower courts to void transfers *even if* the debtor's bargain turned out to be poor in hindsight. Count 4 rests on the same conclusory assertions as Count 3 and should also be dismissed.

### C.    The Section 550 Claim for Recovery of Transfer Fails (Count 5)

The Trustee, in Count 5, seeks to "recover" the value of the alleged transfers under Bankruptcy Code § 550. Section 550(a) is not a standalone claim but a remedy provision: it allows a bankruptcy estate to recover property (or its value) only if a transfer has first been avoided under

24

another avoidance provision (such as § 548 of the Bankruptcy Code). Count 5 should therefore be dismissed because the Complaint fails to state any avoidable transfer in the first instance.

### D.      The Section 502 Claim for Disallowance Fails (Count 6)

In Count 6, the Trustee seeks to disallow Winston's proof of claim under § 502(d). Section 502(d) is a mechanism to encourage the return of avoided transfers: it withholds distribution on a transferee's own claims against the estate until that transferee satisfies any judgment for an avoided transfer. By its terms, therefore, § 502(d) applies only *after* a determination that the claimant received an avoidable transfer. *In re Margaux Tex. Ventures, Inc.*, 545 B.R. 506, 522 (Bankr. N.D. Tex. 2014) ("502(d) cannot be utilized unless there has already been an adjudication of liability in an avoidance action."); *In re IFS Fin. Corp.*, 2008 WL 4533713, at *5 (Bankr. S.D. Tex. Oct. 2, 2008) ("The Fifth Circuit holds that § 502(d) operates to enforce orders and judgments, not to disallow claims based on theoretically avoidable transfers when no liability has been established . . . ."). Here, Count 6 is premature and unsupported, so it should also be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully urge this Court to dismiss all claims against them with prejudice, deny any further request from the Trustee to replead, and order such other and further relief to which they are entitled.

Respectfully submitted,

| | |
|---|---|
| */s/ Ashley M. Kleber* | */s/ Louis R. Strubeck, Jr.* |
| **BARRETT H. REASONER** | **LOUIS R. STRUBECK, JR.** |
| Texas Bar No. 16641980 | Texas Bar No. 19425600 |
| E-Mail: breasoner@gibbsbruns.com | E-mail: lstrubeckjr@omm.com |
| **ASHLEY M. KLEBER** | **SCOTT P. DRAKE** |
| Texas Bar No. 24060263 | Texas Bar No. 24026812 |
| E-Mail: akleber@gibbsbruns.com | E-mail: sdrake@omm.com |
| **ROSS M. MACDONALD** | **LAURA SMITH** |
| Texas Bar No. 24087956 | Texas Bar No. 24066039 |
| E-Mail: rmacdonald@gibbsbruns.com | Email: lsmith@omm.com |
| | |
| **GIBBS & BRUNS LLP** | **O'MELVENY & MYERS LLP** |
| 1100 Louisiana | 2801 North Harwood Street |
| Suite 5300 | Suite 1600 |
| Houston, Texas 77002 | Dallas, Texas 75201-2692 |
| Telephone: (713) 650-8805 | Telephone: (972) 360-1900 |

### ***Counsel for Defendants Winston & Strawn LLP and Michael Blankenship***

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, contemporaneously with its filing, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this adversary proceeding.

*/s/ Ashley M. Kleber*
Ashley M. Kleber