Chase J. Potter
Texas Bar No. 24088245
Joshua J. Iacuone
Texas Bar No. 24036818
Greg McAllister
Texas Bar No. 24071191
Anna Olin Richardson
Texas Bar No. 24102947
potter@imcplaw.com
josh@imcplaw.com
greg@imcplaw.com
anna@imcplaw.com
IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
214.432.1536

COUNSEL FOR THE AGENT AND
SPECIAL COUNSEL FOR TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| WITH PURPOSE, INC., | § | Case No. 23-30246-MVL-7 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 25-03105-mvl |
| | § | |
| WINSTON & STRAWN LLP; and | § | |
| MICHAEL BLANKENSHIP, | § | |
| | § | |
| Defendants. | § | |

## TRUSTEE'S BRIEF IN RESPONSE TO WINSTON & STRAWN LLP'S AND MICHAEL BLANKENSHIP'S MOTION TO DISMISS TRUSTEE'S ORIGINAL COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT AND AUTHORITIES ...................................................................... 3

    A.    Applicable Legal Standards ................................................................................. 3

        i.    *Rule 12(b)(6)* ................................................................................................ 3

        ii.    *Judicial Notice*............................................................................................. 4

        iii.    Defendants' *Spin on the Facts Must Be Rejected at the 12(b)(6) Stage* ............... 5

    B.    Dismissal of the Trustee's Negligence Claim is Improper ................................. 5

        i.    *Defendants Were Obligated to Take Reasonable Remedial Action and Warn Their Client of the Risks in Neugebauer's Self-Dealing and Unlawful Activities* ................................................................................................... 7

        ii.    *Defendants' Insistence that Neugebauer was "Authorized" to Perform Any Wrongful Conduct is (1) Wrong and (2) Entirely Improper for the 12(b)(6) Stage* ............................................................................................ 12

        iii.    *The Trustee Plausibly Pled Causation* .............................................. 13

    C.    Dismissal of the Trustee's Aiding & Abetting Claim is Improper................................. 16

        i.    *The Trustee Properly Pleads an Alternative Aiding and Abetting Claim* ........... 16

        ii.    *Defendants' Argument Regarding Never Consummated Transactions Fails*...... 18

        iii.    *The Trustee Alleges Much More than Defendants' Performance of "Routine Legal Work* ................................................................................ 22

    D.    Defendants' Arguments Regarding the Relevance of Their Post-Petition Conduct Provide No Support for the Motion or the Relief Requested Therein............................. 23

    E.    The Trustee Seeks Leave to Amend the Fraudulent Transfer and Disallowance Claims........................................................................................................... 24

III.    ALTERNATIVE MOTION FOR LEAVE TO AMEND ................................. 25

IV.    CONCLUSION.................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 3

*Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No. 11802-VCL, 2018 WL 3326693 (Del. Ch. July 6, 2018)................................................................................................ 20, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................... 3, 14

*DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512 (Tex. App.—Eastland 2017, pet. denied) ...... 10

*Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471 (E.D. Tex. 2022)..................................... 5

*Dura Pharmas., Inc. v. Broudo*, 544 U.S. 336 (2005) ................................................. 14

*Floyd v. Hefner*, 556 F.2d 617 (S.D. Tex. 2008) ........................................................ 17

*Genmoora Corp. v. Gardere & Wynne*, No. 05-93-00923-CV, 1997 WL 499695 (Tex. App.—Dallas Aug. 25, 1997, no pet.) ............................................................................................... 16

*George v. SI Grp. Inc.*, 36 F.4th 611 (5th Cir. 2022)................................................... 12, 13

*In re Goodman Networks, Inc.*, No. 22-31641-MVL7, Adv. No. 24-03037-MVL, 2025 WL 73072 (Bankr. N.D. Tex. Jan. 10, 2025) ..................................................................... 2, 3, 8

*In re James*, 300 B.R. 890, 895 (Bankr. W.D. Tex. 2003) ........................................... 4

*In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ, 2021 WL 2546664 (Bankr. N.D. Tex. June 3, 2022) ......................................................................................................... 2, 3

*In re Rural Metro Corp.*, 88 A.3d 54 (Del. Ch. 2014) ................................................. 20

*In re Think3, Inc.*, 529 B.R. 147 (Bankr. W.D. Tex. 2015) .......................................... 4

*In re TOCFHBI, Inc.*, 413 B.R. 523 (Bankr. N.D. Tex. 2009)...................................... 17

*In re Transkaryotic Therapies, Inc.*, 954 A.2d 346 (Del. Ch. 2008)............................. 21

*In re Uplift RX, LLC*, 667 B.R. 665 (S.D. Tex. 2024)................................................. 17

*In re W.J. Bradley Mortgage Capital, LLC*, 598 B.R. 150 (Bankr. D. Del. 2019) ...................... 17

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019)........................ 4

*Innova Hosp. San Antonio, Ltd. P'ship v. BCBS of Ga., Inc.*, 892 F.3d 719 (5th Cir. 2018) .......... 3

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009)............................................. 3, 14, 16

*McRitchie v. Zuckerberg*, 315 A.3d 518 (Del. Ch. Ct. 2024)....................................... 13

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ................................ 17

*OTK Assocs., LLC v. Friedman*, 85 A.3d 696 (Del. Ch. 2014).................................... 19

*Stanfield v. Neubaum*, 494 S.W.3d 90 (Tex. 2016) .................................................... 5, 16

*Teurza – A Fairchild Tech. Venture Ltd. v. Lindon*, No. 2022-0130-SG, 2023 WL 3118180 (Del. Ch. Apr. 27, 2023) ............................................................................................... 17

*Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586 (5th Cir. 2016) ..................................................... 25

*Thompson & Knight LLP v. Patriot Exploration, LLC*, 444 S.W.3d 157 (Tex. App.—Dallas 2014, no pet.) ............................................................................................................. 14, 15

*Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436 (Del. 1996) ............................................ 19

*Vardeman v. Houston*, 55 F.4th 1045 (5th Cir. 2022) .................................................................... 4

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ............................................ 3

*Zimmerman v. Crothall*, 62 A.3d 676 (Del. Ch. 2013) ................................................................ 17

**Statutes**

11 U.S.C. § 548(a)(1)(B) .............................................................................................. 24

Tex. Bus. & Com. Code § 24.005(a)(2) .................................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................... 2, 3, 4, 5, 8, 12, 13, 17, 22, 23, 25

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 25

Fed. R. Evid. 201(b)(2) ............................................................................................. 4

Tex. Disciplinary R. Prof'l Conduct 1.13 ................................................................. 1, 8, 9, 10

## I.    <u>INTRODUCTION</u>[1]

1.     Winston Strawn begins its Motion by arguing the Trustee's Complaint "improperly seeks to turn a lawyer's duty on its head," claiming denial of the Motion and allowing the Trustee's claims to proceed would "set an extraordinary and dangerous precedent." *See* Mot. at 1. Winston Strawn's opening argument has no merit. But it is rich in irony, because the ***opposite*** of what Winston Strawn claims is true.

2.     It is Winston Strawn – not the Trustee – that seeks to "turn a lawyer's duty on its head." It is Winston Strawn – not the Trustee – that seeks to "set an extraordinary and dangerous precedent." Winston Strawn asks this Court to create a blanket immunity that would allow corporate lawyers to intentionally ignore and betray the fiduciary obligations owed to their clients without consequence. If Winston Strawn's position is accepted, a corporate lawyer can evade liability simply by claiming, "the company's CEO told me to do it" – even if the lawyer knows such actions constitute a breach of fiduciary duty, violate federal securities laws, or are otherwise unlawful. This untenable position, for which Winston Strawn advocates in this lawsuit, would certainly create an extraordinary and extremely dangerous precedent. Thankfully, for the sake of corporate clients throughout this country (and investors in same), that is not the law.

3.     Winston Strawn owed various fiduciary obligations to its client – GloriFi. For example, under Rule 1.13 of the Texas Disciplinary Rules of Professional Conduct, Winston Strawn was ***required*** to take reasonable remedial measures once it learned GloriFi's CEO – Toby Neugebauer ("Neugebauer") – was engaging, and intended to further engage, in breaches of fiduciary duties and/or unlawful activity that would likely (and did) proximately cause severe harm

---

[1]     Capitalized terms not defined herein shall have the same meaning as defined in the Complaint (Adv. Dkt. No. 1) and/or the Trustee's Objection to the Motion being filed herewith (Adv. Dkt. No. 14).

to GloriFi – specifically, through the foreseeable loss of investor confidence resulting in GloriFi's

inability to secure the funding needed to close the very de-SPAC transaction Winston Strawn was

retained to guide GloriFi through and take the Company public at a valuation of $1.7 billion. Rather

than fulfilling the Firm's duties and taking reasonable remedial actions, Winston Strawn chose to

favor Neugebauer and assisted Neugebauer in carrying out his breaches of duties and unlawful

activities to the detriment of Winston Strawn's own client. Winston Strawn cannot escape liability

for its serious acts and omissions through Defendants' 12(b)(6) Motion.

4.      The procedural context of this Motion matters. This is not trial. This is not even the

summary judgment stage. This is a 12(b)(6) motion. As the Court knows, 12(b)(6) motions are

viewed with disfavor and are rarely granted in the Fifth Circuit.[2] This is not the unique type of case

for which dismissal with prejudice at the early 12(b)(6) stage (before any discovery is conducted)

is appropriate. Not even close.

5.      Instead, as evidenced by the Motion itself, fact issues abound. The Trustee's

Complaint easily satisfies the low bar set by Rule 12(b)(6). Winston Strawn will have its day in

court. Winston Strawn will have the opportunity to present its "side of the story," and can then try

to refute the overwhelming evidence against the Firm. Winston Strawn will get that opportunity at

the trial of this case; not the 12(b)(6) stage. For these reasons and those set forth below, the Trustee

respectfully requests this Court issue an order denying the Motion and permitting the Trustee to

proceed with conducting discovery and preparing this important case for trial.

---

[2]      *In re Goodman Networks, Inc.*, No. 22-31641-MVL7, Adv. No. 24-03037-MVL, 2025 WL 73072, at *2
(Bankr. N.D. Tex. Jan. 10, 2025) (quoting *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ, 2021 WL 2546664, at
*1 (Bankr. N.D. Tex. June 3, 2022).

## II.    ARGUMENT AND AUTHORITIES

### A.    Applicable Legal Standards

#### i.    Rule 12(b)(6)

6.    "Rule 12(b)(6), incorporated by Bankruptcy Rule 7012(b), authorizes dismissal of a complaint that 'fails to state a claim upon which relief can be granted.'"[3] "In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff."[4]

7.    To properly state a claim, the Trustee must plead sufficient factual matter which, when taken as true, states "a claim to relief that is plausible on its face."[5] Facial plausibility is satisfied where the Trustee pleads facts that allow the Court to draw a reasonable inference that the Defendants are liable for the misconduct alleged.[6] While the Trustee must raise the right to relief above a speculative level, ***the Trustee is <u>not</u> required to prove the merits of his allegations at this stage***.[7] Further, though the Trustee must provide "more than labels and conclusions," ***the Trustee does <u>not</u> need to provide "detailed factual allegations."***[8]

8.    In the Fifth Circuit, "***a motion to dismiss under Rule 12(b)(6) is generally viewed with <u>disfavor</u> and <u>rarely granted</u>***."[9] Further, courts resolve all questions of fact and ambiguities of

---

[3]    *Goodman*, 2025 WL 73072, at *1 (Bankr. N.D. Tex. Jan. 10, 2025) (quoting FED. R. CIV. P. 12(b)(6) (internal brackets omitted)).

[4]    *Goodman*, 2025 WL 73072, at *1 (Bankr. N.D. Tex. Jan. 10, 2025) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)).

[5]    *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6]    *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7]    *See Twombly*, 550 U.S. at 555-56.

[8]    *See id.* at 555 (emphasis); *see also Innova Hosp. San Antonio, Ltd. P'ship v. BCBS of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

[9]    *Goodman*, 2025 WL 73072, at *2 (quoting *Reagor-Dykes*, 2021 WL 2546664, at *1 (emphasis)); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

law in the Trustee's favor.[10] In deciding the Motion, "the factual information to which the court addresses its inquiry is limited to: (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."[11]

9.      For the reasons set forth herein, the Trustee has easily pleaded sufficient factual matter for the Court to infer Defendants are liable for the misconduct alleged. Thus, the Motion should be denied.

ii.    <u>Judicial Notice</u>

10.      Defendants attempt to use the concept of "judicial notice" to rewrite the allegations in the Trustee's Complaint. Specifically, Defendants ask the Court to adopt Defendants' narrative as established "facts" in this case under the guise of judicial notice. Defendants' strategy is inconsistent with the applicable standard for a court's ability to take "judicial notice" under Federal Rule of Evidence 201, especially in the Rule 12(b)(6) context.[12]

11.      To the extent the Court takes judicial notice of any evidence or findings of fact from a separate proceeding, it certainly cannot be of any fact Defendants believe contradicts the allegations in the Trustee's Complaint (which would undoubtedly be "subject to reasonable dispute"). *See Think3*, 529 B.R. at 171. Further, Defendants cannot use the concept of "judicial notice" to expand upon (and, in some instances, mischaracterize) this Court's findings of fact in

---

[10]      *See Vardeman v. Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022).

[11]      *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

[12]      "Under Rule 201 (b)(2) of the Federal Rules of Evidence ("FRE"), a court may take judicial notice of a fact that 'is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *In re Think3, Inc.*, 529 B.R. 147, 171 (Bankr. W.D. Tex. 2015) (citing FED. R. EVID. 201(b)(2)). "The party requesting judicial notice has the burden of persuading the trial judge that the fact is appropriate for judicial notice." *In re James*, 300 B.R. 890, 895, 897 (Bankr. W.D. Tex. 2003) (noting also that "judicial notice of court records generally has a limited purpose" (such as authenticating documents) and that "courts 'do not search outside a record in order to notice documents in another case, even where the same parties are involved, unless the proceedings are put in evidence'").

other adversary proceedings in the Debtor's bankruptcy and then rely on same in support of

Defendants' attempt to secure dismissal of the Trustee's claims in this case.[13]

iii.   _Defendants'_ Spin on the Facts Must be Rejected at the 12(b)(6) Stage

12.   Defendants selectively cite, try to rewrite, and – in some instances – flat out ignore

the Trustee's pleaded allegations. Defendants also attempt to present their own version of the

"facts" and, based on those alleged "facts," ask the Court to grant their Motion.

13.   Defendants will have the opportunity to present their "side of the story" and attempt

to refute the Trustee's well-supported allegations – that opportunity will be at the trial of this

matter. But the determination of disputed fact issues is impermissible at the 12(b)(6) stage.[14] The

sheer number of factual arguments made by Defendants in their Motion, on its own, justifies denial

of the Motion.  Moreover, Defendants' efforts to reverse the standard for analyzing pleadings at

the 12(b)(6) stage is unsupported and requires denial of the Motion.

**B.   Dismissal of the Trustee's Negligence Claim is Improper**

14.   Defendants claim the Trustee's legal malpractice claim[15] must be dismissed because

the Trustee did not "plausibly" allege Defendants breached the duty of care Defendants owed to

---

[13]   For example, Defendants cite p.6 of this Court's Memorandum Opinion, Findings of Fact, and Conclusions of Law in Adversary Proceeding No. 24-03038-MVL (hereinafter, the "June 16 Opinion") for the following proposition: "Neugebauer then exercised his power under the Stockholder's Agreement to add two new directors, Charlie Hamilton and John Norwood." _See_ Mot. at 5. However, at no time in the June 16 Opinion did the Court say that Neugebauer's appointment of Charlie Hamilton and John Norwood was pursuant to any purported "power" Neugebauer had under "the Stockholder's Agreement." Instead, Defendants mischaracterize the Court's findings in a separate adversary proceeding to support Defendants' latest excuse that Neugebauer supposedly had authority under GloriFi's governing documents to do whatever he wanted (which, as set forth below, requires an analysis of evidence that is not incorporated into the Trustee's Complaint and therefore is improper for the 12(b)(6) stage).

[14]   _See Doe v. Beaumont Indep. Sch. Dist._, 615 F. Supp. 3d 471, 484 n.4 (E.D. Tex. 2022) ("But this constitutes an improper attempt to rewrite the facts alleged in Jane Doe 1's amended complaint in a light favorable to the Defendant. The Court will not entertain this argument, as it improperly reverses the traditional standard for analyzing pleadings at the 12(b)(6) stage.").

[15]   In asserting an attorney malpractice claim based on negligence, a "plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages." _Stanfield v. Neubaum_, 494 S.W.3d 90, 96 (Tex. 2016).

---

their client, GloriFi. *See* Mot. at 8. Specifically, Defendants contend the Trustee has merely alleged Defendants performed non-negligent legal work and followed instructions regarding business decisions that were "expressly authorized" by GloriFi's majority shareholder and control person (*i.e.*, Neugebauer). *See id.* at 10. As such, Defendants claim their hands are clean and, therefore, dismissal is warranted. But a mere cursory review of the Trustee's Complaint reveals the fatal flaws in Defendants' attempt to reframe the Trustee's claims in this lawsuit and shirk responsibility for Defendants' actions and failure to act.

15.     Defendants either misunderstand or intentionally mischaracterize the Trustee's allegations and claims. The crux of the Trustee's negligence claim can be summarized as follows: Defendants were retained by GloriFi to represent the Company in connection with the de-SPAC transaction.[16] Defendants were negligent (*i.e.*, committed malpractice) in their representation of GloriFi because: (i) Defendants *knew* Neugebauer was engaging, and intended to further engage, in breaches of fiduciary duties and/or unlawful activity that would likely (and did) proximately cause severe harm to GloriFi—specifically, through the foreseeable loss of investor confidence resulting in GloriFi's inability to secure the funding needed to close the very de-SPAC transaction Defendants were retained to guide GloriFi through and take the Company public at a valuation of $1.7 billion;[17] (ii) Defendants failed to warn or adequately advise GloriFi of the risks in the known actions and/or proposed actions (specifically, the foreseeable risks such known actions would have on GloriFi's ability to close the very de-SPAC transaction for which Defendants were retained);[18] (iii) Defendants failed to take any action to protect the interests of their client GloriFi (as

---

[16]     *See* Pl.'s Complaint ¶¶ 4, 23, 26.

[17]     *See* Pl.'s Complaint ¶¶ 7, 28, 32, 39, 58, 71, 78, 95, 101.

[18]     *See* Pl.'s Complaint ¶¶ 28, 71, 94.

Defendants were required);[19] and, (iv) instead, Defendants actively participated and assisted Neugebauer in breaching fiduciary obligations owed to GloriFi, engaging in unlawful activity, and harming GloriFi.[20]

16.    The Motion makes no meaningful attempt to focus on the Trustee's *actual* allegations in the Complaint. Instead, Defendants attempt to deflect, reframe, and evade responsibility for their negligence. For the reasons set forth herein, the requested dismissal of the Trustee's negligence claim should be denied.

    i.    <u>Defendants Were Obligated to Take Reasonable Remedial Action and *Warn* Their Client of the Risks in Neugebauer's Self-Dealing and Unlawful Activity</u>

17.    Defendants' primary argument in support of their request for dismissal of the Trustee's negligence claim can be summarized as follows: Neugebauer, according to Defendants, had the ability to do whatever he wanted; irrespective of the Trustee's allegations that Defendants *knew* Neugebauer's conduct (and proposed course of action) (i) breached fiduciary obligations owed to the Company, (ii) was unlawful (*e.g.*, constituted securities fraud), and (iii) would result in GloriFi suffering massive monetary harm. *See* Mot. at 1, 5, 9-12. Defendants attempt to downplay Neugebauer's actions (all of which the Trustee alleges Defendants were aware of at the time Defendants served as Company counsel) as nothing more than "imprudent business decisions." *See id.* at 8. Defendants also attempt to put all the blame on Neugebauer and conveniently ignore the numerous allegations in the Complaint that, not only were Defendants aware of, and actively participated in and/or helped Neugebauer facilitate, the barrage of self-dealing, breaches of fiduciary obligations, and unlawful activity, Defendants did *nothing* to protect the Company from such actions or adequately warn/advise the Company of the risks in such

---

[19]    *See* Pl.'s Complaint ¶¶ 5, 28, 30, 32, 49, 66-67, 106.

[20]    *See* Pl.'s Complaint ¶¶ 6-7, 28, 39, 49, 55, 61, 64-65, 69, 77, 83, 90-91, 94-95, 102-104, 106.

actions, the Company's options to protect itself, and/or how to best position the Company to close the de-SPAC transaction for which Defendants were retained to guide the Company through its closing. *See* Compl. ¶¶ 4-5, 7, 28, 32, 39, 49, 58, 71, 78, 94-95, 101.

18.     Defendants now throw up their hands and claim they were not obligated to do anything to protect the Company. Defendants claim they were not obligated to advise the Company of the risks in the controlling person's conduct and proposed course of action (specifically, the foreseeable negative impact such conduct, which the Trustee alleges Defendants *knew* was unlawful and would harm the Company at the time, would have on the Company's ability to close the de-SPAC transaction for which Defendants were retained). Defendants' untenable position is simply not consistent with the law and Defendants' obligations thereunder.

19.     Defendants, as the Company's counsel, owed the company fiduciary obligations and, pursuant to those obligations, were required to act and protect the Company's (not Neugebauer's) interests. *See* Tex. Disciplinary R. Prof'l Conduct 1.13. The Trustee alleges that Defendants' failure to act fell well below the standard of care and, therefore, constitutes negligence. The Trustee has pled more than sufficient factual allegations to show a probable right to relief on the negligence claim and preclude dismissal at the 12(b)(6) stage – an extraordinary remedy that is disfavored and rarely granted in the Fifth Circuit. *See Goodman*, 2025 WL 73072, at *2. Defendants' Motion is a weak attempt to avoid responsibility and, just as they did during the relevant time, ignore the fiduciary obligations Defendants owed GloriFi as their client.

20.     Ironically, Defendants rely on a *portion* of Texas Disciplinary Rule of Professional Conduct 1.13 in support of their misguided arguments. *See* Mot. at 9.  Specifically, Defendants cite the portion of Comment 6 to Rule 1.13 stating "the decisions [of company constituents] ordinarily must be accepted by" company counsel, and Defendants use this cherry-picked portion

of Comment 6 to argue that "it could have been malpractice to *refuse* the instructions of GloriFi's

control persons [*i.e.*, Neugebauer]." *Id.* at 9-10. This argument is ironic because the portions of

Rule 1.13 and Comment 6 that Defendants conveniently omit expose Defendants' failure to comply

with their obligations to GloriFi and, as a result, their negligence.

21.    The full text of Disciplinary Rule 1.13(b) states:

(b) A lawyer representing an organization **_must_** take **_reasonable remedial actions_** whenever
the lawyer learns or knows that:

(1) an officer, employee, or other person associated with the organization has committed
or intends to commit a violation of a legal obligation to the organization or a violation of
law which reasonably might be imputed to the organization;

(2) the violation is likely to result in substantial injury to the organization; and

(3) the violation is related to a matter within the scope of the lawyer's representation of the
organization.

Tex. Disciplinary R. Prof'l Conduct 1.13(b) (emphasis).

22.    Further, Comment 6 – which, again, Defendants only partially cite – provides even

more guidance:

[D]ifferent considerations arise **_when the lawyer knows_**, in regard to a matter within
the scope of the lawyer's responsibility, that **_the organization is likely to be
substantially injured by the action of a constituent_** that is in violation of law or in
violation of a legal obligation to the organization. In such circumstances, **_the lawyer
must take reasonable remedial measures_** . . . It may be reasonably necessary, for
example, for the lawyer to ask the constituent to reconsider the matter. If that fails,
or if the matter is of sufficient seriousness and importance to the organization, it
may be reasonably necessary for the lawyer to take steps to have the matter
reviewed by a higher authority in the organization . . . Even in the absence of
organization policy, however, the lawyer may have an obligation to refer a matter
to higher authority, depending on the seriousness of the matter and whether the
constituent in question has apparent motives to act at variance with the
organization's interest.

Tex. Disciplinary R. Prof'l Conduct 1.13 cmt. 6 (emphasis).

23.    Though violation of a disciplinary rule is not *per se* legal malpractice, it nonetheless

can be used as evidence of a violation of an existing duty of care. *See DLA Piper LLP (US) v.*

*Linegar*, 539 S.W.3d 512, 518 (Tex. App.—Eastland 2017, pet. denied) (recognizing that violation of the disciplinary rules does not give rise to a cause of action but stating the rules can be used as evidence of a violation of an existing duty of care).[21] Disciplinary Rule 1.13(b) *explicitly* requires attorneys—like Defendants—that represent organizations to take "reasonable remedial measures" when they learn a "constituent"—like Neugebauer—is violating a legal obligation owed to the Company or violating the law. The Trustee alleges Defendants knew such violations were occurring (and were active participants in, and helping Neugebauer to facilitate, same), failed to take reasonable remedial measures, and such failure proximately caused GloriFi to suffer immense monetary damages (specifically, such failure was a proximate cause in the loss of investor confidence, the Company's resulting inability to close the de-SPAC transaction, and the reduction in enterprise value from $1.7 billion to zero). *See* Compl. ¶¶ 2, 4-5, 7, 28, 32, 39, 49, 58, 71, 78, 94-95, 101.

24.     Moreover, various courts throughout the country have determined a lawyer's failure to disclose, warn, advise, and/or inform their company client of items that are material to the representation supports a legal malpractice claim.[22] In one such case, a court in this district held as follows:

---

[21]    In fact, the principles outlined in Disciplinary Rule 1.13(b) have been utilized by courts throughout the country in determining a lawyer's duties owed to a corporate client. *See, e.g., Smith as Tr. for Bos. Chicken v. Andersen*, No. 01-CV-0218-PHX-PGR, 2005 WL 8160702, at *7 (D. Ariz. Jan. 27, 2005) (citing *FDIC v. Clark*, 978 F.2d 1541 (10th Cir. 1992) ("The fiduciary duty owed to a corporation requires lawyers to take remedial measures when the attorney discovers that management is involved in fraudulent or criminal activities, including full disclosure to the board of directors.").

[22]    *See, e.g.*, *Murillo Modular Grp., Ltd. v. Sullivan*, No. 3:13–CV–3020–M, 2015 WL 1442977, at *6 (N.D. Tex. Mar. 31, 2015) (denying a requested dismissal of a legal malpractice claim and concluding it was "plausible that a reasonably prudent lawyer would have advised [the client] not to authorize [a bank] to action and sell [certain] equipment for such a relatively small amount of money given the valuation of the equipment"); *In re Precept Bus. Servs., Inc.*, No. 01–31351–SAF–7, 2004 WL 2074169, at *9 (Bankr. N.D. Tex. Aug. 23, 2004) (finding issues of material fact regarding the law firm's failure to "provide [the company] with adequate or reasonable advice concerning [the company's] governance practice, acquisition program and public disclosures," and further noting that the client alleged the law firm "had a duty to communicate with [the company's] board regardless of the" involvement of the company's general counsel); *Resol. Tr. Corp. v. Miramon*, No. CIV. A. 92-2672, 1993 WL 262710, at *2 (E.D. La. July 6, 1993) (noting that, once the attorney learned of wrongdoing, "he had an affirmative duty to disclose the

Lawyers owe their clients a duty to protect them from liability in every possible way. *See FDIC v. O'Melveny & Myers*, 969 F.2d 744, 748–49 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). Lawyers discharge this duty by "us[ing] the skill, prudence, and diligence commonly exercised by practitioners of [their] profession." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). This duty has been interpreted variously to require lawyers to "advise [clients] of the legality of their actions,"[23] to "take appropriate action to advise [a client's directors], and to help them avoid wrongdoing that could seriously harm [their] corporate client,"[24] and "where a law firm believes the management of a corporate client is committing serious regulatory violations," to "actively discuss the violative conduct, urge cessation of the activity, and withdraw from representation where the firm's legal services may contribute to the continuation of such conduct."[25]

*Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *3, *5 (N.D. Tex. Dec. 17, 2014).

25.     It is without question the Trustee has plausibly alleged Defendants (1) owed duties to GloriFi (their *client*), including to act in GloriFi's best interests and to reasonably protect GloriFi's interests, (2) breached those duties by (i) failing to warn or adequately advise GloriFi of the risks in Neugebauer's known actions and/or proposed actions, which the Trustee alleges Defendants knew would likely cause significant harm to GloriFi and the Company's ability to close the very de-SPAC transaction for which Defendants were retained, (ii) neglecting to take *any* actions (let alone "reasonable remedial actions") when the Trustee alleges Defendants *knew* GloriFi was likely to suffer severe injury from Neugebauer's wrongful conduct, and (iii) instead doing Neugebauer's "bidding" at every turn, irrespective of the harm it would cause GloriFi, and being an active participant in, and/or aiding in the facilitation of, Neugebauer's self-dealing, breaches of fiduciary obligations, and unlawful activity. *See* Compl. ¶¶ 4-7, 23, 27-30, 32, 39, 37,

---

contemplated wrongdoing to the entire board of directors, the stockholders, or if necessary, to the appropriate state regulatory agency").

[23]    *Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 3365616, at *5 (N.D. Tex. 2009).

[24]    *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 771 (S.D. Ohio 2010).

[25]    *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1453 (D. Ariz. 1992).

42-56, 58-61, 63-76, 78-82, 94-95, 101. Thus, the Motion should be denied to the extent it seeks

dismissal of the negligence claim (Count 1).

ii.   <u>Defendants' Insistence that Neugebauer was "Authorized" to Perform Any Wrongful
Conduct is (1) Wrong and (2) Improper for the 12(b)(6) Stage</u>

26.    Defendants also contend they are entitled to dismissal of the negligence claim

because—given Neugebauer's supposed "control under Delaware law and GloriFi's organizational

documents"—Defendants cannot be liable for failing to "supplant the business judgment of

Neugebauer, the Board of GloriFi, or the supermajority of GloriFi's shareholders." Mot. at 11-12.

This argument is not only wrong; it is improper for the 12(b)(6) stage.

27.    As an initial matter, make no mistake: the Trustee completely disagrees with

Defendants' dubious contention that Neugebauer somehow had the "authority"—whether under

GloriFi's "organizational documents" or otherwise—to engage in unlawful conduct and various

breaches of the fiduciary duties Neugebauer owed GloriFi. But the Trustee has no obligation in

this 12(b)(6) Response to present *evidence* rebutting Defendants' incorrect and untenable

arguments asserting otherwise.

28.    According to Defendants, Delaware law and GloriFi's organizational documents

gave Neugebauer the "authority" to do whatever he wanted – fiduciary obligations and securities

laws be damned. Defendants then make the leap that Neugebauer's supposed "king-like" power

and authority over all things GloriFi somehow absolves Defendants of their own misdeeds. These

contentions are unfounded and may be summarily rejected in connection with the Motion, because

Defendants' misguided contentions require the examination of evidence and determinations of

disputed facts, neither of which is permissible at the 12(b)(6) stage.[26]

---

[26]    "[A] Rule 12(b)(6) motion typically cannot rely on evidence outside the complaint." *George v. SI Grp. Inc.*,
36 F.4th 611, 619 (5th Cir. 2022).  A court may *only* "rely on evidence outside the complaint . . . if that evidence is
either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's

29.     "GloriFi's organizational documents" are *not* part of the 12(b)(6) record and cannot be considered in connection with the Motion. The Trustee's Complaint includes zero allegations recognizing any purported "authority" of Neugebauer, which Defendants rely upon in their Motion, under GloriFi's governing documents. To consider such documents—or, more accurately, to consider Defendants' conclusory, self-serving characterizations of same—and then to use such documents or characterizations as a potential basis for dismissal of the Trustee's claims under Rule 12(b)(6) is impermissible. This is not a motion for summary judgment. Therefore, all arguments stemming from items that are not part of the Complaint (*i.e.*, outside "evidence" the Court would need to analyze) should be rejected.[27] *See, e.g., George*, 36 F.4th at 619.

   iii.   <u>The Trustee Plausibly Pled Causation</u>

30.     Next, Defendants incorrectly argue the malpractice claim (*i.e.*, Count 1) should be dismissed because, according to Defendants, "the Trustee has not plausibly pled causation." *See* Mot. at 13. Defendants do not argue the Trustee failed to allege causation.[28] Instead, Defendants claim the Trustee did not "*plausibly*" plead causation. *See id.* This is an important distinction. The standard for "plausibly" pleading a cause of action (or an essential element thereof) is a low bar

---

claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201. . . . But going beyond the pleadings is otherwise error." *Id.*

[27]     Likewise, to the extent Defendants contend that several cases supposedly citing general principles regarding a majority shareholder's purported authority under Delaware law somehow supports dismissal, Defendants are wrong. To support Defendants' arguments, these cited principles—which the Trustee does not concede are properly summarized or applicable—necessarily require application to specific facts and consideration of evidence that is not properly before the Court. Indeed, nowhere in the Complaint does the Trustee allege that Neugebauer was within his "right" to replace independent board members with his life-long friends, "block" any and all "proposed transactions," or "vote against" transactions that were in the best interests of the Company. *See* Mot. at 11. Defendants also ignore the fact that Delaware law does not allow Neugebauer to eliminate the duty of loyalty he owed the Company. *See* 8 Del. C. 102(b)(7) (providing that a company's certificate of incorporation cannot eliminate or limit a director's or officer's liability for breach of the duty of loyalty); *see also McRitchie v. Zuckerberg*, 315 A.3d 518, 533 n.12 (Del. Ch. Ct. 2024) (providing that controlling shareholders likewise owe a duty of loyalty to the company and minority shareholders).

[28]     Nor could Defendants claim the Trustee failed to plead causation because it is so patently clear the Trustee did. *See, e.g.*, Compl. ¶¶ 7, 92, 94-95.

and one the Trustee easily cleared.

31.     The Fifth Circuit defines the plausibility pleading standard under Rule 8 as follows: "The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand*, 565 F.3d at 257 (5th Cir. 2009). "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]." *Id.* (citing *Twombly*, 550 U.S. at 545) (emphasis in original). There is no doubt the Trustee sufficiently pled enough facts "to give rise to a reasonable hope or expectation that discovery will reveal evidence" of causation – and that is all that is required at the pleading stage. *Id.* (citing *Twombly*, 550 U.S. at 556; *Dura Pharmas., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)).

32.     Defendants cite *Thompson & Knight LLP v. Patriot Exploration, LLC*, 444 S.W.3d 157 (Tex. App.—Dallas 2014, no pet.) and its progeny for (i) the proposition that "mere speculation about what a party to a hypothetical deal should have done is insufficient," and (ii) Defendants' argument that "[h]ere the entire damages theory centers on the proposition that unnamed investors were 'ready, willing and able to provide the funding needed to close the de-SPAC transaction . . . so long as GloriFi established and abided by a market-based and ethical governance structure in which Neugebauer did not retain unilateral power to direct GloriFi." *See* Mot. at 13-14. This case is *much* different than *Patriot Exploration* and its progeny.

33.     This is a 12(b)(6) Motion. *Patriot Exploration* was decided following a trial in which the plaintiff instructed its expert witness to assume the plaintiff had a hypothetical buyer that would have hypothetically paid a higher price than what was paid but for the defendant law

firm's malpractice (assumptions the court determined – following trial and the evidence presented – varied materially from the actual facts proven). *See Patriot Exploration*, 444 S.W.3d at 167-68. Here, because it is the 12(b)(6) stage, no evidence has been presented; nor can it be. All that matters for determination of the present Motion are the Trustee's allegations.

34.     The Trustee does not base his negligence claim on a hypothetical transaction. The Trustee's allegations in support of the negligence claim relate to the very de-SPAC transaction for which Defendants were retained to represent GloriFi. *See* Compl. ¶¶ 4, 32, 58, 78.

35.     Moreover, contrary to Defendants' arguments, the Trustee does not center his damages theory on any speculation that "unnamed investors" were ready, willing, and able to provide the funding needed to close the de-SPAC transaction. Instead, the Trustee specifically alleges the following:

> Winston Strawn's negligence and intentional bad acts proximately caused GloriFi's (i) existing investors (which included the likes of Peter Thiel, Joe Lonsdale, Ken Griffin and Vivek Ramaswamy and who Winston Strawn *knew* were ready, willing, and able to provide the funding needed to close the de-SPAC transaction) to lose confidence in GloriFi, and (ii) resulting inability to close the de-SPAC transaction and go public at a valuation of $1.7 billion.

Compl. ¶ 7 (emphasis in original).

36.     The Trustee further alleges Defendants received a letter from counsel for existing investors making clear, and thus Defendants knew, the existing investors were ready, willing, and able to provide the funding needed to close the de-SPAC if GloriFi simply implemented the things Defendants should have – but failed – to advise GloriFi to implement in preparation for closing the de-SPAC and going public. *See* Compl. ¶¶ 77-78. The Trustee is *extremely* confident he will be able to present evidence from the identified investors (*e.g.*, Peter Thiel, Joe Lonsdale, Ken Griffin and Vivek Ramaswamy) and other existing investors (*e.g.*, Rick Jackson) supporting these

allegations at trial. But that is for trial – not the 12(b)(6) stage. The Trustee's allegations regarding causation are easily sufficient to survive dismissal at this early stage.

37.     Finally, Defendants make the "Hail Mary" argument that – even if Defendants had complied with their duties – the Trustee does not sufficiently allege it would have made a difference. Mot. at 15. Not true. As discussed above, to plausibly allege causation, the Trustee need only plead sufficient facts "to give rise to a reasonable hope that discovery will reveal evidence" of causation. *Lormand*, 565 F.3d at 257. There is no question the Trustee has pleaded sufficient facts to "give rise to a reasonable hope that discovery will reveal evidence" that, had Defendants complied with their fiduciary obligations and taken reasonable remedial actions by providing reasonable advice, there would have been a different result. *See* Compl. ¶¶ 7, 92, 94-95. Thus, the Motion should be denied.[29]

**C.     Dismissal of the Trustee's Aiding & Abetting Claim is Improper**

38.     Defendants contend the Trustee's aiding and abetting breach of fiduciary duty claim should be dismissed because (1) Delaware substantive law applies to such claim, (2) under Delaware law, a party who owes direct fiduciary duties to the plaintiff cannot be liable for aiding and abetting another fiduciary's breach, (3) this claim is predicated on transactions that ultimately were not consummated, and (4) Defendants were simply performing "competent, routine legal work." Each of these arguments fails and does not support dismissal.

i.     The Trustee Properly Pleads an Alternative Aiding and Abetting Claim

39.     First, Defendants have not established that Delaware law governs the aiding and

---

[29]     In response to Defendants' attempts to shift all blame to Neugebauer, the Trustee notes it is well-settled that "[t]here can be more than one proximate cause of an injury" and that "[a]ll persons who contribute to an injury are liable; the negligence of one does not excuse the negligence of another." *Genmoora Corp. v. Gardere & Wynne*, No. 05-93-00923-CV, 1997 WL 499695, at *4 (Tex. App.—Dallas Aug. 25, 1997, no pet.); *see also Stanfield*, 494 S.W.3d at 97 (noting that there can be more than one proximate cause of an injury).

abetting claim (Count 2). And Defendants cannot do so at the 12(b)(6) stage. Moreover, regardless of whether Texas or Delaware law applies, both Texas *and* Delaware allow the Trustee to *plead both* claims for legal malpractice and aiding and abetting breach of fiduciary duty.[30]

40.    In Texas, this is clearly permissible:

> [I]t is settled as the law of [the State of Texas] that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with [that] fiduciary and is liable as such . . . Where supporting evidence exists, Texas law permits a party to bring both a malpractice action based on his lawyer's breach of [his] independent duties and a separate claim for the lawyer's assistance with the breach of another's fiduciary duties.

*In re TOCFHBI, Inc.*, 413 B.R. 523, 534 (Bankr. N.D. Tex. 2009).

41.    Delaware courts have found that, when the extent or scope of a defendant's fiduciary duties are disputed, it would be improper at the motion to dismiss stage to dismiss an alternative claim for aiding and abetting another's breach of fiduciary duty. *See In re W.J. Bradley Mortgage Capital, LLC*, 598 B.R. 150, 174-75 (Bankr. D. Del. 2019); *see also Teurza – A Fairchild Tech. Venture Ltd. v. Lindon*, No. 2022-0130-SG, 2023 WL 3118180, at *7 (Del. Ch. Apr. 27, 2023) (retaining an alternative aiding and abetting breach of fiduciary duty claim at the pleading stage, even if it may later be deemed redundant by a finding that the defendants owed and breached direct fiduciary duties to the company at issue).[31]

---

[30]    The elements for an aiding and abetting breach of fiduciary duty claim are substantially similar under Texas and Delaware law. Specifically, under Texas law, "[t]o establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Floyd v. Hefner*, 556 F.2d 617, 655 (S.D. Tex. 2008) (quoting *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)). Under Delaware law, the elements for aiding and abetting breach of fiduciary duty include: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) knowing participation in that breach by the non-fiduciary." *In re Uplift RX, LLC*, 667 B.R. 665, 685 (S.D. Tex. 2024) (citing *Zimmerman v. Crothall*, 62 A.3d 676, 712 (Del. Ch. 2013)).

[31]    Despite Defendants' reliance on *Uplift*, that case does support dismissal of the Trustee's aiding and abetting breach of fiduciary duty claim. There, dismissal was ultimately ordered because the plaintiff, despite already being given leave to amend, failed to remedy or provide grounds in support of an improper group pleading. *See Uplift*, 667 B.R. at 685. Thus, dismissal with prejudice was granted. That is not the case here.

42.     As discussed herein, the parties dispute the scope of the fiduciary duties Defendants owed GloriFi and, therefore, could have breached. While the Trustee maintains that Defendants had a duty to, at a minimum, take reasonable remedial measures when Defendants knew Neugebauer was violating – and expressed clear intent to further violate – fiduciary duties he owed GloriFi and was engaging in unlawful activity to the detriment of GloriFi, Defendants contend they were under no obligation to do anything. *See* Compl. ¶¶ 28, 37, 40, 42-44, 47-49, 54-58, 63-67, 78, 94; *compare* Mot. at 1, 5, 9-12.

43.     Thus, even if Delaware substantive law applies to the Trustee's aiding and abetting breach of fiduciary duty claim (and even if Defendants ultimately cannot be found liable on *both* claims; neither of which the Trustee concedes), the negligence claim (Count 1) and aiding and abetting claim (Count 2) may properly be brought in the alternative. Accordingly, Defendants requested dismissal should be denied.

ii.     <u>Defendants' Argument Regarding Never Consummated Transactions Fails</u>

44.     Defendants next claim they cannot be liable for aiding and abetting breach of fiduciary duty because the Trustee's allegations are premised upon "attempted" self-dealing transactions that were never "consummated." *See* Mot. at 17. Defendants' focus on "transactions that did not occur" is not only legally flawed, but it also studiously ignores the Trustee's actual allegations (*i.e.*, a common theme throughout the Motion).

45.     This is not a dispute about one or two attempted bad deals. The crux of the Trustee's aiding and abetting breach of fiduciary duty claim is Defendants knowingly participated in Neugebauer's self-dealing, which caused a governance crisis resulting in a financial crisis. Neugebauer's activities—in which Defendants knowingly participated—sent a strong negative signal of future governance problems to investors who were otherwise ready, willing, and able to

invest in GloriFi. *See* Compl. ¶¶ 7, 32, 77-78, 100-106. Put simply, the aiding and abetting claim does not turn on whether any of Neugebauer's self-interested transactions were "consummated."

46.     Even so, and even if Delaware substantive law applies to the Trustee's aiding and abetting breach of fiduciary duty claim (which the Trustee does not concede), Defendants' assertion that "Delaware does not recognize a claim for breach of fiduciary duty based on *attempted* but *not consummated* self-dealing transactions" is incorrect. *See* Mot. at 17.

47.     First, "the Delaware Supreme Court [has] distinguished between damages resulting specifically from [a] challenged transaction and other damages stemming from a breach of fiduciary duty[,]" concluding that the latter *are* recoverable even where one or more of the fiduciary's intended self-dealing transactions fail. *See OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 716 (Del. Ch. 2014) (citing *Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436, 445 (Del. 1996)). Indeed, "[t]he strict imposition of penalties under Delaware law are designed to discourage disloyalty" and, as such, "Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly." *Thorpe*, 676 A.2d at 445. To that end, even "[i]f a challenged transaction goes away, the absence of *transactional* damages arising out of [an] abandoned deal does not necessarily render the underlying claims moot." *OTK Assocs.*, 85 A.3d at 716.[32]

48.     From a practical standpoint, it makes sense that one is not absolved of liability simply because he did not accomplish *all* his desired self-dealing transactions. As one Delaware court noted:

> Humans do not always achieve the ends we seek. Failure does not imply that we
> did not pursue the means. Elite athletes spend years training and sacrificing for a

---

[32]     "[T]he absence of specific damage to a beneficiary is not the sole test for determining disloyalty by one occupying a fiduciary position . . . Once disloyalty has been established," Delaware law "require[s] that a fiduciary not profit personally from his conduct, and that the beneficiary not be harmed by such conduct." *Thorpe*, 676 A.2d at 445.

chance at an Olympic medal. To not qualify at the trials, or to fall short of the podium, does not negate the pursuit. [The defendant] knowingly participated in the Board's breach of its duty of care by creating the informational vacuum that misled the Board.

*In re Rural Metro Corp.*, 88 A.3d 54, 100 (Del. Ch. 2014).

49.     Moreover, Delaware courts have found that a pattern of mismanagement by a controlling shareholder (and the majority shareholder's control person), including the existence of actual and attempted self-interested transactions, *does* serve as the basis for (1) a successful breach of fiduciary duty claim and (2) damages relating to the demise of the company, irrespective of the fact that not all recoverable damages were tied directly to *particular* self-dealing transactions. *See Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No. 11802-VCL, 2018 WL 3326693, at \*47-48 (Del. Ch. July 6, 2018). Specifically, in *Basho*, the plaintiff investors brought breach of fiduciary duty claims against the majority shareholder and its control person, seeking damages not simply in connection with a self-interested financing round they instituted but also due to a series of self-interested actions and mismanagement, which were designed to ensure they would maintain control of the company at all costs.[33] *Id.* at \*1, \*47-48. Notably, despite that it was "not possible to trace the causal relationship with certainty," the court nonetheless concluded:

> [T]he plaintiffs carried their burden of showing at trial that the ***manner in which the defendants managed [the Company]*** after the [financing round at issue], including the self-dealing transactions, ***played a causal role in depriving the plaintiffs' shares of any remaining value,*** and that the causal connection was sufficient[ly] close to warrant a remedy. . . . *[The defendants']* ***insistence on maintaining hard control in any further financing,*** combined with their frequently brusque and unprofessional manner, ***reinforced the impression that investors should pass. Not surprisingly, they did.***

---

[33]     If this fact pattern sounds strikingly similar to the Trustee's allegations of Neugebauer's breaches of fiduciary duty, that is because it is. In *Basho*, the majority shareholder and its control person refused to accept capital from third-party investors that might dilute the majority shareholder's position, insisted on maintaining hard control in any future financing, and grossly mismanaged the company in such a way that resulted in the company's demise and deprived the investors of the value of their shares. *Id.* at \*39, \*47-48.

*Id.* at 47 (emphasis).

50.     With respect to aiding and abetting breach of fiduciary duty, Delaware courts have

likewise found that a plausible claim exists even where a fiduciary's self-interested transaction is

*not* "consummated." Specifically, when one aids a fiduciary in disregarding his obligations to a

company in favor of securing a benefit for himself—*e.g.*, the fiduciary takes actions that are not in

the company's best interests in hopes that such actions will *potentially* lead to the completion of a

separate, self-interested transaction—the fiduciary is nonetheless disloyal to the company, and the

one that aided and abetted such disloyalty is likewise at fault, *even if* the self-interested transaction

driving the disloyal conduct was never completed. *See In re Transkaryotic Therapies, Inc.*, 954

A.2d 346, 372-73 (Del. Ch. 2008).[34]

51.     Here, Neugebauer did not simply try to make one bad deal. Instead, he insisted on

maintaining control, pursued his own interest at the Company's expense, and operated in a manner

that "reinforced the impression that investors should pass." *Georgetown Basho Invs., LLC*, 2018

WL 3326693, at *47. The Trustee alleges that Defendants actively, substantially, and knowingly

participated in Neugebauer's breaches of fiduciary duty to GloriFi that proximately caused existing

investors to lose confidence in GloriFi, resulted in GloriFi's inability to close the de-SPAC

transaction and go public at a valuation of approximately $1.7 billion, and, ultimately, drove the

Company into bankruptcy. *See* Compl. ¶¶ . Thus, the Motion should be denied.

---

[34]     In *Transkaryotic*, to induce a board member to vote in favor of a merger, the buyer assured the board member
that a self-interested transaction the board member wanted to complete would be part of any merger package if the
board member voted in favor of the merger. *Id.* at 354-55. According to the plaintiffs, the merger was not in the
company's best interests and, as such, the board member's decision to vote in favor of it (with his own self-interested
transaction in mind) constituted a breach of fiduciary duty. *Id.* at 372-73. Notably, despite that the merger went through,
the self-interested transaction was never completed. *Id.* In determining whether there was a plausible claim for aiding
and abetting breach of fiduciary duty against the buyer, the court concluded: "That the [transaction] was never
consummated is wholly irrelevant for this determination. The offer of improper inducement . . . may still give rise to
aiding and abetting liability if that inducement results in the breach of a fiduciary's duty, even if, as here, the deal to
which the inducement was related [*i.e.*, the promise to include the self-dealing transaction as part of the merger
"package"] . . . is never completed." *Id.* at 373 n.118.

iii.     The Trustee Alleges Much More than Defendants' Performance of "Routine Legal Work"

52.     Finally, Defendants attempt to excuse their wrongful conduct as no more than "competent, routine legal work," which they claim entitles them to dismissal of the Trustee's aiding and abetting breach of fiduciary duty claim. Defendants' arguments are no more than transparent, improper attempts to feign innocence, rewrite the Trustee's allegations (and even the Court's June 16 Opinion),[35] and convince the Court to accept Defendants' version of the "facts" at the 12(b)(6) stage.[36]

53.     Defendants continue to either misunderstand or mischaracterize the Trustee's allegations and claims. The Trustee alleges that—in connection with their representation of GloriFi—Defendants *knew* Neugebauer was breaching his fiduciary obligations owed to GloriFi, and Defendants were active participants, and aided/abetted Neugebauer, in such breaches.[37] *See* Compl. ¶¶ 7, 32, 77-78, 100-106. The Trustee cites numerous internal communications exchanged between Defendants' attorneys demonstrating Defendants *knew* Neugebauer was engaging in actual or likely breaches of fiduciary duty, and—rather than take reasonable remedial action to

---

[35]    Once again, Defendants argue that the June 16 Opinion supports that GloriFi's governing documents allowed shareholders to remove board members like Mr. Ayers and Ms. Findley. *See* Mot. at 20. Again, the June 16 Opinion did not include *any* finding that the Company's governing documents allowed for the removal of board members or the appointment of new board members, especially in the manner in which Defendants assisted Neugebauer in doing.

[36]    For example, at no point does the Trustee allege that Defendants' involvement in preparing the Series 2 Notes constituted no more than mere "document[ation] . . . at the direction of GloriFi's Board, which allowed GloriFi to keep its doors open." *See* Mot. at 20. Instead, the Trustee specifically alleges that Defendants were the legal architects in preparing the Series 2 Notes, intentionally backdating them in a scrambling effort to securitize the remaining assets of GloriFi to the benefit of insiders and control persons. *See* Compl. ¶¶ 79-82.

[37]    For example, in support of their argument that Defendants simply engaged in a routine task of "overseeing a Board meeting," the paragraph that Defendants cite from the Trustee's Complaint states as follows: "Winston Strawn proceeded to oversee a Board meeting wherein Neugebauer made overt threats of litigation against the disinterested directors, said he was going to abstain from voting, proceeded to call the vote, and then voted in favor of his self-dealing. And Winston Strawn did nothing to protect its client's interest. Winston Strawn ***knew*** Neugebauer was using the Firm as a pawn to defraud shareholders and the disinterested directors – and Winston Strawn knowingly and actively participated in same." Compl. ¶ 49. Clearly, this allegation does not support Defendants' contention that they simply engaged in "routine" legal work as corporate counsel for GloriFi.

---

protect the Company's interests—Defendants helped Neugebauer accomplish his self-serving goals. *See id.* ¶¶ 37, 40, 42-56, 63-76, 78.

54.    Accordingly, the Trustee alleges that Defendants did far more than perform "routine legal work," and therefore Defendants' requested dismissal should be denied.

**D.    Defendants' Arguments Regarding the Relevance of Their Post-Petition Conduct Provide No Support for the Motion or the Relief Requested Therein**

55.    Defendants utilize two paragraphs of the Motion to make the argument that the Trustee's allegations regarding Defendants' post-petition conduct (*e.g.*, the Trustee's allegations regarding Winston Strawn publicly supporting Neugebauer's plan to file a fantastical RICO conspiracy lawsuit against Winston Strawn's own clients and helping Neugebauer try to secure creditor support, litigation financing, and media attention for the proposed lawsuit) are, in Defendants' opinion, irrelevant. Mot. at 21-22. Unsurprisingly, the Trustee disagrees. The Trustee specifically addresses the relevance of these allegations in the Complaint:

> Why would Winston Strawn go to these lengths? The answer is obvious: it was a cover up. Winston Strawn wanted to cover up the Firm's misdeeds and escape liability. If the Neugebauer chapter 11 conversion plan succeeded, Winston Strawn knew the stunning facts set forth herein (and Winston Strawn's breaches of the fiduciary obligations the Firm owed GloriFi) would be swept under the rug. Specifically, Winston Strawn knew Neugebauer gaining control of the Estate would result in the Firm's wrongdoing never coming to light and this lawsuit – which *seeks $1.7 billion in lost enterprise value from Winston Strawn* – never being filed. Moreover, as discussed further below, Winston Strawn choosing Neugebauer over the Firm's actual client (GloriFi) was also a *quid pro quo* for Neugebauer referring Winston Strawn (specifically, Defendant Blankenship) to Neugebauer's wealthy oil and gas tycoon friends in West Texas.

Compl. ¶ 12 (emphasis in original).

56.    For purposes of deciding the Motion, Defendants' argument regarding the relevancy of the Trustee's post-petition allegations is a red herring. Defendants do not seek to strike those allegations through their 12(b)(6) Motion; nor could they. Thus, the arguments set forth in paragraphs 21-22 of Defendants' Motion are irrelevant and do not support the relief requested.

**E.**    **The Trustee Seeks Leave to Amend the Fraudulent Transfer and Disallowance Claims**

57.    The Trustee pleads constructive fraudulent transfer claims against Winston Strawn under both 11 U.S.C. § 548(a)(1)(B) and TEX. BUS. & COM. CODE § 24.005(a)(2). Specifically, the Trustee claims that the Debtor fraudulently transferred interests in GloriFi's property through payments totaling not less than $790,890.00 (the "Transfers"). Relatedly, the Trustee seeks to avoid the Transfers, recover the amount of such Transfers from Winston Strawn pursuant to Section 550, and for the Court to disallow any claim of Winston Strawn against GloriFi or the Estate pursuant to Section 502 due to Winston Strawn's failure to pay back any portion of the Transfers. Counts 3 – 6 are collectively referred to herein as the "Avoidance Claims."

58.    Defendants argue the Trustee failed to include sufficient factual allegations to support the Avoidance Claims.[38] Without conceding that any of Defendants' arguments have merit, the Trustee can plead, and has pled in other pending adversary proceedings, additional factual allegations to address and moot Defendants' arguments. The Trustee requests leave to file an Amended Complaint to provide additional factual support for the Avoidance Claims (the standard for granting leave is set forth in Section III below and is satisfied with respect to this request for the same reasons set forth in Section III). For the avoidance of doubt, by making this request for leave to amend with respect to the Avoidance Claims, the Trustee does not concede (and, for the reasons discussed above, disputes) that any additional factual allegations are needed to survive

---

[38]    Though the Trustee seeks to amend these claims, the Trustee does concede that any of Winston Strawn's arguments have merit. Just as it did in the rest of its Motion, Winston Strawn improperly asks the Court to take judicial notice of opinions and pleadings in other cases for the purpose of making factual findings *against* the Trustee in this case. Even worse, Winston Strawn misconstrues this Court's own prior opinions. For example, Winston Strawn states that the Court determined "that GloriFi was solvent until at least June 30, 2022." *See* Mot. at 23. That is not what the Court found. Rather, the Court concluded that GloriFi was insolvent as of June 30, 2022, *not* that GloriFi was necessarily "solvent" up until that date. *See* Bankr. Dkt. No. 563, at 41 ("[T]he Debtor was insolvent, at a fair valuation, as of June 30, 2022, and on September 30, 2022."). Indeed, the date that was relevant to the transfers at issue in that case was not until September 30, 2022. *See id.* at 37 n.15. The Trustee objects to Winston Strawn's attempted use of other court filings, including the repeated mischaracterization of same, in support of dismissal of the Trustee's claims in this case.

12(b)(6) dismissal with respect to Count 1 and Count 2. The Trustee only seeks leave to amend with respect to Count 1 and Count 2 in the alternative as set forth in Section III below.

### III.    ALTERNATIVE MOTION FOR LEAVE TO AMEND

59.    Alternatively, to the extent the Court finds that the Trustee has not sufficiently pleaded any element of any cause of action (specifically with respect to Counts 1 and 2), the Trustee requests leave to amend. "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a) is biased toward granting leave to amend. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). Courts will typically only deny leave to amend an original complaint where it would create undue delay, indicates bad faith or dilatory motive, or would be futile. *Id.* at 591. None of the factors that could possibly justify denying leave to amend are even remotely present here.

60.    The Trustee has diligently pursued viable claims in an effort to provide a valuable recovery to creditors. The Trustee has not yet amended his Complaint, indicating that given a fair chance to do so the Trustee could bring the Complaint into compliance with the Court's specifications. Accordingly, the Trustee respectfully requests the Court grant leave to amend to the extent necessary to satisfy the applicable pleading standards.

### IV.    CONCLUSION

The Trustee respectfully requests the Court deny the Motion in its entirety. In the alternative, the Trustee requests the Court grant the Trustee leave to amend as requested herein.

Respectfully submitted,

*/s/ Chase J. Potter*

**CHASE J. POTTER**
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

**JOSHUA J. IACUONE**
Texas Bar No. 24036818
E-Mail: josh@imcplaw.com

**GREG MCALLISTER**
Texas State Bar No. 24071191
E-Mail: greg@imcplaw.com

**ANNA OLIN RICHARDSON**
Texas Bar No. 24102947
E-Mail: anna@imcplaw.com

**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:     (214) 432-1536

**COUNSEL FOR THE AGENT AND
SPECIAL COUNSEL FOR TRUSTEE**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system on this 5th day of December, 2025.

*/s/ Chase J. Potter*

**CHASE J. POTTER**