| | |
|---|---|
| Barrett H. Reasoner | Louis R. Strubeck, Jr. |
| Texas Bar No. 16641980 | Texas Bar No. 19425600 |
| breasoner@gibbsbruns.com | lstrubeckjr@omm.com |
| Ashley M. Kleber | Scott P. Drake |
| Texas Bar No. 24060263 | Texas Bar No. 24026812 |
| akleber@gibbsbruns.com | sdrake@omm.com |
| Ross M. MacDonald | Laura Smith |
| Texas Bar No. 24087956 | Texas Bar No. 24066039 |
| rmacdonald@gibbsbruns.com | lsmith@omm.com |
| | |
| GIBBS & BRUNS LLP | O'MELVENY & MYERS LLP |
| 1100 Louisiana, Suite 5300 | 2801 North Harwood Street, Suite 1600 |
| Houston, TX 77002 | Dallas, Texas 75201-2692 |
| (713) 650-8805 | Telephone: (972) 360-1900 |

*Counsel For Defendants, Winston & Strawn LLP
and Michael Blankenship*

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 7 |
| WITH PURPOSE, INC., | § § § | Case No. 23-30246-MVL-7 |
| Debtor. | § § § | |

| | | |
|---|---|---|
| SCOTT M. SEIDEL, TRUSTEE, | § § § | |
| Plaintiff, | § § § | |
| v. | § § § | Adv. No. 25-03105-MVL |
| WINSTON & STRAWN LLP; and MICHAEL BLANKENSHIP, | § § § | |
| Defendants. | § § § | |

**REPLY BRIEF IN SUPPORT OF WINSTON & STRAWN LLP'S AND
MICHAEL BLANKENSHIP'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | iii |
| I. | The Malpractice Claim Must Be Dismissed | 2 |
| | A. The Trustee Fails to Allege a Breach of Duty | 2 |
| | B. The Trustee Does Not Plausibly Allege Causation | 3 |
| II. | The Aiding & Abetting Claim Must Be Dismissed | 4 |
| | A. Delaware Law Applies and Requires Dismissal | 4 |
| | B. Under Delaware Law, Failing to Take Remedial Action Is Passive Conduct That Cannot Be the Basis of an Aiding & Abetting Claim | 6 |
| III. | The Court Can and Should Rely on Its Own Prior Findings of Fact, But the Complaint Should be Dismissed Regardless of Those Prior Findings | 7 |
| | A. Courts in the Fifth Circuit Routinely Rely on Their Prior Findings | 7 |
| | B. The Trustee's Omission of Necessary Facts Alone Warrants Dismissal | 8 |
| IV. | Any Post-Petition Conduct Must Be Disregarded | 9 |
| V. | The Trustee Fails to Defend the Fraudulent Transfer and Disallowance Claims | 10 |
| VI. | The Trustee's Claims Should Be Dismissed With Prejudice | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aloe Crème Labs. v. Francine Co.*,
 425 F.2d 1295 (5th Cir. 1970) ...................................................................................8

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*,
 46 S.W.3d 873 (Tex. 2001) ........................................................................................4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................8

*Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*,
 2018 WL 3326693 (Del. Ch. July 6, 2018) ................................................................7

*CMS Inv. Holdings, LLC v. Castle*,
 2015 WL 3894021 (Del. Ch. June 23, 2015) .............................................................5

*DLA Piper LLP (US) v. Linegar*,
 539 S.W.3d 512 (Tex. App.—Eastland 2017, pet. denied) .......................................2

*Edionwe v. Bailey*,
 860 F.3d 287 (5th Cir. 2017) ...................................................................................10

*Emmons v. United States*,
 2019 WL 3738525 (N.D. Tex. Aug. 8, 2019) .............................................................4

*Energy Coal v. CITGO Petroleum Corp.*,
 836 F.3d 457 (5th Cir. 2016) .....................................................................................5

*Forshee v. Moulton*,
 694 S.W.3d 803 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ...........................4

*Gonzalez v. Kay*,
 577 F.3d 600 (5th Cir. 2009) .....................................................................................8

*In re Heritage Org., LLC*,
 2008 WL 5215688 (Bankr. N.D. Tex. Dec. 12, 2008) ...............................................8

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
 751 F.3d 368 (5th Cir. 2014) ...................................................................................10

*In re Mindbody Inc., S'holder Litig.*,
 332 A.3d 349 (Del. 2024) ..........................................................................................6

*In re Missionary Baptist Found. of Am., Inc.*,
 712 F.2d 206 (5th Cir. 1983) .....................................................................................8

*Murillo Modular Group, Ltd. v. Sullivan*,
    2015 WL 1442977 (N.D. Tex. Mar. 31, 2015) ............................................................. 2

*Official Stanford Inv'rs Comm. v. Greenberg Traurig*,
    2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) .......................................................... 2

*OTK Associates, LLC v. Friedman*,
    85 A.3d 696 (Del. Ch. 2014) ...................................................................................... 7

*In re Pena*,
    409 B.R. 847 (Bankr. S.D. Tex. 2009) ...................................................................... 8

*PowerTrain, Inc. v. Ma*,
    2014 WL 3897722 (N.D. Miss. Aug. 8, 2014) .......................................................... 4

*RBC Cap. Mkts., LLC v. Jervis*,
    129 A.3d (Del. 2015) ................................................................................................ 7

*Taylor v. Scheef & Stone, LLP*,
    2020 WL 4432848 (N.D. Tex. July 31, 2020) .......................................................... 4

*In re W.J. Bradley Mortgage Cap., LLC*,
    598 B.R. 150 (Bankr. D. Del. 2019) ......................................................................... 5

*Witmer v. Armistice Cap., LLC*,
    344 A.3d 632 (Del. 2025) ......................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 4, 5, 8

Tex. Disciplinary Rules of Prof'l Conduct R. 1.13 .................................................... 1, 2, 3

The Trustee's Response confirms the Complaint's fatal defect: the Trustee still cannot identify legal work that Defendants improperly performed. Instead, the Trustee asks this Court to infer malpractice from GloriFi's demise, namely, Defendants' alleged failure to take unspecified "remedial actions" or "reasonable remedial measures." Resp. ¶¶ 3, 17. By this, the Trustee means Defendants' failure to orchestrate a corporate-governance revolt and wrest control of GloriFi from its CEO and a supermajority of its shareholders. This is not a credible theory of liability under Texas (or any State's) law, and the Trustee cites no cases to support his premise.

Bereft of actual legal authority, the Trustee attempts to fashion an unprecedented legal standard based on Texas Disciplinary Rule 1.13. *Id*. ¶¶ 21–22. As the Trustee admits, however, the Disciplinary Rules *do not create* standards of liability. *Id.* ¶ 23. But even if they did, Rule 1.13 does not transform outside counsel into a supervisory body charged with overruling a client's business decisions. Instead, it identifies only one "remedial measure": to "have the matter reviewed by a higher authority in the organization." *Id*. ¶ 22. Here, however, the matter *was already* before the highest authority. It was a dispute before the CEO, the Board, and the shareholders.

Nor does the Trustee cure his failure to plausibly allege causation. The Trustee's claim is dependent on multiple steps coming to fruition: (i) if Defendants had taken unspecified "remedial actions," (ii) Neugebauer would have agreed to cede control; (iii) unspecified millions would have flowed to GloriFi; and (iv) GloriFi would have negotiated and closed a $1.7 billion de-SPAC. This is bare conjecture. Nowhere does the Trustee allege what Defendants actually should have done, much less that doing so would have changed Neugebauer's mind.

And the Trustee does not meaningfully dispute that his claim for aiding and abetting fails if Delaware law applies. The parties agree that Defendants owed GloriFi fiduciary duties. In such a case, Delaware law is clear: there can be no alternative aiding and abetting claim against a

defendant that owes its own duties to the plaintiff. To this, the Trustee suggests that the Court should allow this defective claim to proceed because there is a factual dispute over whether Defendants breached their fiduciary duties. But there is no dispute that Defendants *owed* their own fiduciary duties to GloriFi. That is a legal question, so the claim is ripe for dismissal.

## I. The Malpractice Claim Must Be Dismissed

The Response confirms the pleading defects of the malpractice claim. The Trustee has not and cannot (1) allege any specific act taken by Defendants that constitutes negligent legal work or identify authority for the notion that corporate counsel must take "remedial action" to overrule a client; or (2) plead a causal chain connecting Defendants' alleged conduct to GloriFi's collapse.

### A. The Trustee Fails to Allege a Breach of Duty

The Trustee emphasizes that the malpractice claim is omission-based—Defendants allegedly failed to take "remedial measures" to prevent Neugebauer from electing new members to the Board or pursuing his preferred financing proposal and failed to oust Neugebauer from control. Resp. ¶¶ 3, 17. No Texas case recognizes this as a breach of any duty of care.[1]

As a result, the Trustee attempts to manufacture a legal standard out of Disciplinary Rule 1.13. *Id*. ¶¶ 21–22. But, as the Trustee admits, the Disciplinary Rules, and Rule 1.13 specifically, do not "give rise to a cause of action against a lawyer" and may not "form the basis for civil liability." *DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512, 518 (Tex. App.—Eastland 2017, pet.

---

[1] The cases cited by the Trustee stand for the garden-variety propositions that a law firm commits malpractice when it (i) provides harmful legal advice to a company or (2) abets a criminal fraud. Taking the Trustee's allegations as true, those cases are unlike this one. In *Murillo Modular Group, Ltd. v. Sullivan* (Resp. ¶ 24 n.22), the law firm advised a client to auction and sell equipment for substantially less than its stated value. 2015 WL 1442977, at *6 (N.D. Tex. Mar. 31, 2015). And *Official Stanford Inv'rs Comm. v. Greenberg Traurig* (Resp. ¶ 24) involved the Allen Stanford Ponzi scheme; there, the law firms were alleged to have helped Stanford conceal his actions from regulators and violated various laws, to the company's (obvious) detriment. 2014 WL 12572881, at *3 (N.D. Tex. Dec. 17, 2014). The Trustee's conclusory suggestion that Defendants may have abetted violations of unspecified "federal securities laws," (Resp. at ¶ 3), not alleged in the Complaint and unsupported by any factual allegations, does not change this calculus.

2

denied). Even so, Rule 1.13 proves *Defendants'* point. It suggests that when a lower-level employee attempts to do something inappropriate, the lawyer should consider having such a matter reviewed by a "higher authority in the organization." Rule 1.13, cmt. 6. Here, the dispute was already *before and among* the highest authorities in the organization: its CEO, Board members, and shareholders. Mtn. at 3–6. The Trustee cites no authority even suggesting that Rule 1.13 should be read to create liability for a lawyer being *aware of*, but not *actively trying to stop*, decisions made by the highest authorities in a company.

Indeed, this is the purpose of Defendants explaining that Delaware law provided Neugebauer with substantial discretion to appoint Board members and to vote for or against various financing transactions (Mtn. at 11–12), which the Trustee complains about but does not meaningfully dispute. Resp. ¶¶ 26-28. The Court need not find that if "the Company's CEO told me to do it" (*id*. ¶ 2), it insulates a law firm or determine whether Neugebauer breached his fiduciary duties. Defendants' point is much narrower: When the ultimate authorities at a company—here, the CEO, majority shareholder, and ultimately, the Board and a supermajority of the shareholders—determine a course of action, even if it is alleged to be imprudent, the company's law firm cannot be liable for failing to take unspecified "remedial action" to stop it.

B.   **The Trustee Does Not Plausibly Allege Causation**

The Trustee's allegation that "existing investors" were "ready, willing and able to provide" additional funding to GloriFi (Resp. ¶¶ 35–36) is insufficient to plausibly plead that Defendants *proximately caused* GloriFi to fail. There is a yawning logical gap between the assertion that Defendants had a responsibility to take unspecified "remedial measures" to stop Neugebauer and the counterfactual conclusion that GloriFi would have closed a $1.7 billion de-SPAC had Defendants done so. This is particularly true when the Trustee does not allege (i) what Defendants *should or could have done*; (ii) that Defendants had the *ability* to stop Neugebauer had they wanted

3

to; or (iii) that Neugebauer would have changed his mind and given up control of GloriFi had Defendants taken those steps. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001) (explaining, in the context of medical malpractice, that a determination of a breached standard "cannot be determined absent specific information about what the doctor should have done differently"); *Emmons v. United States*, 2019 WL 3738525, at *3 (N.D. Tex. Aug. 8, 2019) (rejecting claim for ineffective legal assistance where claimant "never explains what her attorney was supposed to have done that he failed to do"). This latter point is not a "Hail Mary," as the Trustee claims—but a critical element of causation under Texas law that the Trustee has not (and cannot) plausibly plead. *Forshee v. Moulton*, 694 S.W.3d 803, 812–13 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ("[A] legal malpractice plaintiff must show that the other party would have agreed to the additional or changed contractual term . . . .").

To save his claims, the Trustee points out that *one* of Defendants' cases was decided after a trial. Resp. ¶ 33. But numerous others were dismissed at the Rule 12(b)(6) stage in federal court or at summary judgment in state court, when the complaint, as here, failed to "tie the alleged" malpractice to the alleged harm or to show that "the other party would have agreed to the additional or changed contractual term." *E.g.*, *PowerTrain, Inc. v. Ma*, 2014 WL 3897722, at *8 (N.D. Miss. Aug. 8, 2014) (Rule 12(b)(6)); *Forshee*, 694 S.W.3d at 812–13 (summary judgment); *see also Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848, at *6 & n.7 (N.D. Tex. July 31, 2020) (Rule 12(b)(6) dismissal because "allegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient.").

## II. The Aiding & Abetting Claim Must Be Dismissed

### A. Delaware Law Applies and Requires Dismissal

The Trustee does not, because he cannot, seriously dispute that Delaware law bars his aiding and abetting claim. He instead tries to avoid dismissal in two ways. First, the Trustee

4

claims—without citation or analysis as to why a different state's law should apply—that Defendants cannot establish that Delaware law applies at the Rule 12(b)(6) stage. Resp. ¶ 39. This is wrong: "Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry." *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016). And the Trustee has entirely failed to rebut Defendants' contention that Delaware law applies to this claim, much less showed what "factual development" is needed to resolve a choice of law issue. It is undisputed that GloriFi, the client, was a Delaware corporation and that, thus, the fiduciary duties owed by Neugebauer (the breach of which Defendants are alleged to have aided) were governed by Delaware law. Texas and Delaware courts are aligned on this point. *See* Mtn. at 15–17 (collecting cases).

Second, the Trustee argues that when there is a dispute as to the "extent or scope" of fiduciary duties, Delaware courts have allowed *both* a breach and an aiding and abetting claim to proceed in the alternative. Resp. ¶ 41. But the Trustee overstates those cases. It is only when there is a dispute about *whether* a defendant owes fiduciary duties that a plaintiff can plead an aiding and abetting claim in the alternative. *E.g.*, *In re W.J. Bradley Mortgage Cap., LLC*, 598 B.R. 150, 174 (Bankr. D. Del. 2019) (allowing a Trustee to bring, in the alternative, an aiding and abetting claim "if any of the Defendants are non-fiduciaries") (cited at Resp. ¶ 41). Here, there is no dispute that Defendants—as GloriFi's attorneys—owed GloriFi fiduciary duties. *See* Compl. ¶ 5. In such a case, Delaware law is clear that an aiding and abetting claim cannot be brought. *E.g.*, *CMS Inv. Holdings, LLC v. Castle*, 2015 WL 3894021, at *20 (Del. Ch. June 23, 2015) ("[A]s a matter of law, aiding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff.").

**B. Under Delaware Law, Failing to Take Remedial Action Is Passive Conduct That Cannot Be the Basis of an Aiding & Abetting Claim**

Even if the Trustee could bring such a claim, in the alternative, the claim fails. In his Response, the Trustee pivots away from allegations of self-dealing transactions, instead claiming, remarkably, that this is "not a dispute about one or two attempted bad deals" but rather about Neugebauer's sending "a strong negative signal of future governance problems to investors." Resp. ¶ 45. That argument is self-defeating because the Complaint contains no facts showing that Defendants "knowingly participated" in any such signaling or scheme. Delaware law requires more than proximity to alleged fiduciary misconduct; it requires particularized allegations that the defendant took affirmative steps that substantially assisted the breach. *In re Mindbody Inc., S'holder Litig.*, 332 A.3d 349, 393 (Del. 2024) ("passive awareness" of a fiduciary's breach is insufficient for an "aiding and abetting claim" which "requires that the aider and abettor provide 'substantial assistance' to the primary violator"); *Witmer v. Armistice Cap., LLC*, 344 A.3d 632, 660 (Del. 2025) ("[A]n aider and abettor's participation in a primary actor's breach of fiduciary duty must be of an active nature, as compared to mere passive awareness.").

The Trustee alleges no such affirmative steps. For example, he does not identify any misleading documents Defendants drafted, coercive tactics Defendants employed, or any concrete action Defendants took to facilitate Neugebauer's supposed "signals" to investors. Rather, in the Response, the Trustee confirms that the claim is that Defendants were *present, aware,* and *failed to stop* Neugebauer from making business decisions that the Trustee now finds objectionable. *E.g.*, Resp. ¶ 22 & n.37 (complaining that Defendants "overs[aw] a Board meeting where Neugebauer made overt threats. . . . And did nothing to protect its client's interest"). This is precisely the kind of non-action Delaware courts hold is insufficient as a matter of law.

And the Trustee's claim that Delaware law supports liability for attempted but

unconsummated self-dealing is likewise not supported. Just the opposite; in the Trustee's cases defendants allegedly took tangible, concrete actions in furtherance of completed deals, which is not alleged against Defendants. *See, e.g., RBC Cap. Mkts., LLC v. Jervis* (Rural Metro), 129 A.3d 816, 862–63 (Del. 2015) (liability based on conduct affecting a consummated merger); *Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, 2018 WL 3326693, at 32–33 (Del. Ch. July 6, 2018*)* (liability for coercive actions taken during completed financings).[2]

### III. The Court Can and Should Rely on Its Own Prior Findings of Fact, But the Complaint Should be Dismissed Regardless of Those Prior Findings

It should not be lost on the Court that the Trustee strategically omitted basic facts from his Complaint which the Court has previously resolved (and which further undermine his claims) during the nearly three years of this bankruptcy proceeding. These include that Neugebauer was the duly authorized CEO and Chair of GloriFi's Board, a supermajority of GloriFi's shareholders supported many of the complained-of actions, and that the alleged "self-dealing transactions" were largely never completed. According to the Trustee, however, the Court cannot consider reality because it "contradicts the allegations in the Trustee's Complaint." Resp. ¶ 11.[3] Not only is the Trustee wrong on the law, but he also misses the point. Defendants cite the Court's findings to illustrate the pleading omissions, and those omissions reveal the elements missing from the Complaint's allegations, whether or not the Court takes judicial notice of its prior findings.

#### A. Courts in the Fifth Circuit Routinely Rely on Their Prior Findings

According to the Trustee, "Winston Strawn improperly asks the Court to take judicial notice of opinions and pleadings *in other cases* for the purpose of making factual findings *against*

---

[2] While *OTK Associates, LLC v. Friedman* does state a fiduciary can have its profits from an attempted self-dealing transaction disgorged, that is inapplicable here where Defendants are not alleged to have received any ill-gotten benefits from the failed transactions. 85 A.3d 696, 716 (Del. Ch. 2014).

[3] Without support, the Trustee also accuses Defendants of "mischaracteriz[ing]" the Court's findings of fact. Resp. ¶ 11. But, Defendants have not sought to characterize—much less "mis"-characterize—any findings. Instead, Defendants simply point to objective facts that the Trustee elected to omit.

7

the Trustee in this case." Resp. at 24 n.38 (emphasis added). The Trustee is wrong both factually and legally. Factually, the findings *this Court made in this case* are not findings "in other cases"; Defendants do not ask the Court to "mak[e]" any new factual findings, but to simply rule consistently with facts previously found (and litigated by the Trustee). And legally, the Fifth Circuit has explicitly considered and rejected the Trustee's argument:

> Here, the bankruptcy court referred to the record developed in the same case, albeit in different proceedings. Although we intend no blanket approval of this action, we cannot gainsay the bankruptcy court's "right to take notice of its own files and records and the absence of any duty on its part to grind the same corn a second time."

*In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983) (quoting *Aloe Crème Labs. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970)). In fact, courts are authorized to "*sua sponte*" take "judicial notice of the information in the docket, including orders and opinions issued by the Court." *In re Heritage Org., LLC*, 2008 WL 5215688, at *26 n.25 (Bankr. N.D. Tex. Dec. 12, 2008). Nor is there anything particular about the Rule 12(b)(6) posture that creates an exception to the rule permitting courts to take notice of their prior rulings and findings. *See, e.g.*, *In re Pena*, 409 B.R. 847, 856 (Bankr. S.D. Tex. 2009) (taking judicial notice of findings of audit filed with bankruptcy court in resolving 12(b)(6) motion).

### B. The Trustee's Omission of Necessary Facts Alone Warrants Dismissal

A complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable," not just "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009); *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The Trustee has not done this. By way of example, the "crux of the Trustee's negligence claim" is that Defendants (i) "failed to warn or adequately advise GloriFi of the risks" posed by Neugebauer "on GloriFi's ability to close the [] de-SPAC transaction," or (ii) "failed to take any [unspecified] action to protect the interests of their client GloriFi," and (iii) "instead [] actively

8

participated and assisted Neugebauer." Resp. ¶¶ 15–16.

But the omissions reveal key missing elements. As to the "failure to warn/advise" theory, the Trustee does not allege that any relevant stakeholders—including the so-called "independent" Board members—were unaware of the actions Neugebauer took. *See* Mtn. at 12. As to the purported "failure" to take a nebulous "action to protect" GloriFi from Neugebauer's control, the Trustee alleges neither (i) what actions Defendants were obligated to take, but did not, to wrest control from Neugebauer, *see id.* at 9; nor (ii) that any action taken by Defendants *could have*, much less *would have*, compelled Neugebauer to give up control, *see id.* at 11–12. And as to the alleged "active participation" in Neugebauer's wrongdoing, the Trustee does not allege that any specific action taken by Defendants constituted "active participation" or conduct which was unauthorized by GloriFi's organizational documents or Delaware law. *See* Mtn. at 8, 11.

The Court's prior findings reveal *why* the Trustee omits these necessary allegations. The Trustee *cannot* allege that relevant decision makers were—due to a "failure to warn"—unaware of Neugebauer's actions, because those actions were discussed in Board meetings that included the "independent" directors. *See* Mtn. at 3–5. Similarly, the Trustee *cannot* allege what Defendants should have done to cause Neugebauer to cede control, because the Trustee affirmatively alleges that Neugebauer "wanted [GloriFi] for [him]self." *See id.* at 14. And the Trustee *cannot* allege that Neugebauer—"assisted" by Defendants or otherwise—acted without authorization, because GloriFi's corporate governance structure and Delaware law afforded him that control. *See id.* at 11–12. These omissions demonstrate that the Trustee failed to meet his pleading burden.

### IV. Any Post-Petition Conduct Must Be Disregarded

The Trustee fails to tie the alleged, post-Petition conduct to the elements of any of the asserted claims. Resp. ¶¶ 51–54. The Court should therefore disregard these allegations.

9

## V. The Trustee Fails to Defend the Fraudulent Transfer and Disallowance Claims

The failure to defend the Avoidance Claims (Resp. ¶¶ 57–58) confirms that they are not properly pled. Rather than identify the specific transfers at issue, the amounts involved, or the value that GloriFi allegedly received in exchange, the Trustee throws up his hands and requests leave to amend. *Id.* ¶ 38. These claims should be dismissed.

## VI. The Trustee's Claims Should Be Dismissed With Prejudice

"Leave to amend is in no way automatic" and should be denied if futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Here futility is plain with respect to the Avoidance Claims (for which the Trustee made no effort to plead *any* relevant facts and instead would ask this Court (contradictorily) to take judicial notice of its ability to plead such claims in other adversary proceedings) and also the aiding and abetting claim (which cannot be brought as a matter of law under applicable Delaware law, *see infra* § 2A).

The Trustee should also be denied leave to amend the malpractice claim. Again, the dispositive chasms in the Trustee's allegations exist for a reason: the Trustee *cannot* plead the facts to survive dismissal. This is why the Trustee, in requesting "in the alternative" leave to amend, merely states that he "could bring the Complaint into compliance," **but does not offer a single factual allegation** that he would add if given leave. Resp. ¶¶ 59–60. In such circumstances, the Court is within its discretion to deny leave to amend. *See, e.g.*, *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (expressing "little difficulty affirming the district court's denial of leave to amend" where plaintiff "fail[ed] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies").

Respectfully submitted,

*/s/ Barrett H. Reasoner*
**Barrett H. Reasoner**
Texas Bar No. 16641980
E-Mail: breasoner@gibbsbruns.com
**Ashley M. Kleber**
Texas Bar No. 24060263
E-Mail: akleber@gibbsbruns.com
**Ross M. Macdonald**
Texas Bar No. 24087956
E-Mail: rmacdonald@gibbsbruns.com

**GIBBS & BRUNS LLP**
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805

-and-

**Louis R. Strubeck, Jr.**
Texas Bar No. 19425600
E-mail: lstrubeckjr@omm.com
**Scott P. Drake**
Texas Bar No. 24026812
E-mail: sdrake@omm.com
**Laura Smith**
Texas Bar No. 24066039
Email: lsmith@omm.com

**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201-2692
Telephone: (972) 360-1900

*Counsel For Defendants, Winston & Strawn LLP and Michael Blankenship*

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that, contemporaneously with its filing, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this adversary proceeding.

                                          */s/ Barrett H. Reasoner*
                                          Barrett H. Reasoner