

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

_____

**Signed April 13, 2026**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 23-30246-MVL7** |
| **WITH PURPOSE, INC.** | § | **(CHAPTER 7)** |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| **SCOTT M. SEIDEL, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | **ADVERSARY NO. 25-03105-MVL** |
| | § | |
| v. | § | |
| | § | |
| **WINSTON & STRAWN LLP, and** | § | **RELATED TO ECF NO. 7** |
| **MICHAEL BLANKENSHIP,** | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

## I.   INTRODUCTION

Before the Court is the *Motion to Dismiss Trustee's Original Complaint* and *Brief in Support* (collectively, the "**Motion to Dismiss**") filed by Defendants Winston & Strawn LLP ("**Winston & Strawn**") and Michael Blankenship ("**Mr. Blankenship**" and, together with Winston & Strawn, the "**Defendants**") on November 3, 2025 [ECF Nos. 7, 8]. Through the Motion, the Defendants seek to dismiss all of the causes of action alleged by Plaintiff Scott M. Seidel—the duly appointed Chapter 7 Trustee (the "**Trustee**" or the "**Plaintiff**")—in the *Original Complaint* (the "**Complaint**") filed by the Trustee on September 17, 2025 [ECF No. 1].

In response, the Trustee filed an *Objection to Defendants Winston & Strawn LLP's and Michael Blankenship's Motion to Dismiss Trustee's Original Complaint* and *Brief in Support* (collectively, the "**Response**") on December 5, 2025 [ECF Nos. 14, 15]. Finally, the Defendants filed a *Reply Brief in Support of Winston & Strawn LLP's and Michael Blankenship's Motion to Dismiss under Rule 12(b)(6)* (the "**Reply**") on December 17, 2025 [ECF No. 17].

The Court held a hearing on the Motion to Dismiss on January 6, 2026. Counsel for the Trustee and the Defendants appeared. After hearing arguments, the Court took the Motion to Dismiss under advisement. The Court has considered the briefing and arguments of counsel and concludes that the Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**. The following constitutes the Court's analysis underlying its ruling.

## II.   JURISDICTION

Bankruptcy subject matter jurisdiction exists to determine this motion pursuant to 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

### III.   FACTUAL AND PROCEDURAL BACKGROUND

#### A.  *Factual History*[1]

The Court will provide a relatively comprehensive factual history underlying the Motion to Dismiss. The dispute in this matter revolves around what the Trustee alleges to be "massive financial harm" caused by the Defendants' "malpractice and intentional breaches of [their] fiduciary duties." ECF No. 1 at 2. More specifically, the Trustee alleges that, due to Winston & Strawn's "remarkable malfeasance" with respect to its representation of With Purpose, Inc. (the "**Debtor**" or "**GloriFi**"), the valuation of the Debtor plummeted from $1.7 billion to zero in mere months. *Id*.

In what the Trustee contends is a case reminiscent of a John Grisham novel about the "dangers in, and destruction caused by, conflicts of interest" in the legal profession, the allegations in the Complaint involve GloriFi's retention of Winston & Strawn to provide legal services and guidance to the Debtor in order to close a De-SPAC transaction (the "**De-SPAC Transaction**") with DHC Acquisition Corp. *Id.* at 2–3. According to the Trustee, GloriFi was Winston & Strawn's client, and thus the firm owed fiduciary duties to GloriFi. *Id.* at 3. However, the Defendants purportedly "betrayed" their fiduciary duties in favor of appeasing GloriFi's Chief Executive Officer, Toby Neugebauer ("**Mr. Neugebauer**"). *Id.*

This betrayal took shape in the form of the Defendants "knowingly and actively participating in" a variety of "schemes" that the Trustee alleges were designed to benefit Mr. Neugebauer's personal interests to the detriment of GloriFi, which proximately caused GloriFi's existing investors to lose confidence in GloriFi and further resulted in GloriFi's inability to close

---

[1] For purposes of this Order, the factual background is based upon the facts contained in the Complaint, which the Court accepts as true for purposes of the Motion to Dismiss in accordance with established authority.

the De-SPAC Transaction at a public valuation of $1.7 billion. *Id.* In other words, the Defendants' wrongdoing proximately caused the Debtor to lose nearly $2 billion in enterprise value. *Id.*

Taking a step back chronologically, the Trustee alleges that Winston & Strawn signed an engagement letter with GloriFi on December 30, 2021 (the "**Engagement Letter**"). As noted in the Complaint, the Engagement Letter made clear that "the firm's client will be GloriFi and not any director, officer, or employee of GloriFi. The Scope of our engagement will be to represent GloriFi in connection with a [De-SPAC Transaction]." *Id.* at 8. Additionally, the parties agreed that the scope of their business relationship would be limited to performance of services related to the De-SPAC Transaction and other matters with which GloriFi could from time to time request Winston & Strawn's assistance with. *Id.* In conjunction with the Engagement Letter, the Trustee alleges that the Defendants took on various fiduciary obligations with respect to GloriFi, including the duties of loyalty, good faith, prudence, candor, and confidentiality. *Id.*

However, the Trustee asserts that the Defendants' ability to uphold their fiduciary obligations to GloriFi was short-lived, and that scores of e-mails between Winston & Strawn's attorneys and Mr. Neugebauer reveal that the Defendants' loyalties lied with Mr. Neugebauer rather than GloriFi. *Id.* More specifically, on or around March and into April 2022, Winston & Strawn purportedly assisted Mr. Neugebauer in the development and execution of a "scheme" to: (1) remove independent board members Mr. Neugebauer believed were obstructing his ability to engage in self-dealing transactions; (2) replace those board members with his close friends and business partners; and (3) amend GloriFi's governing documents to facilitate self-interested transactions. *Id.* at 9.

Understanding the alleged breach of the Defendants' fiduciary obligations, however, requires a better understanding of Mr. Neugebauer's alleged breaches of his own fiduciary

obligations to GloriFi. In late March 2022, GloriFi was on the "precipice" of completing the De-SPAC Transaction and going public, and in order to satisfy the financial requirements to close the De-SPAC Transaction, the Debtor needed an additional round of funding. *Id.* at 10. However, it is alleged that, instead of seeking out arms-length funding sources, Mr. Neugebauer proposed his own self-interested transactions to improve his economic position relative to GloriFi's other stakeholders. *Id.* Mr. Neugebauer's plan, which he emailed to Mr. Blankenship on March 27, 2022, was to "put in 10mm of super senior convertible note at the 750 valuation," and he specifically asked Mr. Blankenship if he could make the note "super senior and secured" through stock belonging to a subsidiary of GloriFi—Animo Services, LLC ("**Animo**"). *Id.*[2]

This alleged scheme did not go unnoticed by GloriFi's other two board members, Nick Ayers ("**Mr. Ayers**") and Keri Findley ("**Ms. Findley**"), who emailed Mr. Blankenship and other attorneys at Winston & Strawn in late March 2022, specifically asking whether Mr. Neugebauer's request needed shareholder approval and whether Mr. Neugebauer's request violated various side letters held by GloriFi's Series 1 noteholders (the "**Noteholders**"). *Id.* at 10–11.

Internal emails at Winston & Strawn indicated that its attorneys did not believe the firm had any ability to issue debt "senior to [the Noteholders] without their consent," and especially, as Mr. Blankenship referred to in jest, a "*super, super **secret** senior.*" *Id.* at 12 (emphasis in original). Additional email exchanges between Mr. Neugebauer and the Defendants show that Mr. Neugebauer instructed Winston & Strawn to send to GloriFi's board, for immediate approval, an Asset Purchase and Assumption Agreement and Marketing Agreement, which provided for transactions transferring GloriFi's "Tech Stack" to a separate entity wholly owned and/or controlled by Mr. Neugebauer. *Id.* at 12–13. According to an email exchange between Mr.

---

[2] The Court notes that Animo is in a separately filed Chapter 7 bankruptcy case in this Court. *See* Case No. 23-30035-mvl7.

Neugebauer, Mr. Blankenship, and other attorneys at Winston & Strawn, Mr. Neugebauer indicated that he wanted the Tech Stack for himself, but that he did not want the proposed transaction "discussed with anyone that is not on this email." *Id.* at 13.

Despite the relatively obvious self-interested nature of Mr. Neugebauer's transaction proposal, the Trustee alleges that Winston & Strawn proceeded to assist Mr. Neugebauer in negotiating the terms of the transaction. *Id.* at 14. During this negotiation process, however, the Trustee alleges that Winston & Strawn avoided involving Mr. Ayers and Ms. Findley and instead took direction solely from Mr. Neugebauer. *Id.* Moreover, despite internal emails indicating that Winston & Strawn recognized that it was "very odd" that GloriFi was set to have a stockholders meeting with respect to Mr. Neugebauer's proposal prior to board approval of the transaction, Winston & Strawn proceeded to oversee a GloriFi board meeting in which Mr. Neugebauer allegedly made "overt threats of litigation" against Mr. Ayers and Ms. Findley and ultimately participated in a vote related to his own self-interested transaction. *Id.* at 14–15. The situation further deteriorated with GloriFi's other board members, including allegations of conflict of interests, misrepresentations made by Mr. Neugebauer to both shareholders and board members of GloriFi, and consent forms sent to GloriFi's shareholders designed to approve Mr. Neugebauer's proposals inconsistent with the term sheet that had actually been proposed by Mr. Neugebauer. *Id.* at 15–17.

Rather than take immediate steps to handle the situation involving Mr. Neugebauer's proposed transactions appropriately, the Defendants effectively doubled their efforts to assist Mr. Neugebauer, primarily by helping Mr. Neugebauer remove Mr. Ayers and Ms. Findley from GloriFi's board and replace them with close friends and/or business associates of Mr. Neugebauer. *Id.* Pointedly, as the relationship between Mr. Neugebauer, Mr. Ayers, and Ms. Findley

6

deteriorated, rather than step in to resolve the situation, the Defendants joked internally that they wanted "off of this ride", that the devolving situation was a "[m]ess", and that they should "lay low." *Id.* at 17–19. The Trustee alleges that the Defendants continued the approach of "appeasing" Mr. Neugebauer, all while recognizing in internal emails that the firm did not want to "look like we are doing the bidding of the controller." *Id.* at 20–21.[3]

In sum, the Trustee alleges that the Defendants' "misdeeds and collusion" with Mr. Neugebauer—namely Winston & Strawn's conflicted representation of GloriFi and Mr. Neugebauer, malpractice, breaches of fiduciary duties, and its active participation in facilitating Mr. Neugebauer's breaches of his own fiduciary duties—proximately caused GloriFi's inability to finalize the De-SPAC Transaction. *Id.* at 28.[4]

### B. Procedural History

In the Complaint, the Trustee asserts six causes of action against the Defendants: (1) Negligence (Legal Malpractice) against both Defendants; (2) Aiding and Abetting/Knowing Participation in Mr. Neugebauer's Breach of Fiduciary Duty to the Debtor against both Defendants; (3) Avoidance of a Constructive Fraudulent Transfer pursuant to § 548 of the Bankruptcy Code against Winston & Strawn; (4) Avoidance of a Constructive Fraudulent Transfer pursuant to the Texas Uniform Fraudulent Transfer Act ("**TUFTA**") against Winston & Strawn; (5) Recovery of Voidable Transfer pursuant to § 550 of the Bankruptcy Code against Winston & Strawn; and (6)

---

[3] The Defendants were not the only parties with concerns. The Trustee notes that Winston & Strawn began receiving letters from counsel to certain Noteholders, who likewise raised concerns with respect to Mr. Neugebauer's self-dealing transactions. *Id.* at 22. The Noteholders believed that GloriFi was suffering a governance crisis, which was then leading to a financial crisis, and that Mr. Neugebauer and the newly appointed members of the GloriFi board had demonstrated an "unwillingness" to conduct business consistent with their contractual obligations. *Id.*

[4] The Court notes that, in the Complaint, the Trustee provides further allegations with respect to the Defendants' continued conflict of interests between GloriFi and Mr. Neugebauer, much of which took place post-petition. Although the parties addressed these particular allegations in the pleadings, the Court does not find a summary of the Defendants' alleged post-petition actions to be pertinent for purposes of this Order.

7

Disallowance of Claim pursuant to § 502 of the Bankruptcy Code against Winston & Strawn. *Id.* at 32–33.

In the Motion to Dismiss, the Defendants raise several arguments why the Court should dismiss the entirety of the Complaint. First, the Defendants argue that Count I must be dismissed because, as a matter of law, the Trustee has not plausibly alleged that the Defendants breached a duty of care by completing what they refer to as "routine legal work." ECF No. 8 at 16. Additionally, the Defendants argue that the Trustee has not plausibly pleaded causation under Count I, and has not sufficiently alleged that, even if the Defendants breached a duty of care under Texas law, that such a breach was the proximate cause of GloriFi's failure to close the De-SPAC Transaction. *Id.* at 21–23.

Second, the Defendants argue that Count II must be dismissed because, as a matter of Delaware law, the Defendants cannot be liable for aiding and abetting the breach of a fiduciary duty when the Defendants separately owed fiduciary duties to GloriFi. *Id.* at 24. Alternatively, Count II should be dismissed because: (1) the Trustee's allegations pertain to transactions that were not consummated; (2) the Trustee has not plausibly alleged that the Defendants knowingly participated in Mr. Neugebauer's alleged breach of his fiduciary duties; and (3) any allegations with respect the Defendants' post-petition conduct do not support any of the Trustee's claims, especially Count II. *Id.* at 25–29.

Third, the Defendants argue that Counts III and IV, and thus Counts V and VI, should be dismissed because the Trustee has not sufficiently pleaded that the Debtor did not receive reasonably equivalent value by virtue of Winston & Strawn's legal services. *Id.* at 30–33.[5]

---

[5] The Court notes that, in the Response the Trustee requests leave to amend Counts III–VI, and additionally requests leave to amend Counts I and II if the Court were to grant the Motion to Dismiss with respect to the first two counts. ECF No. 15 at 28–29.

### IV.   STANDARD OF REVIEW

#### A.  *Rule 12(b)(6)*

Rule 12(b)(6), incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizes dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). However, the Court need not "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, state a plausible cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim satisfies the plausibility test 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ, 2021 WL 2546664, at \*1 (Bankr. N.D. Tex. June 3, 2022) (Jones, J.). This plausibility requirement sits somewhere between possible and probable, and is satisfied where the plaintiff's pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678

Although the complaint is not required to provide detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  However, numerous courts within the Fifth Circuit have reiterated that because "a complaint must be liberally construed in favor of the

9

plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted." *Reagor-Dykes*, 2021 WL 2546664 at *2 (citation omitted). In reviewing the motion, the court looks to the pleadings, alongside any documents attached or incorporated into the complaint by reference. *See Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006).

V.   **LEGAL ANALYSIS**

There are several issues before the Court, primarily with respect to Counts I–IV: (1) whether the Trustee has sufficiently pleaded all of the elements for a professional negligence/malpractice claim under Count I; (2) whether, after establishing that either Texas or Delaware law applies, the Trustee has sufficiently pleaded a viable claim for aiding and abetting a breach of Mr. Neugebauer's fiduciary duties under Count II; and (3) whether the Trustee sufficiently pleaded the necessary elements to maintain constructive fraudulent transfer claims under Counts III and IV. These issues are addressed in turn below.

A.   *Count I—Professional Negligence (Malpractice)*

As a threshold matter, the parties do not dispute that Texas law applies to Count I of the Complaint. Under Texas law, a plaintiff asserting a legal malpractice claim must, at the motion to dismiss stage, plausibly allege that: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *See Taylor v. Scheef & Stone, LLP*, Civ. Action No. 3:19-CV-2602-D, 2020 WL 4432848, at *4 (N.D. Tex. Jul. 31, 2020) (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)) (internal quotations omitted). The parties do not dispute the first or fourth elements, but the Defendants take particular issue with the breach and causation elements as alleged in the Complaint.

i.   *Breach*

10

Courts applying Texas law have made it consistently clear that attorneys "owe their clients the duty to act with ordinary care—i.e., in a manner consistent with the standard of care that would be expected to be exercised by a reasonably prudent attorney." *Id.* (quoting *Beck v. L. Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426 (Tex. App.—Austin 2009, no pet.)) (internal quotations omitted). The standard for determining whether an attorney has upheld this standard of care is an "objective exercise of professional judgment, not the subjective belief that [the attorney's] acts are in good faith." *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). Therefore, if an attorney's decision is one that a reasonably prudent attorney could have made under the same or similar circumstances, "it is not an act of negligence even if the result is undesirable." *Id.*

In the Motion to Dismiss, the Defendants contend that, despite the myriad of allegations related to the Defendants' purported breach of their duty of care, almost none of the allegations in the Complaint plausibly establish that the Defendants either violated GloriFi's organizational documents or that their actions were illegal or fraudulent. ECF No. 8 at 18–19. The Defendants argue that the focus should instead be on the actual legal work performed by Winston & Strawn, pursuant to its scope of representation, and that even the Trustee's allegations in that respect go no further than alleging that the Series 2 Notes were incorrectly dated at the "instruction of the client." *Id.* at 17. In essence, the Defendants' position is that, once the Court effectively wades through what they contend are non-pertinent allegations by the Trustee, none of the remaining allegations in the Complaint form a basis for a malpractice claim or a breach of the Defendants' duty of care. Put simply, the Defendants argue that the Trustee "cannot state a claim for malpractice because it is expressly not the responsibility of corporate counsel to provide business advice on which fundraising proposals might be superior or to select directors for an organization." *Id.*

The Defendants further rely upon the Texas Disciplinary Rules of Professional Conduct (the "**Disciplinary Rules**"), pointing out that not only do the Disciplinary Rules not create standards of liability, but they instead provide that "[w]hen constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful." *Id.* (quoting Tex. Disciplinary R. Pro. Conduct 1.13, cmt. 6). Accordingly, they argue that the Trustee incorrectly focuses on the Defendants' "alleged failure to compel [Mr.] Neugebauer to cede 'unilateral power' of control over GloriFi" rather than whether the Defendants performed any legal work improperly. *Id.* at 18.

Conversely, the Trustee argues the Defendants ignore that the basis for Count I derives from the Defendants' knowledge that Mr. Neugebauer was engaging in self-interested transactions in breach of his fiduciary duties to GloriFi (the Defendants' client), the transactions would likely cause severe harm to GloriFi, and that the Defendants failed to warn or "adequately advise" GloriFi of the known risks associated with Mr. Neugebauer's proposals. ECF No. 15 at 10–11. The Trustee argues that the Defendants were obligated to take remedial action on behalf of their client, but instead both failed to take any action to protect their client's interests and "actively participated and assisted" in Mr. Neugebauer's own breaches. *Id*. at 11.

Moreover, the Trustee notes that the Defendants' reliance on Rule 1.13 of the Disciplinary Rules bypasses subsection (b) of the rule, providing that a lawyer representing an organization must take reasonable remedial actions whenever the lawyer learns or knows that:

(1) an officer, employee, or other person associated with the organization has committed or intends to commit a violation of a legal obligation to the organization or a violation of law which reasonably might be imputed to the organization;

(2) the violation is likely to result in substantial injury to the organization; and

(3) the violation is related to a matter within the scope of the lawyer's representation of the organization.

*Id.* at 13; Tex. Disciplinary R. Pro. Conduct 1.13(b).

In light of the above-mentioned actions, and in conjunction with the Disciplinary Rules, the Trustee contends that that Complaint contains more than sufficient allegations to highlight how and when the Defendants' actions and/or inactions fell "well below the standard of care" and, therefore, constitute negligence." *Id.* at 12.

The Court ultimately agrees with the Trustee that the Complaint contains sufficient allegations of a breach of the Defendants' duty of care. First, while it is true that the Disciplinary Rules do not give rise to a cause of action nor can they form the basis of civil liability under Texas law, courts applying Texas law have nevertheless held that because the Disciplinary Rules "establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." *DLA Piper LLP (US) v. Linegar*, 539 S.W.3d 512, 518 (Tex. App.—Eastland 2017, pet. denied) (citation omitted) (internal quotations omitted). The Court finds the Disciplinary Rules especially pertinent in this matter.

The Defendants primarily rely upon Comment 6 of Disciplinary Rule 1.13, which states that certain circumstances may deem it "reasonably necessary" for an attorney to have an action taken by a constituent of the organization the attorney represents "reviewed by a higher authority in the organization." *See* ECF No. 17 at 6–7; Tex. Disciplinary R. Pro. Conduct 1.13, cmt. 6. According to the Defendants, the complexity involved with Mr. Neugebauer's proposed transactions, to the extent that the Defendants were obligated to report any concerns of same, were "already before and among the highest authority in the organization: its CEO, Board members, and shareholders." ECF No. 17 at 7. In other words, when the "ultimate authorities" at GloriFi had already determined a course of action, regardless of whether that action is imprudent, the Defendants were not liable for failing to take "unspecified" remedial actions to stop Mr. Neugebauer's transactions. *Id.*

13

The Court disagrees with this siloed, albeit clever, interpretation of the allegations in the Complaint. The dispute regarding Mr. Neugebauer's related party transactions was not necessarily "before and among" GloriFi's highest authorities. Ample allegations in the Complaint indicate that board members were consistently asking Winston & Strawn to weigh in on the legality of Mr. Neugebauer's proposals and allegedly receiving no advice in return. Likewise, board members repeatedly warned Winston & Strawn of inaccurate or misleading communications by Mr. Neugebauer that the firm was overtly acting upon.

Moreover, it seems problematic that Mr. Neugebauer's knowledge of his own transactions while he was CEO of GloriFi to be a sufficient panacea absolving the Defendants from taking any further remedial actions. Under this premise, Disciplinary Rule 1.13 would contain a blind spot in both construction and application, in that an attorney could never be held liable to failing to take remedial actions for the benefit of their client so long as the allegedly unlawful actions taken were orchestrated by the client's chief officer.

Additionally, despite the Defendants' narrow reading of Comment 6 as an escape hatch for alleged liability, they overlook Comment 7 to Disciplinary Rule 1.13. Comment 7 provides that, in some cases, and so long as the attorney for the organization does not violate Disciplinary Rules 1.02 or 1.05, further remedial action may include "revealing information relating to the representation to persons outside the organization," especially if the attorney has exhausted all remedies within the organization. Tex. Disciplinary R. Pro. Conduct 1.13, cmt. 7. Although the Trustee may admittedly be equivocal on what remedial actions the Defendants should have taken, taking the allegations in the Complaint as true, it is not equivocal that the Defendants internally recognized that the potential for a conflict existed, that the expected course of action would be for

14

the interested party to recuse himself, and that the board members were concerned about that individual's honesty and self-dealing when it came to disclosures.

As alleged in the Complaint, when the GloriFi boardroom was on fire, the Defendants' position was to let it burn. At this stage in the process, the Court is inclined to stress test that proposition through further proceedings. Here, it is at least plausible that the Defendants' conscious decision to "lay low" and allow Mr. Neugebauer to pursue a related party transaction, unimpeded by contrary counsel, constitutes a breach of the Defendants' duty of care with respect to Winston & Strawn's representation of GloriFi.

### ii.   Causation

The Defendants further contend that, even if the Court were to find that the Defendants breached a standard of professional care with respect to Winston & Strawn's representation of GloriFi, the Trustee has nevertheless failed to sufficiently plead that the Defendants' breach was the proximate cause of GloriFi's alleged $1.7 billion loss in valuation following the company's inability to close the De-SPAC Transaction. ECF No. 8 at 21–23. The Defendants' argument on this element is relatively simple: the Trustee does not sufficiently allege that the Defendants caused Mr. Neugebauer to refuse to cede control over GloriFi, nor does the Trustee plausibly allege that any action taken by the Defendants could have prevented Mr. Neugebauer from maintaining control over GloriFi. *Id.* Accordingly, the Defendants cannot plausibly be the proximate cause of GloriFi's financial collapse when there was not any action that they could or should have taken that would have led to a different result.

In the Response, the Trustee provides several counterarguments. First, the Trustee argues that the Defendants are attempting to hold the allegations in the Complaint to a higher pleading standard than Rule 8 of the Federal Rules of Civil Procedure (the "**Rules**") requires. ECF No. 15

at 17–19. Second, the Trustee argues that he has sufficiently established that the Defendants knew GloriFi's potential investors had lost confidence based upon Mr. Neugebauer's alleged actions and failed to advise GloriFi to implement the necessary measures for completing the De-SPAC Transaction. *Id.* at 19. Finally, the Trustee argues that the Defendants' futility argument with respect to course-correcting Mr. Neugebauer's actions, and whether the Trustee sufficiently pleaded what actions the Defendants could or should have taken, are beyond what is required of the Trustee at the motion to dismiss stage. *Id.* at 20. Rather, the Trustee need only plead sufficient facts "to give rise to a reasonable hope that discovery will reveal evidence" of causation. *Id.* (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)) (internal quotations omitted).

The Court once again agrees with the Trustee and finds that causation has been sufficiently alleged in the Complaint. As noted by the Supreme Court of Texas, the primary components of proximate cause are "cause in fact and foreseeability." *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017). Cause in fact, or whether a defendant's act was a "substantial factor" in the alleged harm, "requires a showing that the act or omission was a substantial factor in bringing about the injury and without which harm would not have occurred." *Id.* Additionally, foreseeability addresses the "legal cause" and a determination of the "proper scope of a defendant's legal responsibility for a negligent conduct that in fact caused harm." *Id.* In other words, foreseeability addresses "whether the harm incurred should have been anticipated and whether policy considerations should limit the consequences of a defendant's conduct." *Id.*

Similar to the arguments posited by the defendants in *Murillo Modular Group, Ltd. v. Sullivan*, the Defendants in this case "appear to confuse an issue of proof with an issue of pleading sufficiency." No. 3:13-CV-3020-M, 2015 WL 1442977, at *7 (N.D. Tex. Mar. 31, 2015). The

16

Defendants repeatedly argue that the Trustee's claim should fail because the Trustee did not sufficiently allege what the Defendants could or should have done that would have prevented the harm that befell GloriFi. *See* ECF No. 17 at 7–8. A cursory reading of the Complaint reveals several instances where the Trustee alleges **<u>what</u>** the Defendants should have done, including parroting Winston & Strawn's internal email recommending a course of action. *See* ECF No. 1 at 10 (alleging that Winston & Strawn should have advised Mr. Neugebauer on implementing "standard corporate governance" procedures); *see also* ECF No. 1 at 13 (highlighting an email from Mr. Chris Ferazzi, a partner at Winston & Strawn, in which he detailed various steps the firm should have taken prior to board meeting where Mr. Neugebauer's proposed transaction was set to be voted on).

In *Murillo*, the plaintiff alleged that, in relation to an auction of certain HVAC equipment, the defendants not only knew the equipment had been previously valued at $650,000 as part of a settlement agreement, but advised the plaintiff to authorize a third party to auction the equipment for approximately $14,000. *Murillo*, 2015 WL 1442977 at *6. The plaintiff alleged that the foreclosure sale of the equipment would have been more profitable had the plaintiff received value for the equipment substantially closer to its original valuation. *Id.* at *7. Accordingly, the defendants' inadequate advice in counseling the plaintiff to allow the auction to go through was a proximate cause of the allegedly deficient sale. *Id.* In its ruling, the District Court for the Northern District of Texas held that, while it was possible that the plaintiff would be unable to marshal proof that it could have sold the equipment for a higher price but for the defendants' advice, or that the defendants were the proximate cause of the alleged harm, the plaintiff's allegations with respect to proximate causation were nevertheless sufficient at the pleading stage. *Id.*

Here, the Court reaches a similar conclusion. While much of the Defendants' alleged liability in this case pertains to the failure to act and/or the Defendants' omission of pertinent

17

information to GloriFi and the other board members, the Trustee repeatedly alleges that the Defendants' failure to act was a conscious decision to prioritize Mr. Neugebauer's interests over GloriFi's. Likewise, the Trustee alleges that the Defendants were made aware of how risky Mr. Neugebauer's self-interested proposals were becoming with respect to the Noteholders and their collective confidence in GloriFi's ability to close the De-SPAC Transaction. The Defendants were aware that GloriFi was suffering a governance crisis that was causing a financial crisis, and opted to do nothing to prevent that alleged financial crisis from occurring before it was too late. ECF No. 1 at 22.

Much like the *Murillo* court, the Court acknowledges here that the Trustee may very well be unable to marshal proof that the Defendants were the proximate cause of GloriFi's inability to close the De-SPAC Transaction. However, at the motion to dismiss stage, the Complaint contains numerous allegations that illustrate: (1) the Defendants' knowledge of an ongoing governance issue with Mr. Neugebauer; (2) actions contrary to Winston & Strawn's internally recommended course of action to reasonably protect GloriFi's interests; (3) the Defendants' decision to remain hands-off during Mr. Neugebauer's alleged self-dealing and misrepresentations to shareholders; and (4) such inaction caused the De-SPAC Transaction to fail. In the Court's mind, such allegations are more than sufficient.

Therefore, the Court **DENIES** the Motion to Dismiss with respect to Count I of the Complaint.

### B. Count II—Aiding and Abetting a Breach of Fiduciary Duty

As to Count II, the Court is faced with several issues: (1) whether Texas or Delaware law applies to the Trustee's cause of action; (2) whether the Trustee can bring a viable claim for aiding and abetting Mr. Neugebauer's breaches of fiduciary duties while alleging that the Defendants

possessed their own fiduciary duties to GloriFi; (3) whether the Trustee plausibly alleged that the Defendants knowingly participated in Mr. Neugebauer's alleged breach; and (4) whether the Trustee's claim is dependent upon the consummation of the alleged transactions in the Complaint.

> ### i. Which State Law Applies?

As a threshold matter, the parties dispute whether Texas or Delaware law applies to Count II. The Defendants contend that because the Trustee alleges that the Defendants aided and abetted a breach of Mr. Neugebauer's breach of fiduciary duties to GloriFi—a Delaware corporation—any alleged breach of a fiduciary duty controlled by Delaware law would therefore mean that Delaware law applies to a claim for aiding and abetting same. ECF No. 8 at 24–25. Conversely, the Trustee contends that the Defendants are attempting to impermissibly require the Court to determine whether Delaware law applies to Count II at the Rule 12(b)(6) stage. The Court agrees with the Defendants that, under the internal affairs doctrine, Delaware law applies.

As noted by the Fifth Circuit, "Texas, like most other states, follows the 'internal affairs doctrine,'" in that the internal affairs of a foreign corporation—including but not limited to the rights, powers, and duties of both its board members and shareholders—are "governed by the laws of the jurisdiction of incorporation." *Hollis v. Hill*, 232 F.3d 460, 464–65 (5th Cir. 2000). The internal affairs doctrine applies to breach of fiduciary duty claims. *See Herington v. Univar Sols. Inc.*, Case No. 4:30-CV-3252, 2021 WL 3828702, at *2 (S.D. Tex. May 20, 2021) (applying the internal affairs doctrine and establishing that Delaware law applies to claim for breach of fiduciary duty in the motion to dismiss context). Moreover, this Court has previously noted that when a claim for breach of fiduciary duties is governed by Delaware law, a party's aiding and abetting cause of action is also governed by same. *See In re Highland Cap. Mgmt., L.P.*, Case No. 19-34054-sgj-11, at *34 (Bankr. N.D. Tex. Aug. 25, 2023) (Jernigan, C.J.).

19

In this matter, the Trustee does not dispute that GloriFi is a Delaware Corporation, nor does it contest that the alleged breaches of fiduciary duties committed by Mr. Neugebauer arise out of his fiduciary duties to GloriFi. Accordingly, in alignment with the Court's previous determinations on this issue, Delaware law applies to the Trustee's claim that the Defendants aided and abetted the fiduciary duties belonging to Mr. Neugebauer. Therefore, the Court evaluates the pleading sufficiency issues with respect to Count II under Delaware law.

ii.     The Defendants' Separate Fiduciary Duties

Under Delaware law, to bring an aiding and abetting a breach of fiduciary duty cause of action, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by the defendants; and (4) damages proximately caused by the breach. *See In re DSI Renal Holdings, LLC*, 574 B.R. 446, 474 (Bankr. D. Del. 2017). However, as to the third element, courts applying Delaware law have noted that to prove such a cause of action, it must be shown that the defendant is not a fiduciary of the plaintiff themselves. *In re W.J. Bradley Mtg. Cap., LLC*, 598 B.R. 150, 174 (Bankr. D. Del. 2019).

At bottom, the Defendants' first primary argument as to the viability of Count II is that, under Delaware law, an aiding and abetting a breach of fiduciary duty cause of action cannot be maintained against defendants "who themselves owe fiduciary duties to the relevant entity and plaintiff." ECF No. 8 at 24–25; *CMS Inv. Holdings, LLC v. Castle, C.A.,* No. 9468-VCP, 2015 WL 3894021, at *20 (Del. Ch. June 23, 2015). They argue that an aiding and abetting cause of action under Delaware is only viable against a "party not in [a] direct fiduciary relationship" with the plaintiff. ECF No. 8 at 25; *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984). According to the Defendants, the Trustee readily admits in the Complaint that the Defendants owed their own fiduciary duties to GloriFi and thus the Trustee's cause of action under Count II must be dismissed.

20

ECF No. 8 at 25; *see also* ECF No. 1 at 2 ("The Trustee seeks to hold Winston Strawn accountable for the massive financial harm caused by Winston Strawn's malpractice and intentional breaches of fiduciary duties.").

The Trustee counters that Delaware courts have found an exception to the rule, in that "when the extent or scope of a defendant's fiduciary duties are disputed, it would be improper at the motion to dismiss stage to dismiss an alternative claim for aiding and abetting another breach of fiduciary duty." ECF No. 15 at 21. Rather, when the scope of a defendant's fiduciary duties is disputed, as the Trustee claims the Defendants' fiduciary duties to GloriFi are, a dismissal on such basis would prevent the Trustee from raising what is effectively an alternative claim to the malpractice claim under Count I. *Id.* at 22. This purported dispute, according to the Trustee, centers around whether the Defendants possessed fiduciary obligations to take remedial measures and protect GloriFi's interests once they knew that Mr. Neugebauer's self-interest transaction was in direct violation of his own fiduciary duties to the company. *Id.* In other words, although the Trustee alleges that the Defendants had fiduciary duties to GloriFi in some capacity, the Defendants have disputed whether such duties included taking any further remedial actions, thereby calling the scope of their fiduciary duties into question.

The Court agrees with the Trustee that, for pleading sufficiency purposes, the Trustee can bring an aiding and abetting claim under Delaware law because the scope and extent of the Defendants' fiduciary duties remain in dispute to some degree. While the court in *W.J. Bradley* makes clear that prevailing on an aiding and abetting claim requires proving that the defendant is a non-fiduciary to the plaintiff, any determination of the "precise boundaries" of a defendant's fiduciary duties is ultimately premature at the pleading stage. *W.J. Bradley*, 598 B.R. at 174. As

the court in *DSI* held in the context of establishing the scope of fiduciary duties belonging to the plaintiffs' directors and officers:

> Although the elements of a claim for aiding and abetting a breach of fiduciary duty count are couched in terms of the primary violator being a fiduciary and the aider and abettor a non-fiduciary, there is no case law that precludes such a claim against a fiduciary. While a corporate director owes the corporation fiduciary duties, in some instances those duties may be limited (by corporate charter or statute). Thus, the Court may find that a director had no fiduciary duty but aided and abetted a party that did.

*DSI*, 574 B.R. 446, 474 (quoting *In re The Brown Schs.*, 368 B.R. 394, 402–03 (Bankr. D. Del. 2007)).

In *DSI*, the court expressly noted that the plaintiff may eventually prove that certain of the D&O's were either shielded by exculpatory clauses under their respective contracts and/or that their fiduciary duties were limited by either the corporation's governing documents or various statutes. *Id.* at 474–75. However, affording all reasonable inferences to the trustee at that particular stage of the case, the Bankruptcy Court for the District of Delaware ultimately found that the trustee had adequately pleaded an aiding and abetting a breach of fiduciary duty cause of action for each of the D&O defendants, notwithstanding the possibility that further discovery might provide for more precise boundaries as to the scope of the defendants' fiduciary duties. *Id.*; *see also W.J. Bradley*, 598 B.R. at 174–75 (finding that, despite the possibility that further discovery may prove that one or more of the defendants either did not have fiduciary duties or that the scope of same was more limited than originally alleged, the trustee had sufficiently pleaded an aiding and abetting claim in the alternative).

Here, the Court reaches a similar determination. While the Trustee undoubtedly alleges that the Defendants owed fiduciary duties to GloriFi via Winston & Strawn's representation, the outer limits of those duties are not only ill-defined but disputed by the Defendants. That determination

22

is premature at this particular stage of the case. Moreover, the Court has some concern that a lawyer's fiduciary duties, compared to that of an officer or director, may vary considerably.

Therefore, the Court finds that, under Delaware law, the Trustee may allege an aiding and abetting a breach of fiduciary duty cause of action despite general allegations of the Defendants owing their own fiduciary duties to GloriFi.

### iii.    Knowing Participation

As recently noted by the Court of Chancery of Delaware, a claim for aiding and abetting "often turns on meeting the 'knowing participation' element." *Witmer v. Armistice Cap., LLC*, 344 A.3d 632, 659 (Del. Ch. 2025) (citation omitted) (internal quotations omitted). Naturally, the knowing participation element involves two distinct concepts: (1) knowledge, and (2) participation. *Id.* However, the court made clear in *Witmer* that not only will conclusory statements "devoid of factual details to support an allegation of knowing participation" fail to meet the pleading requirements necessary to survive a motion to dismiss under Rule 12(b)(6), but that the requirement under Delaware law that an aider and abettor "act with *scienter*" makes an aiding and abetting claim "among the most difficult to prove." *Id.* (citation omitted) (internal quotations omitted).

As for the "knowing" prong, the court acknowledged in *Witmer* two distinct types of knowledge that must be shown: (1) the defendant's knowledge that the primary party's conduct constitutes a breach of their own fiduciary duty; and (2) the defendant must know the impropriety of its own conduct. *Id.* at 660. Put simply, the defendant must know of the alleged breach, as well as the wrongfulness of its own conduct. *Id.*

As for the "participation" prong, the court reiterated in *Witmer* that participation requires that the defendant provided "substantial assistance" to the primary violator. *Id.* (quoting *In re*

*Mindbody, Inc., Stockholder Litig.*, 332 A.3d 349, 392 (Del. 2024)) (internal quotations omitted). An alleged aider and abettor's participation must also be of an "active nature" rather than mere "passive awareness." *Witmer*, 344 A.3d at 660–61 (citation omitted) (internal quotations omitted). In *Mindbody*, the Supreme Court of Delaware acknowledged that, especially in the corporate governance context, liability for aiding and abetting was found "only where there has been overt participation such as active 'attempts to create or exploit conflicts of interest in the board' or an overt conspiracy or agreement" between particular parties with respect to a transaction affecting the underlying organization. *Mindbody*, 332 A.3d at 393.

In *Witmer*, the court was faced with allegations by a stockholder plaintiff that the defendant had intimate knowledge regarding proposed financial transactions pursued by a related organization's board of directors, yet the defendant chose to withhold this information to the detriment of the organization. *Witmer*, 344 A.3d at 641–43. Despite having the requisite knowledge that the organization's board of directors would likely breach its fiduciary duties in finalizing the transactions and remaining silent as to same, the defendant, according to the court, had not actively participated in the board's breach and the plaintiff had not pleaded that the defendant "created an informational vacuum or misled [the organization's] board in any way." *Id.* at 661; *see also In re Rural Metro Corp.*, 88 A.3d 54, 99–100 (Del. Ch. 2014) (holding that an aiding and abetting claim can survive a motion to dismiss if the plaintiff can sufficiently allege that the defendant "created the unreasonable process and information gaps" that led to the primary violator's breach of the duty of care through either misdirection or improper motives).

Here, the Defendants argue that, despite numerous allegations of the Defendants' failures to warn GloriFi's board members of the implications of Mr. Neugebauer's self-interested transactions, as well as their choice to stay silent while GloriFi's apparent governance and financial

crises threatened to derail the De-SPAC Transaction, the Trustee has still failed to sufficiently plead that the Defendants knowingly participated in Mr. Neugebauer's alleged breaches of fiduciary duties. According to the Defendants, the Trustee's assertions of knowing participation and assistance in Mr. Neugebauer's breaches are merely conclusory, and the Trustee fails to articulate the *scienter* behind the alleged aiding and abetting. ECF No. 8. The Trustee counters this argument by contending that numerous internal emails illustrate that the Defendants knew about Mr. Neugebauer's improper behavior via self-interested proposals and alleged misrepresentations to GloriFi's board and shareholders. ECF No. 15 at 26. Likewise, the Trustee alleges that the Defendants were active participants in such breaches. *Id.*

While admittedly a close call, the Court ultimately sides with the Trustee that Count II sufficiently alleges knowing participation in Mr. Neugebauer's alleged breaches of fiduciary duties. Although much of the Complaint contains what are arguably conclusory statements that the Defendants were active participants in Mr. Neugebauer's actions, the Defendants undersell the Trustee's substantive allegations underlying his conclusions. First, it is without question that the Trustee has sufficiently pleaded the knowledge prong of "knowing participation." Throughout the Complaint, the Trustee alleges that the Defendants were aware of the improper nature of Mr. Neugebauer's proposals and/or his alleged misrepresentations to shareholders, and the ensuing confusion and concern from both GloriFi's board members and the Noteholders. Moreover, the Trustee includes multiple email exchanges, both internally within Winston & Strawn and externally between the Defendants and Mr. Neugebauer, Mr. Ayers, and Ms. Findley, respectively. For pleading purposes, notwithstanding the stricter standards that Delaware courts have imposed upon pleading an aiding and abetting cause of action, the quantity and quality of the Trustee's allegations are more than sufficient for this prong.

25

As for the participation prong, the determination is much closer. However, the Court is satisfied with the Trustee's allegations as to the Defendants' active participation in two respects. First, the Trustee specifically alleges that Winston & Strawn sent out letters of consent to GloriFi's shareholders, which allegedly contained misrepresentations regarding the details of Mr. Neugebauer's proposed transactions. ECF No. 1 at 16–17. The Trustee further alleges that Mr. Ayers emailed Mr. Blankenship directly to note that the term sheet included in the consent letters was misleading, at best, in relation to Mr. Neugebauer's actual proposals. *Id*. at 17. Second, the Court also finds the Trustee's allegations related to the Defendants' negotiation of the terms of Mr. Neugebauer's proposal are also sufficient to allege participation in Mr. Neugebauer's breach. The Trustee specifically alleges that Winston & Strawn suggested that the proposed note's choice of law provision contain New York law to "make the terms more favorable" to Mr. Neugebauer despite representing GloriFi. *Id*. at 14–15. Furthermore, the Trustee alleges that the Defendants avoided involving Mr. Ayers and Ms. Findley in the negotiation process, despite the self-interested nature of Mr. Neugebauer's proposal. *Id*. at 14.

While the Complaint, at times, contains conclusory language that courts like *Witmer* and *Rural Metro* chastise, the above-mentioned allegations are sufficient in the Court's mind for purposes of establishing "knowing participation." Here, the Trustee plausibly alleged that the Defendants either "misled" or, at the very least, created the "unreasonable process and information gaps" with respect to GloriFi's board and its shareholders' abilities to properly assess the legality of Mr. Neugebauer's proposals. As well, the Trustee plausibly alleged that the Defendants participated in negotiating portions of Mr. Neugebauer's proposals and "went out of [their] way" to make the terms of Mr. Neugebauer's proposed transaction more favorable to him and to

GloriFi's detriment. *Id*. At this stage in the case, such allegations are more than enough to survive a Rule 12(b)(6) motion under Delaware law.

### iv. *Consummation of the Proposed Transactions*

The Defendants' final argument with respect to Count II is that the Trustee's cause of action is not viable because, "Delaware does not recognize a claim for breach of fiduciary duty based on attempted but not consummated self-dealing transactions." ECF No. 8 at 25 (citing *Niehenke v. Right O Way Transp., Inc.*, Civ. Action No. 14392, 14444, 1996 WL 74724, at *2–3 (Del. Ch. Feb. 13, 1996)). In other words, given that the Trustee alleges that Mr. Neugebauer's self-interested transactions were only proposed and never finalized, the Court must dispose of the Trustee's cause of action. *Id*. at 26.

The Trustee responds that the Defendants miss the underlying premise of the Trustee's claim: rather than this matter being a dispute about "attempted bad deals", the crux of the matter is that the Defendants' knowing participation in Mr. Neugebauer's self-dealing caused a governance crisis resulting in a financial crisis at GloriFi. ECF No. 15 at 22. Moreover, the Trustee argues that, under Delaware law, courts have "distinguished between damages resulting specifically from [a] challenged transaction and other damages stemming from a breach of fiduciary duty," and that those courts have ultimately held that damages for the latter are recoverable "even where one or more of the fiduciary's intended self-dealing transactions fail." *Id*. at 22–23 (quoting *OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 716 (Del. Ch. 2014)) (internal quotations omitted).

The Court agrees with the Trustee that, at the pleading stage, the Defendants' emphasis on the completion, or lack thereof, of Mr. Neugebauer's self-interested proposals is a misunderstanding of the allegations underlying Count II. At bottom, the Trustee pleads that Mr.

27

Neugebauer owed various fiduciary duties to GloriFi as a board member and CEO, and that he allegedly violated those duties by actively proposing self-interested transactions, improperly participating in a vote to approve one of those transactions, and misrepresenting the nature of his proposals to shareholders. The Trustee pleads that the Defendants actively facilitated Mr. Neugebauer's actions, which not only disrupted GloriFi from a governance perspective, but eventually caused the De-SPAC Transaction to fail. Such allegations revolve around Mr. Neugebauer's actions as a governing member of the organization, and their sufficiency is not dependent upon the success of the proposed transactions themselves.

For a defendant to be liable for aiding and abetting, the alleged aider and abettor must "knowingly assist another in committing a wrongful act." *New Ent. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 176 (Del. Ch. 2023). Here, the Defendants incorrectly presume that the wrongful act allegedly committed by Mr. Neugebauer must be the completion of a self-interested transaction. However, the alleged wrongful acts in the Complaint pertain to Mr. Neugebauer's alleged disruption of the De-SPAC Transaction process, his attempts to disrupt proper corporate governance, and the subsequent damage Mr. Neugebauer caused through his **pursuit** of the transactions in the first place. In sum, the Trustee alleges that Mr. Neugebauer sowed chaos at GloriFi and the Defendants aided and abetted him.

Furthermore, the cases relied upon by the Defendants do not necessarily support their novel legal position. In *Niehenke*, the court refused to find a defendant liable for breach of fiduciary duty primarily because the defendant merely solicited the transaction in questions but never actually executed the wrongful act. *Niehenke*, 1996 WL 74724 at *2. Notwithstanding that the case involved a post-trial motion for rehearing rather than a motion to dismiss, the wrongful act and the damages in dispute before the *Niehenke* court were specifically tied to the "unexecuted requests of

an officer, spoken with uncertain intent" and the alleged harm to shareholders due to the officer's solicitations. *Id*. Here, even if the Court were to set aside the fact that Mr. Neugebauer's written proposals, as alleged, were anything but uncertain in terms of intent, the premise underlying the Complaint is that he breached his fiduciary duties through unilateral actions and misrepresentations to further his financial position in GloriFi, and that the Defendants were active participants in that process. The damage suffered by GloriFi is alleged to stem from those actions and their effect on the prospect of finalizing the De-SPAC Transaction. None of that damage is contingent upon Mr. Neugebauer having finalized his proposed transaction; the harm to GloriFi, according to the Trustee, was already done.

The Court also finds that the Defendants' argument is concerning from a practical perspective. In essence, the Defendants' premise is results-oriented; a breach of fiduciary duty is only actionable under Delaware law if the defendant successfully completes a particular act they set out to commit. While that may make sense under certain circumstances (for example, the unauthorized sale of an asset that is not consummated), such a broad-brush rule swallows what constitutes a breach of fiduciary duty altogether. The Defendants would have this Court hold that, so long as Mr. Neugebauer's final breach (the self-interested transactions and/or the note) never materializes, his other alleged breaches effectively do not count for liability purposes and therefore the Defendants cannot be liable either. That is a proposition this Court cannot adopt. For pleading purposes, fully consummating an unlawful transaction cannot be the sole determining factor for liability, especially when the **means** for achieving consummation are plausibly alleged as improper acts as well.

Therefore, the Court **DENIES** the Motion to Dismiss with respect to Count II.

### C.  Counts III & IV—Constructive Fraudulent Transfer

29

The sole issue before the Court with respect to Counts III and IV, and thus the viability of Counts V and VI, is whether the Trustee has plausibly alleged that GloriFi received less than reasonably equivalent value from Winston & Strawn with respect to the legal services performed in exchange for GloriFi paying Winston & Strawn approximately $790,890.

To establish a cause of action under either § 548 or TUFTA for constructive fraudulent transfer, the trustee "must demonstrate that the debtor received less than reasonably equivalent value in exchange for such transfer or obligation." *In re Hanover Corp*., 310 F.3d 796, 799 (5th Cir. 2002) (quoting 11 U.S.C. § 548(a)(1)(B)(i)). As previously noted by this Court, "Reasonably equivalent value is not defined in the [Bankruptcy] Code." *In re With Purpose, Inc.*, Case No. 23-30246, Adv. Proc. No. 24-3038, 2025 WL 1698694 at *21 (Bankr. N.D. Tex. June 16, 2025) (Larson, J.). However, § 24.004(d) of TUFTA defines "Reasonably Equivalent Value" to include, without limitation, "a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." Tex. Bus. & Comm. Code § 24.004(d).

Although the definition of reasonably equivalent value may be conceptual, both the Bankruptcy Code and TUFTA provide that "'value' includes, but is not limited to, the satisfaction of an antecedent debt of the debtor." *In re Senior Care Ctrs., LLC*, Case No. 18-33967, Adv. Proc. No. 20-03182, 2023 WL 6519756, at *12 (Bankr. N.D. Tex. Mar. 24, 2023) (Jernigan, C.J.); *see also* 11 U.S.C. § 548(d)(2)(A) ("'[V]alue' means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."); Tex. Bus. & Comm. Code § 24.004(a) ("Value is given for a transfer . . . if, in exchange for the transfer . . . an antecedent debt is secured or satisfied . . . ."). Accordingly, under Fifth Circuit precedent, for "reasonably equivalent value" to be present,

30

the debtor must have "received value that is substantially comparable to the worth of the transferred property." *Stanley v. U.S. Bank Nat'l Ass'n.* (*In re TransTexas Gas Corp.*), 597 F.3d 298, 306 (5th Cir. 2010) (citation omitted) (internal quotations omitted).

The burden for showing a lack reasonably equivalent value "falls on the [t]rustee—the party seeking to avoid the [t]ransfer as a constructively fraudulent conveyance." *Senior Care Centers*, 2023 WL 6519756 at *14. The Supreme Court of Texas has held that both "value" and "reasonably equivalent value" contain an "implicit requirement that the transfer confer some **direct or indirect economic benefit** to the debtor, as opposed to benefits conferred solely on a third party, transfers that are purely gratuitous and transactions that merely hold subjective value to the debtor or transferee." *Id.*; *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 574 (Tex. 2016) (emphasis in original). It is therefore a trustee's burden to show that a debtor "did not receive a direct or indirect benefit" in exchange for the transfers at issue. *Senior Care Centers*, 2023 WL 6519756 at *14.; *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 574 (Tex. 2016). Finally, a court's determination of what constitutes "reasonably equivalent value" must be made "as of the time of the transfer, without the benefit of hindsight as to what actually transpired after the transfer that might have affected the value." *In re Topcor Inc.*, 54 Fed. App'x 405 (5th Cir. 2002).

Here, the Court need not wax poetic on the merits of the parties' respective arguments on this issue because the the Trustee's allegations with respect to reasonably equivalent value are plainly insufficient. Put simply, there are no allegations in the Complaint that even attempt to explain how the legal services provided by Winston & Strawn lacked reasonably equivalent value, or how the Debtor did not receive a direct or indirect benefit from the alleged transfers. Rather, the Complaint merely states that GloriFi "obviously did not receive reasonable equivalent value" and the Trustee broadly gestures at the remaining allegations as support for that claim. Such a

31

contention is purely conclusory, and while the notice pleading requirements under Rule 8 are undoubtedly lenient, they are not amorphous. The "obviousness" of an allegation's plausibility is only as strong as the effort the plaintiff puts forth in actually pleading as much. A plaintiff's claims cannot survive purely on their choice in adverbs.

Therefore, the Court will **GRANT** the Motion to Dismiss with respect to Counts III and IV, and thus will **GRANT** the Motion with respect to Counts V and VI as well, without prejudice, and will permit the Trustee to re-plead these particular causes of action.

## VI.    CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that the Defendants' Motion to Dismiss is **DENIED** with respect to Counts I and II of the Complaint; it is hereby

**ORDERED** that the Defendants' Motion to Dismiss is **GRANTED** with respect to Counts III, IV, V, and VI; and it is hereby

**ORDERED** that, given the Trustee's request seeking leave to amend any causes of action dismissed by the Court, the Trustee will be permitted to amend the Complaint and file same within thirty (30) days of entry of this Order.

**### END OF ORDER ###**