CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 8, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| **WITH PURPOSE, INC.** | § | **CASE NO. 23-30246-MVL7** **(CHAPTER 7)** |
| **Debtor.** | § | |
| **SCOTT M. SEIDEL, TRUSTEE,** | § | |
| **Plaintiff,** | § | **ADVERSARY NO. 25-03105-MVL** |
| **v.** | § | |
| **WINSTON & STRAWN LLP, and MICHAEL BLANKENSHIP,** | § | **RELATED TO ECF NO. 40** |
| **Defendants.** | § | |

**ORDER DENYING DEFENDANTS' MOTION TO STRIKE JURY DEMAND**

Pending before the Court is the *Motion to Strike Plaintiff's Jury Demand* and *Brief in Support* (collectively, the "**Motion to Strike**") filed by Defendants Winston & Strawn LLP ("**Winston & Strawn**") and Michael Blankenship ("**Mr. Blankenship**", and, collectively, the "**Defendants**") on June 11, 2026 [ECF Nos. 40, 70]. In the Motion to Strike, the Defendants request that the Court strike the *Jury Demand* filed by Scott M. Seidel—the duly appointed Chapter 7 Trustee (the "**Trustee**" or the "**Plaintiff**")—on May 3, 2026, [ECF No. 28] pursuant to Rule 38 of the Federal Rules of Civil Procedure (the "**Rules**"), made applicable by Rule 9015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

Subsequently, the Trustee filed a *Response to Defendants' Motion to Strike Jury Demand* and *Brief in Response* (collectively, the "**Response**") on July 8, 2026 [ECF Nos. 59, 60]. Finally, the Defendants filed a *Reply Brief in Support of Their Motion to Strike Plaintiff's Jury Demand* on July 15, 2026 [ECF No. 66]. The Court held a hearing with respect to the Motion to Strike on July 22, 2026. Upon conclusion of oral argument, the Court took the matter under advisement. Accordingly, after consideration of the pleadings and oral argument, the Court **DENIES** the Motion to Strike.

The following constitutes the Court's analysis underlying its ruling. Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I. FACTUAL/PROCEDURAL HISTORY:

### *A. Factual History*

Given that the lengthy factual history of this case and the related adversary proceedings was previously detailed in the *Memorandum Opinion and Order Granting in Part Defendants' Motion to Dismiss* (the "**Dismissal Order**") entered by the Court on April 14, 2026 [ECF No. 21],

the Court hereby incorporates much of the factual history contained therein and will retread only those portions of the factual history pertinent to understanding the Motion to Strike.

The dispute in this matter revolves around what the Trustee alleges to be "massive financial harm" caused by the Defendants' "malpractice and intentional breaches of fiduciary duties."[1] More specifically, the Trustee alleges that, due to Winston & Strawn's "remarkable malfeasance" with respect to its representation of With Purpose, Inc. (the "**Debtor**" or "**GloriFi**"), the valuation of the Debtor plummeted from $1.7 billion to zero in mere months.[2]

The allegations underlying the adversary proceeding involve GloriFi's retention of Winston & Strawn to provide legal services and guidance to the Debtor in order to close a De-SPAC transaction (the "**De-SPAC Transaction**") with DHC Acquisition Corp ("**DHC**").[3] According to the Trustee, GloriFi was Winston & Strawn's client, and thus the firm owed fiduciary duties to GloriFi. *Id.* at 3. However, the Defendants purportedly "betrayed" their fiduciary duties in large measure to appease GloriFi's Chief Executive Officer, Toby Neugebauer ("**Mr. Neugebauer**").[4]

This betrayal took shape in the form of the Defendants "knowingly and actively participating in" a variety of "schemes" that the Trustee alleges were designed to benefit Mr. Neugebauer's personal interests to the detriment of GloriFi, which proximately caused GloriFi's existing investors to lose confidence in GloriFi and further resulted in GloriFi's inability to close the De-SPAC Transaction at a then-public valuation of $1.7 billion.[5] In other words, it is alleged that the Defendants' wrongdoing proximately caused the Debtor to lose nearly $2 billion in

[1] ECF No. 1 at 2
[2] *Id*.
[3] *Id.* at 2–3.
[4] *Id.*
[5] *Id.*

enterprise value. *Id.* The Trustee asserts that scores of e-mails between Winston & Strawn's attorneys and Mr. Neugebauer reveal that the Defendants' loyalties lied with Mr. Neugebauer rather than GloriFi.[6] More specifically, on or around March and into April 2022, Winston & Strawn purportedly assisted Mr. Neugebauer in the development and execution of a "scheme" to: (1) remove independent board members Mr. Neugebauer believed were obstructing his ability to engage in self-dealing transactions; (2) replace those board members with his close friends and business partners; and (3) amend GloriFi's governing documents to facilitate self-interested transactions.[7]

Even more pertinent to this dispute are the contracts underlying not only the Debtor and the Defendants' relationship, but a number of agreements executed between the Debtor and various third parties, including Mr. Neugebauer. The most notable agreement between the Debtor and the Defendants is an engagement letter signed and executed between the parties on December 30, 2021 (the "**Engagement Letter**") [ECF No. 61]. The Engagement Letter states that Winston & Strawn would represent the Debtor "in connection with the De-SPAC Transaction" and that the scope of its agreement would be "limited to performance of services related to this matter and other various matters which [the Debtor] may from time to time request [Winston & Strawn]'s assistance."[8] The Engagement Letter does not contain a waiver of either party's right to a jury trial.

However, in the Motion to Strike, the Defendants make note of several other contracts executed by the Debtor, namely: (1) the Amended and Restated Stockholders' Agreement (the "**Stockholders Agreement**") signed and executed between the Debtor, Mr. Neugebauer, and Neugebauer Family Enterprises, LLC ("**NFE**") on December 3, 2021; (2) the Business

---

[6] *Id.*
[7] *Id.* at 9.
[8] ECF No 61 at 3.

Combination Agreement and Plan of Reorganization (the "**DHC Business Combination Agreement**") signed and executed between the Debtor, DHC, and Glory Merger Subsidiary Corp. on July 25, 2022; and (3) the Non-Binding Term Sheet (the "**DHC Term Sheet**") executed between the Debtor and DHC on February 4, 2022.[9] Each of the three foregoing agreements contains jury waiver provisions (the "**Jury Waivers**").

First, Section 9.13 of the Stockholders Agreement provides that each party waives its right to a jury trial of "any claim or cause of action based upon or arising out of this agreement or the subject matter hereof."[10] The provision further provides that the scope of the waiver is "intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this agreement," including, without limitation, contract, tort, breach of fiduciary duty, and any and all other common law or statutory claims.[11]

Second, Section 10.07 of the DHC Business Combination Agreement provides that each of the parties "hereby waives to the fullest extent permitted by applicable law any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the [DHC] Transactions."[12] Finally, Section 13 of the DHC Term Sheet provides that each party "irrevocably waives, to the fullest extent permitted by law, any right it may have to a trial by jury in any proceeding directly or indirectly arising out of or relating to this term sheet."[13] However, the parties do not dispute that Winston & Strawn is not a signatory to the Stockholders Agreement, the DHC Business Combination Agreement, or the DHC Term Sheet.

---

[9] Tr.'s Exs. 3–5.
[10] Tr.'s Ex. 4 at 24.
[11] *Id*.
[12] Tr.'s Ex. 3 at 89.
[13] Tr.'s Ex. 5 at 5.

### *B. Procedural History*

In his complaint, the Trustee asserts two primary causes of action: (1) Professional Negligence, or what is effectively a legal malpractice claim; and (2) Aiding and Abetting Mr. Neugebauer in the breach of his fiduciary duties to the Debtor.[14]

Important to the Motion, the Trustee filed the Jury Demand on May 3, 2026, with regard to "all issues so triable in this Adversary Proceeding."[15] On June 11, 2026, the Defendants filed the Motion to Strike the Trustee's Jury Demand. In the Motion to Strike, the Defendants provide several reasons for why the Court should strike the Jury Demand based upon the aforementioned contracts, the Trustee's actions in this adversary, and the Defendants' particular relationship with the Debtor as legal counsel. First, the Defendants contend that the Jury Demand should be stricken because the respective Jury Waivers contained in the Stockholders Agreement, DHC Business Combination Agreement, and DHC Term Sheet expressly waived the Debtor's—thereby, the Trustee's—right to a jury trial.[16] The Defendants argue that, given the breadth of each of the Jury Waivers, "the Trustee has no jury right" with respect to claims for alleged malpractice or aiding and abetting breaches of fiduciary duties.[17]

In support of this argument, the Defendants draw particular attention to the myriad allegations in the *Original Complaint* (the "**Complaint**") filed by the Trustee on September 17, 2025 [ECF No. 1], in which the Trustee specifically references contracts such as the Stockholders Agreement as part of the factual underpinning of his claims. The Defendants argue that the Trustee's claims "revolve around Defendants allegedly taking direction from majority shareholder

---

[14] ECF No. 21.
[15] ECF No. 28 at 1.
[16] *Id*.
[17] *Id*.

and CEO Neugebauer, whose role and rights are defined by the Stockholders Agreement."[18] Accordingly, given the volume of references to these agreements in support of the Trustee's claims, this adversary proceeding inherently "relates to" or "indirectly arises out of" contracts like the Stockholders Agreement and the DHC Term Sheet, which contain broad jury waiver provisions.[19] Secondly, while the Defendants acknowledge that they are non-signatories to the contracts at issue that actually contain Jury Waivers, they nevertheless contend that they can enforce the Jury Waivers against the Trustee under three separate legal theories: (1) that the breadth of the Jury Waivers encompasses the Trustee's claims; (2) that estoppel bars the Trustee from taking an inconsistent position with respect to the enforcement of the Jury Waivers in this adversary; and (3) that agency law requires application of the Jury Waivers to the current dispute, notwithstanding the Defendants' non-signatory status.[20]

Alternatively, the Defendants argue that, regardless of the Jury Waivers, the Trustee implicitly waived his right to a jury "by filing his claims as an adversary proceeding in a bankruptcy case and fail[ing] to request withdrawal of the reference," thus impliedly consenting to a bench trial.[21] Moreover, the Defendants argue that numerous courts have held that the "decision to file a claim in bankruptcy court, by itself, suffices to waive a right to a jury trial because a bankruptcy court cannot hold a jury trial absent consent."[22] Although the Defendants acknowledge that the Fifth Circuit has held that the filing of a bankruptcy petition does not automatically submit a debtor's pre-petition claims to a bankruptcy court's jurisdiction, the Fifth Circuit has not addressed whether the filing of causes of action in an adversary proceeding would.[23]

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

In the Response, the Trustee first notes that federal law militates against a party's waiver of a jury trial for suits at common law, and that the Jury Demand may therefore only be stricken upon a showing by the Defendants that the Trustee "without doubt knowingly and voluntarily waived or withdrew the demand."[24] Accordingly, the Court must "indulge every reasonable presumption against jury waiver."[25]

The Trustee further argues that the Court should not "transplant" a jury waiver into the operative agreement with respect to the specific parties in this case—the Engagement Letter.[26] In other words, the Defendants are requesting that the Court "rewrite" the Engagement Letter—a facially valid contract drafted by Winston & Strawn—to contemplate a jury waiver based on contracts that are not between the parties themselves.[27]

Likewise, the Trustee contends that non-signatories generally cannot enforce a jury waiver in agreements that they are not party to, and that the Defendants' theories for being able to do so each fail on the merits. Put simply, the Trustee argues the Defendants have no basis to enforce the Jury Waivers in the three contracts at issue because: (1) the breadth of the Jury Waivers does not unambiguously cover the Trustee's claims; (2) the Defendants' estoppel argument is both "fundamentally flawed" and incongruent with Fifth Circuit precedent; and (3) the Defendants' agency argument is an impermissible attempt by an agent to invoke a principal's jury waiver against the principal itself.[28]

---

[24] ECF No. 60 at 8 (quoting *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998)) (internal quotations omitted).
[25] *Id*. at 9 (quoting *Jennings*, 154 F.3d at 545) (internal quotations omitted).
[26] *Id*.
[27] *Id*. at 10–11.
[28] *Id*. at 12–23.

## II. DISCUSSION

The issues raised by the parties are not only conceptually dense but are novel in application to the facts of this case. However, the Court finds that the arguments presented by the parties essentially boil down to the following issues: (1) whether the Defendants have "standing" to invoke the Jury Waivers in contractual agreements to which they are not signatories;[29] (2) even if the Defendants could assert the Jury Waivers as non-signatories, whether the Trustee expressly waived his right to a jury via the allegations in the Complaint; and (3) even if the Trustee did not expressly waive his right to a jury trial, whether the Trustee implicitly waived such right by filing causes of action in this Court. Here, the Court finds that the Defendants have not presented a viable legal theory to enforce any of the Jury Waivers in this case as non-signatories to such contracts. Likewise, even if the Court were to consider the Jury Waivers in connection with the claims asserted against the Defendants, the Court does not find that the Trustee has expressly or implicitly waived his right to a jury trial.

### *A. Enforceability of the Jury Waivers*

The Court hereby addresses each of the Defendants' legal theories regarding enforceability of the Jury Waivers in turn:

#### *1. Breadth of the Jury Waivers*

The Defendants contend that any examination of the breadth of the Jury Waivers must be analyzed according to Delaware law, given that all three of the contracts contain Delaware choice-of-law provisions.[30] At bottom, the Defendants' argument is that, under Delaware law, courts have

[29] *See In re Crescent Res. Litig Tr. ex rel Bensimon v. Duke En. Corp*., No. A-12-CA-009-SS, 2013 WL 1865450, at *9 (W.D. Tex. May 2, 2013) (holding that only certain parties had "standing" to invoke the jury waivers and evaluating whether non-signatories, notwithstanding a lack of standing, could enforce jury waivers on estoppel grounds).
[30] ECF No. 70.

allowed non-signatories to enforce Jury Waivers against signatories "when the breadth of the waiver provision is broad enough to encompass the alleged claims."[31] In support of this proposition, the Defendants cite *The Data Centers, LLC v. 1743 Holdings, LLC* for the proposition that a non-signatory can enforce a jury waiver when the waiver extended to any action arising out of or in any way related to the subject contract or the relationship of the parties."[32] Here, the Defendants draw particular attention to the Stockholders Agreement and the "especially broad" nature of its jury waiver provision, which, as previously noted, included language that intended for the provision to be "all encompassing" and in consideration of claims that "relate to the subject matter of this Agreement."[33]

The Trustee argues that, as a threshold issue, the Defendants cannot demonstrate that the Jury Waivers "unambiguously" cover the Trustee's causes of action.[34] Alternatively, the Trustee argues that, even if the Defendants could sufficiently demonstrate that the waivers unambiguously covered the Trustee's claims in a manner that would presumably permit the Defendants to then assert same, the Defendants cannot demonstrate that the Waivers were knowingly and voluntarily agreed to by the Debtor to include the Defendants, specifically.[35] Finally, the Trustee contends that the Defendants' argument is effectively an attempt to "rewrite" the Engagement Letter, which does not contain a jury waiver provision, and invoke the Jury Waivers that the Defendants did not contract for.[36] In sum, even if the Court were to set aside the fact that, generally, non-signatories cannot enforce Jury Waivers in contracts that they are not party to, the Trustee argues that the

---

[31] ECF No. 70.
[32] No. N15C-02-041, 2015 WL 6662107, at *5 (Del. Super. Ct. Oct. 27, 2015).
[33] ECF No. 70 at 15.
[34] ECF No. 60 at 12–13.
[35] *Id*.
[36] *Id*. at 11.

Defendants cannot sufficiently demonstrate that the Jury Waivers should be applied to the Defendants and/or the claims against them.

The Court agrees with the Trustee for several reasons. First, the Court places great emphasis on what the Supreme Court established nearly a century ago in *Aetna v. Kennedy*—courts must indulge "every reasonable presumption" **against** the waiver of a party's Seventh Amendment right to a jury trial.[37] In consideration of this principle, the Fifth Circuit has expressly adopted the standard that a jury waiver "must be knowing and voluntary to be enforceable."[38] The Fifth Circuit made clear in *Jennings v. McCormick,* that the "right to a jury trial is too important . . . for courts to find a knowing and voluntary relinquishment of the right in a **doubtful situation**."[39] In *Crescent Resources,* the District Court for the Western District of Texas expressly noted that courts must avoid jettisoning "well-established precedents, particularly regarding a fundamental, constitutional right."[40] In accordance with such principles, the Court therefore starts with the formidable presumption that the Trustee's right to a jury trial was not waived in this case without sufficient evidence that such waivers were made knowingly and voluntarily *specifically* to the Defendants and the two causes of action at issue. The Defendants have not overcome that presumption.

The Defendants offer a litany of reasons why the Trustee's references to the contracts at issue in the Complaint implicate the Defendants despite their non-signatory status. They argue that the references to the contracts in the Complaint in connection with causes of action against the Defendants effectively bridge the contractual gap and provide the Defendants with an avenue to enforce the Jury Waivers in those contracts against the Trustee as a consequence. The Court finds that reasoning unconvincing. The contracts signed by the Debtor and various third parties do not

---

[37] *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 39, 393 (1937).
[38] *Crescent Resources,* 2013 WL 1865450, at *6.
[39] 154 F.3d at 546 (emphasis added).
[40] *Id*.

expressly contemplate the Defendants or contain provisions related to the Defendants' scope of work or the Engagement Letter in any way pertinent the causes of action. Nor do the agreements include any incorporative language that would connect the agreements to the Engagement Letter. Mere reference to contracts does not permit non-signatories to weaponize provisions of same for the purpose of negating an opposing party's right to a jury trial. To be certain, the Trustee is not suing *under* these contracts.

The authority cited by the Defendants as support is largely distinct from the facts of this case. For example, in *Data Centers*, although the Delaware Superior Court enforced a jury trial waiver in a lease agreement against a party that did not sign the lease, the non-signatory defendant in *Data Centers* was party to an indemnity agreement that was *referred to in* and *attached to* the subject lease agreement. Likewise, the indemnity agreement itself contained a jury waiver.[41] As noted by the court in *Data Centers*, the plaintiff was precluded from demanding a jury trial against the non-signatory defendant in connection with claims that related to the lease agreement "by virtue of the Indemnity Agreement."[42]

Here, the Defendants have not sufficiently shown that the underlying agreements were executed in connection with the Engagement Letter, nor do any of the contracts so much as reference the Engagement Letter. Neither the parties nor the Court dispute that, facially, the contracts contain broad language that seemingly encompasses an extremely wide range of causes of action. As the Defendants point out, the Court determined as much as part of its *Report and Recommendation to District Court Regarding Motion for Withdrawal of the Reference* (the "**Withdrawal R&R**") entered on August 1, 2025, in a related adversary proceeding, Case No. 25-03007. However, what the Defendants fail to note is that the Court's finding as to the breadth of

---

[41] *Data Centers,* 2015 WL 6662107, at * 2, *5–6.
[42] *Id*. at *6.

the jury waiver provision in the Stockholders Agreement was in connection with claims brought **against Mr. Neugebauer and NFE**—signatories to the contract itself. At no point did the Court find that the jury waiver provision, by its terms, contemplated causes of action against non-signatories to the Stockholders Agreement.

The Court also finds the Defendants' reliance on the Fifth Circuit's decision in *Pizza Hut v. Pandya* to be factually distinct as well. In *Pizza Hut L.L.C. v. Pandya*, while the court of appeals upheld the application of a jury waiver in one contract in connection with causes of action pursuant to a different contract, the contractual language in the jury waiver at issue covered "any litigation **between or among the parties**" and applied to the "universe of litigation **between Pizza Hut and Pandya**."[43] To be certain, the court of appeals construed the jury waiver broadly because the language in the waiver contemplated any litigation between that plaintiff and that defendant, specifically.[44] Here, while the language in each of the Jury Waivers is undoubtedly broad, the Defendants are not signatories to *any* of the agreements, nor do any of the Jury Waivers contain language that speaks specifically to claims between the Debtor and the Defendants. Accordingly, even if the Court were to apply the Jury Waivers to the universe of litigation contemplated therein, neither the Defendants nor the causes of action against them would fall within those bounds.

Furthermore, the Court finds the Defendants' argument problematic in consideration of the Engagement Letter. The Defendants are essentially asking the Court to allow them to piggyback onto contracts of their choosing, regardless of how tangential a relationship they may have to the actual signatories of those contracts, all while distancing themselves from the only agreement they **are** signatories to. That position is an inversion of basic contract law principles, in which courts place great emphasis on the four corners of the document and the intent of the parties, among

[43] 79 F.4th 535, 546 (5th Cir. 2023) (emphasis added).
[44] *Id*.

others. Likewise, it overlooks the fact that, while the Defendants' alleged actions have some connection to the agreements containing the Jury Waivers, the **genesis** of their relationship to the Debtor lies solely in the Engagement Letter.

Here, any argument that the breadth of a contractual agreement provides the Defendants the ability to enforce a jury waiver must pertain in some reasonable measure to the very contract that governs the Defendants' relationship to the Debtor, and thereby the Trustee. That contract—the Engagement Letter—provides no such avenue. Therefore, the Motion to Strike is denied on such grounds.

*2. Estoppel*

The Defendants' related argument for why they should be permitted to enforce the Jury Waiver is that, under estoppel doctrines, non-signatories are allowed to "enforce narrower jury waivers against signatories who may have already asserted that such waivers are enforceable."[45] The Defendants argue that two forms of estoppel apply to this matter: (1) equitable, or "direct benefits" estoppel, given that the Trustee's claims rely upon the agreements containing jury waiver provisions; and (2) "intertwined claims" estoppel, in which a signatory (the Trustee) raises allegations of "substantially interdependent and concerted misconduct" by a non-signatory (the Defendants) with another signatory (Mr. Neugebauer).[46]

As for direct benefits estoppel, the Defendants contend that the Trustee's causes of action rely on the three contracts that contain jury waivers. For example, the Defendants point to the malpractice cause of action, and the Trustee's purported reliance on the Stockholders Agreement as a means of "blaming" the Defendants for appeasing Mr. Neugebauer to the detriment of the

[45] ECF No. 70 at 19.
[46] *Id*. at 19–22.

Debtor and its other board members.[47] As for intertwined claims estoppel, the Defendants argue that the Trustee's allegations raise claims of "interdependent and concerted conduct between Defendants, on the one hand, and Neugebauer, on the other."[48] Accordingly, "equity and fairness" require that if the jury waiver in the Stockholders Agreement applies to Mr. Neugebauer as it relates to his conduct, "it likewise applies to the case against Defendants for allegedly allowing that conduct" to occur.[49]

The Trustee counters first by contending that not only has direct benefits estoppel not been applied by the Fifth Circuit with respect to jury waivers, but, even if the doctrine applied, the Defendants misapply it because the Trustee is not seeking to gain any "dual benefit" through enforcement of any of the agreements containing jury waivers against the Defendants.[50] Additionally, the Trustee argues that the Fifth Circuit has applied the intertwined claims estoppel doctrine narrowly to non-signatories with a "close relationship" to one of the signatories and claims that are "intimately founded in and intertwined with the underlying contract obligations."[51] More specifically, the Fifth Circuit's "close relationship" analysis generally requires "formal corporate affiliation" rather than "merely independent participants in a business transaction."[52] The Trustee argues that, in this case, the allegations against the Defendants arise from their conflicted representation of the Debtor and Mr. Neugebauer, which is separate and apart from the actions allegedly taken by Mr. Neugebauer.

The Court once again agrees with the Trustee with respect to both theories of estoppel. Starting first with direct benefits estoppel, courts in the Fifth Circuit have made clear that the

---

[47] *Id*.
[48] *Id*.
[49] *Id*.
[50] ECF No. 60 at 19–21.
[51] *Id*. at 21–22 (quoting *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016)).
[52] *Id*. (quoting *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 404–05 (5th Cir. 2022)).

purpose of estoppel is to "prevent signatories from invoking an agreement and claiming its benefits, while attempting to escape its consequences."[53] The doctrine likewise "prevents a non-signatory from being liable for duties imposed by an agreement, without benefitting from the protections of the agreement."[54] However, the Fifth Circuit made clear in *Hays* that direct benefits estoppel applies "when the claim **depends on the contract's existence** and would be **'unable to stand independently' without the contract.**"[55]

The Defendants primarily rely upon the Fifth Circuit's decision in *Grigson v. Creative Artists Agency, L.L.C.,* which dealt with an arbitration clause rather than a jury waiver provision.[56] However, to the extent the Court were to consider direct benefits estoppel in the jury waiver context, the Court nevertheless finds that neither of the Trustee's claims depend on or **directly** relate to any of the contracts containing jury waivers in this matter.

The Fifth Circuit articulated in *Hays* that when the substance of the claim "arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, rather than from contract, direct benefits estoppel does not apply, **even if the claim refers to or relates to the contract**."[57] Here, although the Trustee undoubtedly refers to agreements like the Stockholders Agreement, both causes of action arise from obligations external to the contracts containing the Jury Waivers. First, the Trustee's malpractice claim is a quintessential professional negligence claim that arises from common law duties. Moreover, to the extent that the malpractice claim arises out of or depends on any of the underlying contracts, that claim arises solely out of the Engagement Letter between the Defendants and the Debtor.

[53] *In re McCollum*, Case No. 19-15087, 2021 WL 4888327, at *2 (Bankr. N.D. Miss. Oct. 19, 2021).
[54] *Id*.
[55] 838 F.3d at 609 (emphasis added).
[56] 210 F.3d 524, 527–28 (5th Cir. 2000).
[57] *Hays*, 838 F.3d at 609 (citation omitted) (internal quotations omitted) (emphasis added).

Second, despite the Defendants' tallying of the numerous allegations related to the various contracts at issue, the Court does not find that the aiding and abetting breach of Mr. Neugebauer's fiduciary duties claim inherently depends on or relies upon those agreements to survive. The Trustee alleges in the Complaint that the Defendants: (1) were "fully aware" of Mr. Neugebauer's fiduciary role and fiduciary duties owed to the Debtor; (2) knew they were participating in a breach of Mr. Neugebauer's fiduciary duties to the Debtor; and (3) knew that aiding and abetting in Mr. Neugebauer's alleged breaches would result in harm to the Debtor.[58] The Court is not convinced, especially in consideration of the strong presumption against jury trial waivers, that the merits of such allegations "must be determined" by reference to the Stockholders Agreement, the DHC Business Combination Agreement, or the DHC Term Sheet, as the Defendants contend.[59] While the aiding and abetting claim expressly refers to the various contracts signed by the Debtor, the Court is not convinced that, **but for** the agreements containing jury waivers, the Trustee's cause of action "would not exist."[60] Mr. Neugebauer's fiduciary duties could also exist at common law or by state statute.

The Court reaches a similar conclusion with respect to the intertwined claims estoppel doctrine. In *Hays*, the Fifth Circuit, applying Texas law, articulated that intertwined claims estoppel applies when a non-signatory defendant has a "close relationship" with one of the signatories and the claims are "intimately founded in and intertwined with the underlying contract obligations."[61] In other words, there must be a "tight relatedness of the parties, contracts, and controversies."[62] In terms of defining the closeness of the relationship between the parties,

[58] ECF No. 1 at 30–31.
[59] *Al Rushaid v. Nat'l Oilwell Varco, Inc*., 814 F.3d 300, 305 (5th Cir. 2016).
[60] *McCollum*, 2021 WL 4888327 at *2.
[61] *Hays*, 838 F.3d at 610 (citation omitted) (internal quotations omitted).
[62] *Id*. (citation omitted) (internal quotations omitted).

contracts, and claims at issue, the Fifth Circuit noted subsequently in *Newman* that, under Texas law, a close relationship is "about consent, not coercion," and that the primary question for a court to resolve is whether a "reasonable signatory" would "anticipate" being forced to adhere to certain contractual obligations against a non-signatory.[63]

Here, the Debtor could not have meaningfully anticipated that the contracts it was signing with third parties (some of which pre-date the Engagement Letter) would waive right to a jury with respect to the law firm representing it (especially based upon causes of action that arise independently of that contract). The mere fact that the Trustee includes references to contracts like the Stockholders Agreement, as a means of describing how the Defendants allegedly violated various obligations to the Debtor **independent of the Stockholders Agreement**, does not mean that the Defendants' alleged actions are indiscriminate from those allegedly committed by Mr. Neugebauer.

In *Hays*, the Fifth Circuit upheld the district court's order of arbitration under intertwined claims estoppel because the plaintiff treated the various signatory and non-signatory defendants as a "single unit" in the pleadings, thus raising "virtually indistinguishable factual allegations" between the signatories and non-signatories. The signatories and non-signatories in *Hayes* were affiliates deemed to be "interchangeable."[64] Conversely, the Court can clearly distinguish between the claims against Mr. Neugebauer for breaches of fiduciary duties to the Debtor and the causes of action against the Debtor's lawyers. The Defendants are not treated as a "single unit" with Mr. Neugebauer in the Complaint and their underlying duties to the Debtor are legally and contractually distinct.[65]

---

[63] *Newman*, 23 F.4th at 407.

[64] *Hays*, 838 F.3d at 612–13 ("Hays treated Austin Heart, CAC, and HAC—affiliates of his former cardiology practice—as if they were interchangeable").

[65] *Id*. at 612.

Therefore, the Court denies the Motion to Strike on estoppel grounds.

*3. Agency*

The third argument the Defendants make with respect to their ability to enforce the Jury Waivers is that the Defendants, as **agents** of the Debtor, are entitled to invoke a jury trial waiver signed by their **principal corporation**. Relying upon the Third Circuit's decision in *Tracinda*, the Defendants point out that "when a valid contractual jury trial waiver provision applies to a signatory corporation, the waiver also applies to non-signatory directors and officers seeking to invoke the waiver as agents of the corporation."[66] Moreover, the Defendants argue that permitting non-signatory agents to enforce such jury waivers is "consistent with the concept that corporations can act only through agents and employees."[67]

Conversely, the Trustee focuses primarily on the Texas Court of Appeals' holding in *C-Span*, which pertained to a non-signatory law firm's ability to invoke an arbitration clause signed by its principal corporation.[68] The court in *C-Span,* in a factually similar case, distinguished between (1) the general principle of binding an agent to the same agreement to arbitrate as its principal when the agent acted on behalf of the principal "in the very conduct at issue in the case," and (2) the exception to that rule where the relevant liability "is that of the agent *to* its principal for allegedly violating its duties as agent."[69] The *C-Span* court found:

> Akin Gump's reliance on C–Span's contractual jury waiver is rooted in Akin Gump's relationship to C–Span. Akin Gump, of course, was C–Span's attorney—and hence C–Span's agent—during the process of putting together and consummating the deal between C–Span and Blockbuster. With this premise, Akin Gump relies upon a series of arbitration cases, particularly *McMillan v. Computer Translation Systems & Support, Inc.*, wherein an agent was bound by the same agreement to arbitrate that bound the agent's principal. However, the agency relationship that requires enforcement of agreements to arbitrate in these cases is distinguishable from the one before this Court. In the arbitration cases, the

[66] *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007).
[67] *Id*. (citation omitted) (internal quotations omitted).
[68] *See In re C-Span Ent., Inc*., 162 S.W.3d 422, 428 (Tex. App.—Dallas 2005, no pet.).
[69] *Id*. (emphasis in original).

> reason to hold the agent to the principal's agreement is that the agent acted on behalf of the principal in the very conduct at issue in the case. If the principal would be required to arbitrate disputes arising out of that conduct, so should the agent. However, in this case, the claim of Akin Gump's liability is premised on entirely different conduct than is its principal's potential liability. Indeed, rather than liability based upon agency principles—an agent acting on behalf of his principal based on authority to do so—the relevant liability here is that of the agent to its principal for allegedly violating its duties as agent. Stated differently, C–Span's claims against Blockbuster and its claims against Akin Gump are separate and distinct. This is not a case of vicarious liability. Akin Gump's one-time status as agent to C–Span will not allow it to avail itself of C–Span's jury waiver that was given not as to Akin Gump, but as to Blockbuster.

Here, rather than a case involving vicarious liability of the agent for acting on behalf of the debtor, claims against the law firm, as agent to the principal, are "separate and distinct."[70] The Trustee notes that the cases relied upon by the Defendants all involve a non-signatory agent being sued by a third-party rather than the principal wherein such agent invokes the principal's jury waiver "as a shield against that third-party's claim."[71] Here, the principal is suing its agent.

The Court, once again, agrees with the Trustee. The facts of this case are strikingly similar to the facts in *C-Span* and substantially different to the arguments and cases relied upon by the Defendants. First, the Court notes that the principle articulated in *Tracinda* was specific to non-signatory **directors and officers** acting on behalf of their principal corporation. The concern articulated by the Third Circuit was that precluding directors and officers from invoking their corporation's jury waiver would allow plaintiffs to "circumvent" a corporation's agreement by "naming individuals as defendants instead of the entity itself."[72] Here, the Defendants are not directors and officers; they are lawyers/law firms. There is no unity of interest. Second, even if the Court were to set aside the factual discrepancies in this case, the Defendants have not sufficiently addressed the fact that the causes of action in this case pertain to the Defendants' alleged violations of the **very agent-principal relationship** that they now rely upon to invoke the

[70] *Id*.
[71] ECF No. 60 at 23.
[72] *Tracinda*, 502 F.3d at 225.

Jury Waivers. The Court cannot sanction a legal theory in which an agent can allegedly violate its duties to its principal under its own retention agreement but then attempt to utilize the failed agency relationship central to the dispute as a shield against its principal's Seventh Amendment rights to a jury trial.

Therefore, the Court finds that the Defendants cannot enforce the Jury Waivers against the Trustee in this case under an agency theory.

### ***B. Express & Implied Waivers***

The Defendants also argue that the Trustee's own actions in this case both expressly and implicitly waived his right to a jury trial. As for express waiver, the Defendants contend that a trustee, who steps into the shoes of the Debtor "has the same rights and defenses as the debtor, and is bound by a debtor's prepetition waiver of its jury right on prepetition claims."[73] The Defendants further rely heavily upon this Court's determination in the Withdrawal R&R in a related adversary proceeding, where the Court found that party's right to a jury may be expressly waived "via a jury trial waiver provision agreed upon pursuant to a contract."[74] The Defendants note that the Court stated, with respect to the Jury Waiver in the Stockholders Agreement, that it could not "envision a construction of the Stockholders Agreement that did not expressly waive [Mr. Neugebauer and Neugebauer Family Enterprises'] rights to a jury trial" for the claims alleged in that adversary proceeding.[75]

As for implied waiver, the Defendants contend that the Trustee implicitly waived his right to a jury trial because: (1) the Complaint was filed in bankruptcy court; (2) the Trustee failed to request a withdrawal of the reference; (3) courts have previously found that a party implicitly

---

[73] ECF No. 70 at 7 (citing *In re Pearlman*, 493 B.R. 878, 885 (Bankr. M.D. Fla. 2013)).
[74] *Id*. (quoting Case No. 25-03007, ECF No. 48 at 23–24) (emphasis added).
[75] Case No. 25-03007, ECF No. 48 at 26.

waives their right to a jury by filing a claim in bankruptcy court because bankruptcy courts cannot hold a jury trial absent consent of the parties; and (4) the Trustee's aiding and abetting claim ultimately relies upon Mr. Neugebauer's alleged breach of fiduciary duty—a cause of action in a related adversary proceeding that the Trustee contended arises in equity and thus is not entitled to a jury trial.[76]

The Court disagrees with the Defendants on both fronts. With respect to express waiver, the Defendants' attempt to utilize the Court's determination in the Withdrawal R&R is misguided. The Defendants overlook the most essential component to the Court's finding of Mr. Neugebauer and NFE's express waiver of jury trial rights in that case—they were both *signatories* to the Stockholders Agreement. Here, the Defendants are non-signatories to all of the asserted agreements, and thus any reliance on a finding that explicitly dealt with whether a signatory was bound by the breadth of a jury waiver, is unconvincing.

Likewise, the Court does not find that the Trustee implicitly waived his right to a jury trial on his claims by filing in the Bankruptcy Court. First, the Defendants' argument that the simple filing of non-core causes of action in a bankruptcy court constitutes a waiver of a jury trial is novel. The Court acknowledges that 28 U.S.C. § 157(e) provides that, if the right to a jury trial applies in a proceeding that may be heard by a bankruptcy court, a bankruptcy judge may conduct the jury trial only with the express consent of all parties.[77] There is no dispute that if the Defendants do not consent to the Court's authority to conduct a jury trial, the Court cannot do so.

However, the Defendants' argument misses the mark. It completely ignores the withdrawal of the reference process. For example, Local Bankruptcy Rule 5011-1(a)(5) expressly contemplates, as part of a Court's determination of whether to grant a motion to withdraw the

---

[76] ECF No. 70 at 23–25.
[77] 28 U.S.C. § 157(e).

reference, "whether a jury trial has been timely requested, and if so, whether the parties consent to the bankruptcy judge conducting a jury trial."[78] Likewise, Bankruptcy Rule 9015 incorporates Rule 38 regarding jury trials. [79] Rule 38 provides that a party must make a demand for a jury trial no later than 14 days after the last pleading directed to the issue is served.[80]

The Defendants' premise would render these provisions—the very provisions the Defendants rely on in their concurrently filed Motion to Withdraw—both superfluous and inert. In other words, if filing an adversary proceeding were itself forfeiture of a right to a jury trial, then it begs the question why the Local Rules and Bankruptcy Rules provide mechanisms for analyzing a *party's* right to a jury.[81] Taking the Defendants' position to its logical conclusion, it effectively negates the entire withdrawal of the reference process.

Second, the Court disagrees with the Defendants' contention that the supposed reliance of the aiding and abetting claim on the breach of fiduciary duty claim against Mr. Neugebauer in the related adversary proceeding—a cause of action that is purportedly equitable in nature—waived the Trustee's right to a jury trial. Even if the Defendants are correct, such a position does not resolve the Trustee's joinder of the aiding and abetting claim to the legal malpractice claim and his request for monetary damages. More specifically, the Supreme Court expressly noted in *Curtis v. Loether* that if a legal claim is joined with an equitable claim, "the right to a jury trial on the legal claim, including all issues common to both claims, remains intact."[82] Here, both of the Trustee's causes of action ultimately boil down to an issue common to both claims—the

---

[78] L.B.R. 5011-1(a)(5).
[79] Fed. R. Bankr. P. 9015.
[80] Fed. R. Civ. P. 38(b)(1).
[81] Indeed, under the Defendants' construction, the Bankruptcy Rule would only speak to "defendants" rather than "parties".
[82] 415 U.S. 189, 198 n.11 (1974).

Defendants allegedly violated their professional obligations to the Debtor in favor of Mr. Neugebauer. Moreover, the Trustee seeks monetary damages related to same.

Therefore, in accordance with *Curtis*, as well as the Fifth Circuit's identical finding in *Jensen*, the Court finds that the joinder of the Trustee's causes of action, the monetary damages sought for same, and the presumption of the Trustee's right to a jury trial, are sufficient to hold that the Trustee did not implicitly waive his right to a jury trial for the aiding and abetting cause of action.

Therefore, the Motion to Strike is denied with respect to the Defendants' arguments regarding express or implied waiver of the Trustee's right to a jury trial.

## III. CONCLUSION

Accordingly, it is hereby **ORDERED** that the Motion to Strike is **DENIED**.

**###END OF ORDER###**